# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

MICHAEL HALLMARK,

                              No. 11-cv-0842(WMS)(LGF)

                     Plaintiff,

    v.

COHEN & SLAMOWITZ, LLP,
and MIDLAND FUNDING LLC d/b/a
MIDLAND FUNDING OF DELAWARE LLC

                     Defendants.

_____

### Plaintiff's Memorandum of Law in Opposition to
### Defendants' Motion for Judgment on the Pleadings under Rule 12(c)

Brian L. Bromberg
Michael N. Litrownik
BROMBERG LAW OFFICE, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908

Kenneth R. Hiller
Seth J. Andrews
LAW OFFICES OF KENNETH HILLER, PLLC
6000 N. Bailey Avenue – Suite 1A
Amherst, New York 14226
Tel: (716) 564-3288
Fax: (716) 564-3291

**Attorneys for Plaintiff**

## Table of Contents

I.    Introduction.........................................................................................1

II.   By attempting to collect fees and costs to which they are not contractually
      entitled, Defendants violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(10), and
      1692f and –f(1)…………………….. ……………………………………………....1

III.  By attempting to collect fees and costs to which they are not entitled to collect
      pre-judgment, Defendants violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(1),
      and 1692f and -f(1)...........................................................................5

IV.   By attempting to collect fees and costs they had not incurred, Defendants
      violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(10), and 1692f and -f(1)......11

V.    The cases cited by Defendants are distinguishable..................................14

VI.   Defendant Midland is vicariously liable for C&S's conduct.......................20

VII.  Conclusion....................................................................................21

i

I.    Introduction

Defendants' motion for judgment on the pleadings under Rule 12(c) is a mishmash of frivolous arguments unsupported by case law. Plaintiff's case is simple: Plaintiff has challenged C&S and Midland's practices of (1) including a prospective court filing fee in the balance due on collections accounts before Defendants actually filed anything with the courts, and (2) failing to disclose the basis for the increase in the debt balance. In response to these allegations, Defendants argue – unsupported by any case law – that they are permitted to include the court filing fee in the balance due on collections accounts because they have already "incurred" the fee by cutting a check to the Clerk of the City Court. Defendants make this argument even though delivery of the summons, complaint, and filing fee was not made to the City Court Clerk until eight days after Defendants demanded that Plaintiff pay the filing fee. Accordingly, Defendants' argument must fail.

II.   **By attempting to collect fees and costs to which they are not contractually entitled, Defendants violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(10), and 1692f and –f(1)**

Under the "American Rule," a creditor is not entitled to recover its legal fees or other collection costs in a lawsuit unless there is an express statutory or contractual provision for the recovery of such fees.[1] The FDCPA extends that rule to the pre-litigation context, forbidding attorneys and debt buyers even to demand legal fees unless the fees are expressly authorized by the agreement creating the

_____

[1] *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240 (1975).

debt or by other law. More particularly, the FDCPA provides, in relevant part, as

follows:

### Section 807. False or misleading representations [15 U.S.C. § 1692e]

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

        \*        \*        \*

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

        \*        \*        \*

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.

        \*        \*        \*

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

### Section 808. Unfair practices [15 U.S.C. § 1692f]

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

Most relevant here is the language of FDCPA § 1692f(1), which prohibits "the

collection of any amount (including any interest, fee, charge, or expense incidental

to the principal obligation) unless such amount is *expressly authorized* by the

agreement creating the debt or permitted by law."[2] This is a rule of exclusion that expressly prohibits a collection fee *unless* the amount is authorized by contract or law. And "the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits."[3] Thus, as the Seventh Circuit implicitly recognized in the leading case of *Seeger v. AFNI, Inc.*, under traditional rules of statutory interpretation, the burden is on the debt collectors, like law-firm C&S and debt-buyer Midland, to produce an underlying contract or point to a state law that allows the collection of fees or costs.[4] Only after such a governing contract has been proven, does the issue arise of whether the fees and costs sought are recoverable.[5]

New York law is also clear on the subject: "The agreement to pay legal fees must be submitted for, absent an agreement to pay such fees, an application for fees may not be granted by New York State courts."[6] While New York's Retail Installment Sales Act permits a credit-card holder to *agree* to pay an independent collection "attorney's fee not exceeding twenty percent of the amount due and

---

[2] 15 U.S.C. § 1692f(1) (emphasis added).

