IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL HALLMARK,<br><br>       Plaintiff,<br><br>v.<br><br>COHEN & SLAMOWITZ, LLP and MIDLAND FUNDING LLC d/b/a MIDLAND FUNDING OF DELAWARE LLC,<br><br>       Defendants. | Civil Docket Number:<br>11-cv-0842 (WMS)(LGF) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT MIDLAND FUNDING LLC'S MOTION FOR JUDGMENT ON THE PLEADINGS**

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Thomas A. Leghorn
150 E. 42nd Street
New York, NY 10017

*Attorney for Defendants MIDLAND FUNDING LLC d/b/a MIDLAND FUNDING OF DELAWARE, LLC*

April 5, 2013

Defendant Midland Funding LLC d/b/a Midland Funding of Delaware LLC ("Midland") respectfully submits this Reply Memorandum in further support of its Motion for Judgment on the Pleadings dismissing Plaintiff's Complaint in its entirety, with such other and further relief as this Court may deem just and proper.

## PRELIMINARY STATEMENT

Plaintiff's claims against Midland—predicated solely on the theory that Midland is vicariously liable for the acts of Defendant Cohen & Slamowitz, LLP (C&S)—should be dismissed because they lack merit for several independently dispositive reasons. First, Midland cannot be held vicariously liable because there is no underlying liability to impute to Midland in the first instance. Plaintiff's unsupported allegation that C&S was not entitled to seek court costs pre-judgment is directly contradicted by Plaintiff's own credit card agreement, which expressly allows it.

Second, even if C&S were somehow liable to Plaintiff for seeking to collect costs it was contractually authorized to collect, Midland still would not be vicariously liable because Plaintiff has failed to allege that Midland "exercise[d] control over the conduct of" C&S. See Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011).

Finally, Plaintiff's own motion seeking leave to file a Second Amended Complaint (DE 63)[1] demonstrates that Plaintiff could never plead a viable vicarious liability claim against Midland because C&S used the same form letter on behalf of all its clients—and, indeed, sent more of them on behalf of non-Midland clients than on behalf of Midland. In light of that, Plaintiff could never plead a plausible claim that Midland dictated the terms of the C&S form letter at issue.

---

[1] Citations preceded by "DE" refer to the corresponding Docket Entry on ECF.

5475511v.1

Plaintiff's opposition fails to confront these realities. That Midland's opening brief relied heavily on C&S's opening brief does not undermine the merits of those arguments or excuse Plaintiff from addressing them. Accordingly, Plaintiff's First Amended Complaint should be dismissed with prejudice.

## ARGUMENT

I. **Plaintiff's Credit Card Agreement Expressly Authorized C&S to Seek Court Filing Fees in Its Letter to Plaintiff**

Plaintiff argues that C&S's inclusion of court filing fees in a debt collection letter violated FDCPA section 1692f(1), which prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (DE 60 at p. 2-3). But the "unless" clause of this subsection is fatal to Plaintiff's claim.

In the aptly named "DEFAULT AND TERMINATION OF AGREEMENT" section of his cardholder agreement with the original creditor, HSBC, Plaintiff expressly agreed to pay his creditor's court costs in the event he defaulted:

> [I]f you do not pay [HSBC], your account balance will continue to accrue Finance Charges and fees until paid in full and will remain subject to all terms and conditions of this agreement. If we sue you, or if we hire a third party to collect your Account balance, **you will pay our court costs**, reasonable attorneys' fees and other collection costs related to the default to the extent permitted by law in the state in which you reside. (Emphasis added).

See "Select Credit Agreement," annexed to the Affidavit of Kyle Hannan ("Hannan Affidavit," Ex. A) as "Exhibit 1."[2] Plaintiff plainly acknowledges in his own Complaint that he was in default on his account at the time C&S sent its letter. (DE 28, ¶9 ("The plaintiff thereafter

---

[2] The Court can consider the Select Credit Agreement without converting this motion for judgment on the pleadings into one for summary judgment because the agreement is integral to Plaintiff's claims—it gave rise to Plaintiff's credit card debt and governed the conditions under which the creditor could impose the collection-related costs Plaintiff now challenges. See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 422 (2d Cir. 2011).