[3] *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948); *see also Meacham v. Knolls Atomic Power Lab*, 554 U.S. 84, 91, 128 S. Ct. 2395, 2400 (2008) (citing *FTC v. Morton Salt Co.* and further holding "[t]hat longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side.").

[4] *Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111 (7th Cir. 2008).

[5] *Id.*

[6] *Citibank, N.A. v. Martin*, 11 Misc.3d 219, 224-25 (Civ. Ct. N.Y. Co. 2005), citing *Mighty Midgets, Inc. v. Centenial Insurance Co.*, 47 N.Y.2d 12, 21-22 (1979); *Empire National Bank v. Monahan*, 82 Misc.2d 808 (Co. Ct. Rockland Co. 1975).

payable," there must, by the statute's own terms, be an agreement.[7] And New York's State's own debt-collection statute, General Business Law § 601(2), prohibits both creditors and debt collectors from knowingly collecting, attempting to collect, or asserting a right to any collection fee, attorney's fee, court cost or expense unless such charges are justly due and legally chargeable against the debtor.[8] (Although there is no private right of action under GBL § 601, this statute sets the minimum standard for what behavior the New York Legislature finds permissible.) Finally, where, as here, a debt-buyer like Midland is involved, it is essential that the debt buyer be able to show an assignment of rights – otherwise, the debt buyer cannot step into the shoes of the original creditor.[9]

But Defendants have not attached to their motion papers or pleadings a single document that they claim entitles them – or even an alleged original creditor – to collect fees or costs from Hallmark or any other class member. This failure to provide any proof is fatal under federal and state law. Moreover, Defendants point to no state law that expressly permits them to charge fees or costs. But where the FDCPA expressly prohibits collection fees unless authorized by agreement or permitted by law, a state statute's silence is not a grant of authority.[10] In other words, in the context of § 1692f(1), "[p]ermission requires an affirmative

---

[7] New York Personal Property Law § 413(5).

[8] NY GBL § 601(2).

[9] *Citibank, N.A. v. Martin*, 11 Misc.3d at 225-26.

[10] *See West v. Costen*, 558 F. Supp. 564, 582 (W.D. Va. 1983) (holding that under section 1692f(1) , "…if state law does not expressly permit or prohibit a debt collector from collecting a service charge in addition to the amount of a dishonored check, then such charge is lawful only if the agreement creating the debt expressly authorizes it.")

4

authorization, not just indulgent silence."[11] By extension, any attempt to collect fees to which a debt collector is not entitled constituted a false, deceptive, and misleading act under 15 U.S.C. § 1692e, e(2), and e(10), an attempt to take an action that cannot legally be taken under 15 U.S.C. § 1692e(5), and an unfair and unconscionable practice under 15 U.S.C. § 1692f.

In sum, Defendants cannot prove contractual authorization or permission under state law to charge attorney fees, filing fees or collection fees of any sort. Thus, Defendants have presented no defense to the FDCPA claims, and nothing to justify judgment on the pleadings in their favor.