5475511v.1

defaulted on the subject debt.")). Plaintiff was thus responsible for the creditor's court filing fees pursuant to the terms of his agreement.

Plaintiff's obligation to pay court costs extends to Midland because on December 21, 2010, Midland received a valid assignment of HSBC's rights under the agreement. See Ex. A at ¶¶ 3(b), 4; Septembertide Publishing, B.V. v. Stein & Day, Inc., 884 F.2d 675, 682 (2d Cir. 1989) ("It has always been the law in New York that an assignee stands in the shoes of its assignor and takes subject to those liabilities of its assignor that were in existence prior to the assignment"). By legal and logical extension, this right extended further to C&S when it was retained on Midland's behalf to pursue collection of Plaintiff's defaulted debt.

Under the unambiguous language of his credit agreement, Plaintiff's obligation to pay court costs was contingent only upon his default. Yet Plaintiff attempts to read into the agreement some obligation to wait until those costs are reduced to a judgment. That reading is wholly unsupported by the contract and case law. Moreover, the cases Plaintiff cites regarding attorneys' fees are inapposite because C&S's letter did not even attempt to seek attorneys' fees (though clearly it could have, given the language of Plaintiff's agreement to pay "court costs, reasonable attorneys' fees and other collection costs" in the event of a default).

Plaintiff's underlying claim thus lacks merit, and there is no liability to vicariously impute to Midland.

## II. Plaintiff Failed to Allege the "Exercise of Control" Required to Give Rise to Vicarious Liability

Plaintiff's entire case against Midland is based on the conclusory allegations that "Midland is vicariously liable for the acts of" C&S (FAC, ¶ 39) because C&S "was employed by . . . Midland, to collect on the subject debt" (id. ¶ 10). Plaintiff alleges nothing else about Midland. In this regard, Plaintiff's claim against Midland is strikingly similar to the claim that

5475511v.1

was dismissed in Bodur v. Palisades Collection, LLC, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011).

The plaintiff in that case similarly argued that a debt collection company was vicariously liable for the FDCPA violations of the collection law firm it hired to collect the debt. Id. at 259. But the court explained that vicarious liability requires more than just hiring someone: "[t]o be vicariously liable under the FDCPA, 'the principal must exercise control over the conduct or activities of the agent.'" Id. (quoting Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1173 (9th Cir. 2006)). As Plaintiff has failed to do here, the plaintiff in Bodur also "failed to provide any evidence, or even claim, that [the debt collection company] exercised control over [the law firm] or was involved in any of [the law firm's] collection attempts." Id. Absent that, the court held that the debt collection company "is not vicariously liable and is therefore entitled to summary judgment." Id. See also Byrd v. Law Offices of John D. Clunk Co., LPA, No. 09-cv-076, 2010 U.S. Dist. LEXIS 20636 (S.D. Ohio Mar. 8, 2010); McNall v. Credit Bureau of Josephine Cnty., 689 F. Supp. 2d 1265, 1277-78 (D. Or. 2010); Cassady v. Union Adjustment Co., No. 07-5405, 2008 U.S. Dist. LEXIS 90700 (N.D. Cal. Oct. 27, 2008).

The same is true here, where Plaintiff alleges only that Midland **hired** C&S, but fails to allege or offer proof that Midland **exercised control** over C&S or the letters it sent. Plaintiff's vicarious liability claim should therefore be dismissed.