### III.   By attempting to collect fees and costs to which they are not entitled to collect pre-judgment, Defendants violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(10), and 1692f and –f(1)

The three leading cases about whether court costs can be recovered before judgment are the Seventh Circuit case of *Shula v. Lawent*,[12] the Southern District of Ohio case of *Foster v. D.B.S. Collection Agency*,[13] and the District of Maryland case of *Spencer v. Hendersen-Webb, Inc.*[14] In *Shula*, the defendants originally dunned Shula for $187.87 that they claimed he owed a doctor.[15] When Shula disputed the debt, the defendants filed suit against him in an Illinois state court, seeking $187.87 plus court costs.[16] To avoid having to defend against the suit, Shula

---

[11] *Id.*
[12] 359 F.3d 489 (7th Cir. 2004).
[13] No. 01-CV-514, 2002 WL 32993859 (S.D. Ohio Mar. 8, 2002).
[14] 81 F.Supp.2d 582 (D. Md. 1999).
[15] *Shula*, 359 F.3d at 490.
[16] *Id.*

mailed the doctor a check for the full amount.[17] The defendants then abandoned the suit against him, though without bothering to dismiss it; it was dismissed by the court, on the court's own initiative, two years after having been filed.[18] But the defendants nevertheless mailed Shula a letter demanding $52.73 for court costs in the abandoned proceeding.[19] The letter stated that Shula "owe[d]" this amount to the defendants and explained that the letter was "an attempt to collect a debt."[20] But besides not having obtained a judgment in their Illinois suit, the defendants had not obtained a court order that Shula pay them (technically their client, the doctor) the court costs.[21]

The Seventh Circuit held that although Illinois law authorizes a court to award costs to a plaintiff if the defendant pays the debt on which the suit was based before the entry of judgment, as indeed happened, the court in the doctor's suit against Shula did not make any award of costs and therefore Shula did not become indebted to anyone for costs.[22] The Court summarized its holding as follows:

> If the court *had* awarded costs, they would have become a debt owed by Shula. But there was no award, nor any certainty that had the defendants moved for one they would have gotten it. The award of costs is not automatic in a case that, like the doctor's case against Shula, does not go to judgment. Whether to award costs in such a case is a matter committed to the judge's discretion. That makes it absurd to think that Shula ever became obligated to pay the court costs. And even when a case does go to judgment, so that the winning party has an entitlement to an award of costs rather than having to appeal the judge's discretion, a judicial order is still necessary for a debt to arise.

---

[17] *Id.*

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 491.

> The point is general. Suppose a defendant is held liable to the plaintiff after a trial and the statute under which the plaintiff had sued entitled the plaintiff to exactly $1,000, not a penny more or less. He still could not levy on the defendant's assets without first obtaining a judgment ordering the defendant to pay him.[23]

The Court went on to find that this violation of FDPCA § 1692f(1), in turn violated the prohibitions against false and misleading acts contained in § 1692e because Shula did not owe the $52.73.[24] Moreover, Shula was also entitled to a follow-up letter providing all of the information required under 1692g(a), because he did not owe the money.[25]

Similarly, in *Foster*, the plaintiffs made a $500 payment, of which $60 was applied to reimbursing the debt collector for "costs."[26] The debt collector also claimed a right to payment of judgment interest on a judgment that had been vacated.[27] The plaintiffs argued that under Ohio law, prevailing parties, including debt collectors, are only allowed the right to payment of court costs or interest only after entry of a valid judgment.[28] The Court agreed, holding that because the default judgment had been vacated, the debt collector could not have collected court costs or interest from the plaintiffs: "As a portion of the $500 payment was allegedly allocated to cover costs, when that allocation was not permitted by law, the

---

[23] *Id.* (internal citations omitted).
[24] *Id.* at 492.
[25] *Id.*
[26] *Foster*, 2002 WL 32993859, at *7.
[27] *Id.*
[28] *Id.*

Plaintiffs have properly stated a claim against the Defendants for violation of 15 U.S.C. § 1692f."[29]

Finally, in *Spencer*, a landlord's law firm sent a letter to a tenant, Spencer, requesting payment of $2,858.40, coupled with a warning that "[i]f legal action is taken, you will be responsible for attorneys fees, court costs, and pre-judgment interest, as allowed by your contract."[30] Spencer claimed that this language was deceptive because it would lead a consumer to believe that he or she would have no potential defenses to any legal action.[31] The district court agreed, holding that