Plaintiff's reliance on the ostensible "leading case" on vicarious liability under the FDCPA, Fox v. Citicorp. Credit Services, Inc., 15 F.3d 1507 (9th Cir. 1994), is misplaced. (DE 60 at p. 22). While Fox offers a seemingly compelling soundbite—that "Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken"—the material facts are entirely distinguishable. The plaintiff in Fox alleged that a debt collector violated the

FDCPA when the law firm it hired filed a collection lawsuit in the wrong county.[3] Id. at 1511. With respect to the FDCPA's venue requirement, the Fox court reasoned that Congress must have intended debt collectors to be vicariously liable for their lawyers actions, otherwise debt collectors would never be held liable for a violation of that section. Id. at 1516. Thus, the court in Fox was clearly concerned with Congress' intent given the fact that the alleged violation (initiating a lawsuit in an improper venue), is an act that is almost always conducted by an attorney.

In contrast to Fox, the conduct at issue here—sending a debt collection letter—is not one that Congress would have assumed to be carried out exclusively by an attorney. Indeed, one need not be an attorney to send a collection letter. But a collection law suit on behalf of a corporate entity always must be filed by an attorney. Plaintiff's invocation of Fox, then, does not save Plaintiff's deficient claim against Midland.

Absent any allegation that Midland exercised control over C&S or its letters, Plaintiff's vicarious liability claim against Midland fails and should be dismissed.

### III. Plaintiff's Own Motion for Leave to Amend Demonstrates That Plaintiff Could *Never* Plead a Valid Vicarious Liability Claim Against Midland

While this Motion was pending, Plaintiff filed a belated (by a year) motion seeking leave to amend his complaint for a second time. (DE63). Midland will respond directly to that motion in accordance with the briefing schedule (DE 66), but addresses one key aspect of it here because it proves fatal to Plaintiff's vicarious liability claim against Midland. In short, the basis for Plaintiff's proposed amendment demonstrates that Plaintiff could never plead a plausible claim for vicarious liability against Midland.

---

[3] Section 1692(i)(a)(2) of the FDCPA requires that legal actions to collect on debts be brought in either the judicial district in which the consumer signed the contract sued upon or the district in which such consumer resides.

5475511v.1

The purpose of Plaintiff's motion to amend is to create different classes of consumers who received the same C&S form letter, but which were sent on behalf of different creditors:

> Class A, consisting of the approximately 38,145 consumers who were sent the letter at issue by Defendant Cohen & Slamowitz, LLP, regardless of the creditor, and Class B, consisting of the approximately 17,475 consumers who were sent the same letter in connection with debts allegedly owed to Defendant Midland Funding, LLC.

(DE 63-2 at ¶ 9). By trying to have his cake and eat it too, however, Plaintiff has undermined his vicarious liability claim against Midland. That is, by acknowledging that C&S sent the same form letter to more non-Midland debtors than to Midland debtors, Plaintiff has revealed that he can never truthfully plead that Midland "exercise[d] control over the conduct or activities of the agent" necessary to give rise to vicarious liability. Bodur, 829 F. Supp. 2d at 259.

Curiously, Plaintiff does not allege that any of the non-Midland creditors exercised control over the same C&S form letter that was sent to their consumers. Does Plaintiff contend that Midland dictated the form of letter C&S was required to use for all C&S clients, and not just Midland? He certainly has not alleged that theory—nor could he plausibly do so within the bounds of Rule 11 or his *Iqbal/Twombly* pleading obligations. More likely, Plaintiff simply added Midland to this case as a perfunctory deep pocket, without adequately alleging any actual misconduct by Midland. Accordingly, Plaintiff's own motion to amend further demonstrates that Plaintiff's vicarious liability claim against Midland incurably fails and must be dismissed.

## CONCLUSION

Because there is no underlying liability to impute to Midland, and because Midland did not exercise control over C&S in any event, Midland respectfully requests that this Court grant Midland's motion for a judgment on the pleadings.

Dated: New York, New York
April 5, 2013

5475511v.1

Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Thomas A. Leghorn
150 E. 42nd Street
New York, NY 10017
(212) 490-3000 (phone)
(212) 490-3038 (facsimile)
thomas.leghorn@wilsonelser.com
*Attorney for Defendants MIDLAND FUNDING LLC d/b/a MIDLAND FUNDING OF DELAWARE, LLC*