> Although an unsophisticated consumer would understand from Kilberg's [the law firm's] letter that legal action was not certain, the letter also insinuates that the debtor will inevitably be liable for a string of sundry fees should the debt collector file suit. Because language asserting this type of false leverage is what Congress sought to eliminate by creating the FDCPA, summary judgment will be granted to Spencer on this count.[32]

Based on this language, the district court found liability under FDCPA § 1692e(5), which prohibits threats to take action that cannot legally be taken.[33]

With these cases in mind, the analysis of Defendants' letter is apparent. In New York, costs are a creation of statute, there being no common-law right to them.[34] At common law, neither costs nor disbursements were allowed to the prevailing party in any case, and their allowance has always been regulated by

---

[29] *Id.*
[30] *Spencer*, 81 F. Supp. 2d at 591.
[31] *Id.* at 593.
[32] *Id.* at 593-94.
[33] *Id.*
[34] *Application of Cheney*, 257 A.D. 401 (4th Dept. 1939), modified on other grounds, 284 N.Y. 1 (1940).

statute.[35] Recovery of costs and fees in the New York City Courts is governed by

Article 19 of the Uniform City Court Act ("UCCA"), which in turn provides that

certain provisions of the CPLR shall apply.[36] Most important to this discussion is

the incorporation of CPLR 8101, entitled "Costs in an action," which provides that

"The party in whose favor a judgment is entered is entitled to costs in the action,

unless otherwise provided by statute or unless the court determines that to so allow

would not be equitable, under all the circumstances."[37] By allowing "equitable"

considerations to come into play, the Legislature appears to have meant to allow the

court discretion to provide for make exceptions for poor persons, infants,

incompetents, conservatees, and other deserving persons.[38] Also incorporated are

CPLR sections allowing the court discretion to adjust costs where parties prevail

upon separate issues[39] and to allow the court discretion to award costs on motions.[40]

Just as important, UCCA § 1909 gives litigants the right to have the clerk's

taxation reviewed by the court upon two days' notice.[41] Finally, even a cursory

examination of Article 19 reveals that statutory fees and costs may be awarded to

either party, but only on motion or if the case goes to judgment.[42]

---

[35] *Id.*
[36] UCCA § 1903 ("The provisions of CPLR §§ 8101, 8103, 8104, 8105 and 8106 shall apply in actions and proceedings in this court.")
[37] CPLR 8101.
[38] *See* CPLR 1102 (poor persons exempt from costs); CPLR 1205 (infants, incompetents, and conservatees, liability for costs).
[39] CPLR 8103.
[40] CPLR 8106.
[41] UCCA § 1909.
[42] UCCA, Art. 19, generally.

Thus, just as in *Shula*, *Foster*, and *Spencer*, the defendants here, C&S and Midland, did not have the right to tax costs of $140 until they obtained a judgment against Hallmark. As things stand, when C&S mailed out a letter demanding $140, Defendants improperly assumed that the underlying debt was owed to Midland, that Midland would prevail in the lawsuit it was about to file, that judgment would be entered in Midland's favor, that the City Court would not exercise its discretion under CPLR 8101 (or another section) to reduce any award of costs as inequitable, and that the City Court would not enter an order or judgment in favor of Hallmark in which he would be awarded costs. Like the debt collector in *Spencer*, Defendants were essentially telling Hallmark that they would win and that he had no potential defenses to any legal action.

But C&S and Hallmark were even more brazen than the debt collectors in *Spencer*. At least in *Spencer*, the debt collectors warned that if they filed suit, they would be entitled to recoup their filing fees. Here, Defendants hid the filing fees not only from Hallmark, but from over 38,000 other New Yorkers (just within the one year before the filing of the Amended Complaint). In sum, by demanding filing fees that could not be recouped unless and until they were awarded as part of judgment, Thus, Defendants violated the FDCPA's prohibition of false and misleading representations and unfair practices, found in FDPCA §§ 1692e, -e(2), -e(5), -e(10), -f, and -f(1).

**IV.    By attempting to collect fees and costs they had not incurred, Defendants violated 15 U.S.C. §§ 1692e, -e(2)(A) and (B), -e(10), and 1692f and –f(1)**

Under New York law, legal fees cannot be awarded for mere collection efforts prior to litigation.[43] If attorney fees cannot be collected before filing of the complaint, then by extension court filing fees cannot be collected before they have been paid to the City Court Clerk. In any event, Defendants' claim that filing fees have been "incurred" when C&S cuts a check and puts it in the mail with the summons and complaint is risible. Defendants' argument makes a hash out of the commencement-by-filing system adopted by the New York Supreme and County Courts in 1992[44] and extended in 2005 to the New York City Civil Court, the city courts outside of New York City, and the district courts.

In all New York state courts now – with the exception of town and justice courts – an action is commenced by filing a summons and complaint or summons with notice with a clerk of the court.[45] At the time of filing, the filed papers must be date-stamped by the clerk of the court who will file them and maintain a record of the date of the filing and who will return forthwith a date-stamped copy, together with an index number, to the filing party except where filing is by electronic means.[46] Such filing will not be accepted unless any fee required has been paid.[47]

---

[43] *Broadstreets Inc. v. Parlin*, 75 Misc. 2d 662 (Civ.Ct. N.Y. Co. 1973).
[44] CPLR 2102.
[45] *See* CPLR 304 and 2102; N.Y. City Civ. Ct. Act § 400; UCCA § 400; UDCA § 400.
[46] CPLR 304; UCCA § 400.
[47] *Id.*

For purposes of determining the date of commencement of an action,[48] filing means the delivery of the summons with notice, summons, and complaint or petition to the clerk of the court in the county in which the action or special proceeding is brought or any other person designated by the clerk of the court for that purpose.[49] Moreover, by using the word "delivery" to define "filing" – in both the CPLR and the UCCA – the legislature intended the term "filing" to require actual receipt of the papers by the clerk of the court.[50]

Thus, once the filing takes place, the statute of limitations is tolled.[51] Upon the filing of the summons and complaint or summons with notice, the required index fee is paid and an index number is assigned.[52] But under CPLR 304 – and by extension U.C.C.A. § 400, which uses virtually the same language as the CPLR – filing is not deemed complete until the summons and complaint or the summons and notice is delivered to the court clerk with the fee to purchase an index number.[53] The date of mailing of the summons and complaint is not the date of filing within the meaning of the commencement-by-filing procedure.

The leading appellate case of *Enos v. City of Rochester*,[54] illustrates the absurdity of defendant's position that merely mailing a summons and complaint and a check to the a City Court Clerk has any legal meaning or value. In *Enos*, the

---

[48] *Id.*

[49] *Id.*

[50] *Enos v. City of Rochester*, 206 A.D.2d 159 (4th Dept. 1994), motion for leave to appeal denied, 1995 WL 42487 (Feb. 3, 1995).

[51] CPLR 304; UCCA § 400.

[52] CPLR 304 and 306-a; UCCA § 400.

[53] CPLR 304; UCCA § 400.

[54] 206 A.D.2d 159 (4th Dept. 1994).

plaintiff was injured on August 4, 1992, when an automobile he was driving fell into a "sinkhole" on a city street.[55] A notice of claim was filed on September 30, 1992.[56] Plaintiff's attorney prepared the summons and complaint on October 7, 1993, never filed it personally, but mailed it to the court on November 3, 1993 along with an application for an index number and the required fee.[57] One year and ninety days[58] from August 4, 1992 would have expired on November 2, 1993.[59] But November 2 was Election Day, so the limitations period was extended one day.[60]

Defendant, the city, moved to dismiss on the ground that the action was not timely commenced.[61] Defendant maintained that CPLR 304 required that the summons and complaint be "filed" and that the papers were not filed until November 9, 1993, six days after the statute of limitations ran out.[62] The Appellate Division, Fourth Department agreed with defendant, holding that the mailing on the last day of the limitations period did not constitute "filing" within the meaning of CPLR 304.[63] The *Enos* Court held that "In amending CPLR 304 to institute a new commencement-by-filing procedure, the Legislature intended the term 'filing' to

---

[55] *Id.* at 460.

[56] *Id.*

[57] *Id.*

[58] N.Y. Gen. Mun. Law § 50-i requires that the action be commenced with one year and ninety days from the accrual of the claim.

[59] *Enos*, 206 A.D.2d at 160.

[60] N.Y. Gen.Constr. Law §§ 20, 24.

[61] *Enos*, 206 A.D.2d at 160.

[62] *Id.*

[63] *Id.* at 162.

require actual receipt of the papers by the clerk of the court."[64] Based on its analysis

of the statute, the Court

> [C]onclude[d] that the mailing of the summons and complaint to the
> clerk of the court on the last day of the Statute of Limitations did not
> constitute "filing" within the meaning of the CPLR's new
> commencement-by-filing procedure. Because the papers were not
> actually received by the clerk until after the Statute of Limitations had
> expired, plaintiff's action was not timely commenced.[65]

Defendants ignore 21 years of commencement-by-filing in the Supreme Court

and seven years of commencement-by-filing in the City Court and the resulting case

law, all of which holds that mailing the summons and complaint to the Clerk is *not*

the same as delivery of the summons and complaint to the court with the filing fee

as required by the statutes.

## V.    The cases cited by Defendants are distinguishable

The cases cited by Defendants fall into three types: (a) generic, general

boilerplate citations to the FDCPA with no argument, and (b) citations to cases that

actually support Plaintiff's position. The boilerplate decisions, which are cited in the

first four pages of C&S's brief, require no response.

Defendants' remaining citations actually support Plaintiff's position. In the

Seventh Circuit case of *Fields v. Wilber Law Firm, P.C.*,[66] the consumer had

incurred a $122.06 debt that the Wilber Law Firm was hired to collect. Their initial

dunning letter stated that the "account balance" was $388.54, a sum which actually

reflected the original $122.06, plus interest and service charges assessed under the

---

[64] *Id.*

[65] *Id.*

[66] 383 F.3d 562 (7th Cir. 2004).

14

contract signed by Fields, and $250 in attorney fees for the collection of the debt by

Wilber.[67] Three subsequent letters sought additional accumulated interest, but no

additional attorney fees.[68]

Wilber had included the $250 in fees under a contract clause that stated: "I

understand that if collection action should become necessary for recovery of any

monies due under this contract, I agree to pay any and all collection costs and

attorney fees."[69] But the collection letters neither itemized the expenses nor

explained how the "amount of the debt" – which must be set forth in the initial

written communication – was calculated.[70] The Seventh Circuit rejected Fields'

contention that under the FDCPA a debt collector must go to court every time it

seeks to enforce a provision in a payment agreement signed by the debtor that

allows reimbursement of attorneys' fees and collection costs.[71] In the words of the

Seventh Circuit, the letter did not violate the requirement to state the "amount of

the debt" in the initial letter, because:

> To collect attorneys' fees from Fields, Wilber necessarily had to specify
> an amount that it intended to charge (or had already charged) for its
> services. Fields, of course, could negotiate this payment or contest the
> reasonableness of the fees through a lawsuit. But when a debtor has
> contractually agreed to pay attorneys' fees and collection costs, a debt
> collector may, without a court's permission, state those fees and costs
> and include that amount in the dunning letter. Doing so does not
> violate the FDCPA. Indeed, refusing to quantify an amount that the
> debt collector is trying to collect could be construed as falsely stating
> the amount of debt.[72]

---

[67] *Id.* at 563.
[68] *Id.*
[69] *Id.* at 563-64.
[70] *Id.* at 564.
[71] *Id.* at 565.
[72] *Id.*

But the Seventh Circuit further stated that even if: (a) the attorney fees are authorized by contract; and (b) the fees demanded are reasonable, debt collectors must still clearly and fairly communicate information about the amount of the debt to debtors.[73] "This includes how the total amount due was determined if the demand for payment includes add-on expenses like attorney's fees or collection costs."[74] The Seventh Circuit concluded that Fields had made allegations sufficient to state a claim under the FDCPA.[75] Wilber's letter was misleading because it gave a false impression of the character of the debt, and the Seventh Circuit stated that it is "unfair to consumers under the FDCPA to hide the true character of the debt, thereby impairing their ability to knowledgably assess the validity of the debt."[76] In light of *Fields*, a debt collector must segregate the attorney fees being demanded from the remainder of the debt. The implication is also that other charges, such as interest, late fees, filing fees, and court costs, should also be segregated.

In response to this clear mandate from the Seventh Circuit, Defendants return to their mantra that that they are not liable for charging the filing fee before filing or for not breaking out the filing fee, because they "incurred" the filing fee by writing a check to the City Court Clerk before they sent out the second dunning letter to Plaintiff. This defense presumes a conclusion that is not supported by law. As explained in the preceding sections, (a) Defendants cannot show a contract entitling them to collect filing fees, (b) New York law does not allow collection of

---

[73] *Id.*
[74] *Id.*
[75] *Id.* at 565-66.
[76] *Id.* at 566.

filing fees before obtaining a judgment, much less before filing a lawsuit, (c) mailing is not filing.

But most important, Defendants were required, under *Fields*, to break out the filing fee from the underlying debt, which they did not do. In other words, even if Defendants could somehow show they were entitled to collect the $140 filing fee before they even filed the summons and complaint, they are still liable. That is, Defendants are liable for lumping the filing fee in with the principal and interest in such a manner that it took the filing of an FDCPA lawsuit to discover that Plaintiff was not being charged over 100% in interest, but was instead being dunned for a filing fee he did not owe.

The Seventh Circuit case of *Veach v. Sheeks*,[77] cited by Defendants, also hurts their case. In *Veach*, a creditor sent a letter to Veach demanding full payment on a check that had been stopped by the plaintiff.[78] The creditor warned that failure to pay would result in a lawsuit for legal remedies under state law, including three times the amount of the check, interest, attorney fees, and court costs.[79] When the consumer ignored the letter, the creditor hired Sheeks to file suit on the dishonored check. Eventually this led to a small claims lawsuit that was resolved.[80]

But Veach sued Sheeks under the FDCPA for sending the collection letter. Although the dishonored check had been in the amount of $350, Sheeks' validation notice described the "amount of the claimed debt" as "Remaining principal balance

---

[77] 316 F.3d 690 (7th Cir. 2003).
[78] *Id.* at 691.
[79] *Id.*
[80] *Id.* at 691-92.

17

$1,050.00; plus reasonable attorney fees as permitted by law, and costs if allowed by the court."[81]

With regard to the $1,050 figure, Sheeks argued that the demand was appropriate because that amount was an "alleged obligation," incorporating the treble damages that he was allowed to pursue under Indiana Code section 34-24-3-1.[82] Veach asserted that he was not liable for treble damages, fees, and costs until such time, if ever, as a court judgment awarded such amounts, and thus those amounts could not be part of the "amount of the claimed debt" stated in the validation notice.[83]

The Seventh Circuit concluded that by stating the amount of the debt as $1,050, Sheeks took it upon himself to hold Veach liable for legal penalties that had not yet been awarded, and that for FDCPA purposes those penalties should have been separated out from the amount of the debt:

> The "amount of the debt" provision is designed to inform the debtor (who, remember, has a low level of sophistication) of what the obligation is, not what the final, worst-case scenario could be. Th e definition of a "debt" according to the FDCPA is of an "obligation or alleged obligation . . . whether or not such obligation has been reduced to judgment." 15 U.S.C. 1692a(5). Since Veach cannot be held liable for treble damages, court costs, or attorney's fees until there has been a judgment by a court, they cannot be part of the "remaining principal balance" of a claimed debt. Therefore, Sheeks' notice misrepresented the actual debt CreditNet [the creditor] claimed that it was owed by Veach, a misrepresentation that violated 15 U.S.C. 1692e.[84]

---

[81] *Id.* at 693.
[82] *Id.* at 692.
[83] *Id.*
[84] *Id.* at 693.

18

Thus, *Veach* stands for two principles: (a) a debt collector's validation notice must state the total amount due as of the date of the notice; and (b) the "debt" that must be stated is to be the actual debt and not potential debt. While the first requirement applies only to initial written debt-validation notices,[85] the second requirement applies to all communications with consumers.[86] As set forth above, Plaintiff here did not owe court costs until entry of judgment and certainly did not owe court costs before the filing of the summons and complaint. Accordingly, like Veach, Defendants were dunning Plaintiff for an amount he did not owe. The remaining cases cited by Defendants in connection with this section of C&S's memorandum, page 6, are all of the same nature as *Fields* and *Wilber*, and distinguishable on the same grounds.

Finally, Defendants go on for page-after-page claiming that Plaintiff s alleging the existence of some "forbearance period." But Plaintiff is doing nothing of the sort. Plaintiff filed this lawsuit for violations of FDCPA § 1692e and –f, and their subsections. Litigation about forbearance periods arises when debt collectors wish to file suit during the 30-day validation period established under FDCPA § 1692g. The issue then becomes whether the debt collector violated the FDCPA by overshadowing and confounding the 30-day validation period required to be given in writing, under § 1692g, within five days of the initial communication with the consumer. But Plaintiff is not suing over the initial communication under § 1692g; Plaintiff is suing for false, deceptive, misleading, unfair, and unconscionable acts

---

[85] *See* 15 U.S.C. § 1692g.
[86] *See* 15 U.S.C. § 1692e and -f, and their subsections.

performed in violation of § 1692e and –f, and their subsections. Under the Seventh Circuit's holding in *Shula*, Defendants may have been required to add an additional validation notice to their second letter, so that Plaintiff would be given an opportunity to dispute the $140 filing fee,[87] but that is not (yet) alleged in Plaintiff's complaint.

## VI. Defendant Midland is vicariously liable for C&S's conduct

Defendant Midland rests its Rule 12(c) motion on C&S's papers. Nevertheless, Midland insinuates in passing that Plaintiff has failed to adequately allege the threshold element that Midland took actions to collect a debt. While the issue is not before the Court, Plaintiff would like to note for the record that vicarious liability under the FDCPA for Midland exists for actions taken by its attorneys, C&S. The leading case on this issue is the Ninth Circuit FDCPA case of *Fox v. Citicorp Credit Services, Inc.*,[88] in which the Court held that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."[89] If Midland chooses to press this issue further on a motion for summary judgment, Plaintiff will brief the issue then, rather than burden the Court now.

---

[87] *Id.*
[88] 15 F.3d 1507 (9th Cir. 1994).
[89] *Id.* at 1516.

## VII.   Conclusion

For these reasons, Plaintiff respectfully requests that the Court deny

Defendants' motion under Rule 12(c) and grant Plaintiff such other relief as

necessary.


Dated:            March 6, 2013
                  New York, New York

                                        PLAINTIFF MICHAEL HALLMARK,
                                        Individually And On Behalf Of The Class,

                          By:  /s/ Brian L. Bromberg
                               Brian L. Bromberg
                               One of Plaintiff's Attorneys

**Attorneys for Plaintiff**
Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com

Kenneth R. Hiller
Seth J. Andrews
Law Offices of Kenneth Hiller, PLLC
6000 N. Bailey Avenue – Suite 1A
Amherst, New York 14226
Tel: (716) 564-3288
Fax: (716) 564-3291
Email: khiller@kennethhiller.com