UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,

                           Plaintiff,

    v.

COHEN & SLAMOWITZ, LLP,
and MIDLAND FUNDING LLC d/b/a
MIDLAND FUNDING OF DELAWARE LLC

                           Defendants.
_____

No. 11-cv-0842(WMS)(LGF)

CLASS ACTION

### Plaintiff's Memorandum of Law in Support of Motion to Compel

**I.**     **Preliminary Statement**

This is a case brought by Plaintiff under the Fair Debt Collection Practices Act ("FDCPA")[1] for Defendants' abusive tactics employed in the course of their attempt to collect a consumer debt from Plaintiff Michael Hallmark. The complaint, and the proposed amended complaint, alleges that two of Defendants' letters to Plaintiff were deceptive in violation of the FDCPA.

Plaintiff filed his Complaint on October 6, 2011. Plaintiff filed his First Amended Complaint, asserting claims on a class basis, on July 2, 2012. Plaintiff sought leave to file his Second Amended Complaint on March 12, 2013. Plaintiff served his First Set of Written Discovery Requests on Defendant Cohen & Slamowitz, LLP ("C&S") on November 5, 2012. C&S has thus had nearly six months

---

[1] 15 U.S.C. § 1692, *et seq.*

1

to provide adequate responses and produce responsive documents to Plaintiff. Instead, C&S has engaged in a pattern of evasion and obstruction. This conduct is unacceptable and has contributed to massive delay in this case. Plaintiff now moves to compel discovery responses and documents in four specific subject matters: (1) net worth information of C&S; (2) all contracts and agreements between C&S and co-defendant Midland Funding LLC ("Midland") concerning Plaintiff's alleged debt; (3) information about who paid what fees, to whom, and whether they were paid pre- or post-judgment; and (4) C&S's insurance coverage. Specifically, Plaintiff moves to compel the following:

- Interrogatory nos. 10, 11, 15, 16, and 19-24.
- Requests for Production of Documents nos. 1, 2, 6, 8, 9, 11, 12, 15, 18-24, and 26-49.

## Argument

### II. C&S must produce information about its alleged net worth

Section 1692k(a) of the FDCPA explicitly states that damages in a class action may be calculated based on the debt collector's net worth.[2] Accordingly, Plaintiff requested information and documents about C&S's net worth in numerous interrogatories and document production requests.[3] Information about C&S's net worth is indisputably relevant to damages and class certification and therefore to

---

[2] 15 U.S.C. § 1692k(a).
[3] *See* Interrogatory nos. 19-24 and Requests for Document Production nos. 19-23 and 26-49, contained within Defendant Cohen & Slamowitz's Second Supplemental Response to Plaintiff's Discovery Demands, attached as <u>Exhibit A</u> to the accompanying Declaration of Michael N. Litrownik (the "Litrownik Decl."), dated April 12, 2013.

this action.[4] C&S, however, has obstructed discovery into its net worth in two interrelated ways.

First, C&S stated "upon information and belief, that its net worth is less than $1,000."[5] C&S further stated that its "calculation is based on the following formula: assets minus liabilities equals equity (net worth). [C&S] presently has no retained earnings and owns no real property. [C&S] is presently operating with an outstanding loan/debt."[6] But C&S has refused to produce documents or information substantiating this improbably low net worth, as requested in Interrogatory nos. 19-24 and Requests for Production nos. 19-23 and 26-49. C&S has refused to produce tax returns, financial statements or reports, lists of assets, liabilities, or debts, or any other documents that would permit Plaintiff to arrive at his own conclusion

---

[4] *See, e.g., Mailloux v. Arrow Financial Services, LLC*, No. 01 CV 2000, 2002 WL 246771, at *1 (E.D.N.Y. Feb. 21, 2002) ("net worth is an absolute cap on all recovery to the class and thus critical to a determination of potential damages. Thus, the materials plaintiff seeks [tax returns and financial reports] are unquestionably relevant and discoverable. In any event, plaintiff need not accept defendant's interpretation of its financial data through representations in an affidavit, but is entitled herself to examine the data underlying defendant's statement of net worth."); *Ramirez v. Palisades Collection, LLC*, No. 07 C 3840, 2008 WL 7506560, at *1 (N.D. Ill. Jan. 7, 2008) ("Information concerning a defendant's net worth is useful in determining whether class certification is appropriate in an FDCPA action."); *Trevino v. ACB American, Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (finding net worth information "relevant, and potentially useful in determining whether this case is appropriate for class certification"); *Bode v. Encore Receivable Management, Inc.*, No. 05-CV-1013, 2006 WL 801017, at *1 (E.D. Wisc. Mar. 29, 2006 ("Given that damages in a class action may be calculated based on a defendant's net worth, information concerning the defendant's net worth is relevant and potentially useful in determining whether a class action is superior to other methods of adjudication.").

[5] *See* Exhibit A, Interrogatory Response no. 8, at 30.

[6] *Id.*

regarding the net worth of C&S.[7] Rather, C&S has objected on the grounds of vagueness, ambiguity, overbreadth, and irrelevance. In other words, even though the leading case about how to value net worth under the FDCPA holds that the relevant inquiry is as to the debt collector's "balance sheet or book value net worth,"[8] C&S is refusing to reveal its balance sheet or its books. These objections, under the case law of this circuit and others, are therefore meritless and frivolous. Plaintiff accordingly requests that the Court overrule C&S's frivolous objections and order it to supplement Interrogatory nos. 19-24 and Requests for Production nos. 19-23 and 26-49 in conjunction with the below request.

Second, C&S ignored the uniform definition of "defendant" in force under Local Civil Rule 26(d)(3)(E). Under the local rule, any reference to C&S in Plaintiff's discovery requests means "the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates." Under this definition, Plaintiff's interrogatories concerning the identification of real property and assets owned by C&S[9] obligated C&S to identify any real property or assets owned not only by C&S, but also by its officers, directors, employees, partners, corporate parent, subsidiaries, or *affiliates*. By failing to apply the uniform definition required by this district, C&S answered Interrogatory no. 20, which requested an identification of each asset owned by C&S, with the following:

---

[7] *See Mailloux*, 2002 WL 246771, at *1 ("In any event, plaintiff need not accept defendant's interpretation of its financial data through representations in an affidavit, but is entitled herself to examine the data underlying defendant's statement of net worth.")
[8] *Sanders v. Jackson*, 209 F.3d 998, 1004 (7th Cir. 2000).
[9] *See* Exhibit A, Interrogatory nos. 19, 20, and 21.

"Defendant owns no assets."[10] Having been in business for 22 years,[11] C&S must have assets or C&S must be leasing or using assets owned by its principals or affiliates. Boldly stating that C&S has no assets is a sham that should not be tolerated by this Court. Plaintiff accordingly requests that the Court compel C&S to supplement its responses to Interrogatory nos. 19-24 and Requests for Production nos. 19-23 and 26-49 by including the uniform definition of C&S under Local Civil Rule 26(d)(3)(E).

### III. C&S must produce all relevant communications, contracts, and agreements with Midland and with Plaintiff, especially because it has produced them for the purposes of its Rule 12(c) motion

Plaintiff requested all communications between C&S and Midland concerning Plaintiff and all communications between C&S and Plaintiff.[12] In response, C&S objected to communications between it and Midland on the basis of attorney-client privilege,[13] but has refused to provide a privilege log as required by Local Civil Rule 26(e). And C&S objected to describing all communications with it and Plaintiff on the basis of vagueness, ambiguity, and overbreadth.[14] Notwithstanding these objections, C&S stated that such communications would consist of correspondence previously disclosed and is contained in C&S's collection file, which C&S claims to have produced.[15] But this is not a response. As required by this interrogatory, C&S

---

[10] *See* Exhibit A, Interrogatory Response no. 20, at 34.
[11] *See* www.cslawllp.com/aboutus.asp.
[12] *See* Exhibit A, Interrogatory nos. 10 and 11.
[13] *See* Exhibit A, Interrogatory Response no. 10.
[14] *See* Exhibit A, Interrogatory Response no. 11.
[15] *Id.*

must describe all communications, including date, participant, subject matter, and whether by regular or certified mail, telephone conversation, or message.

Plaintiff further requested the production of all agreements between C&S and Midland and documents concerning authority granted to C&S by Midland regarding the collection of Plaintiff's alleged debt.[16] C&S again objected on the basis of attorney-client privilege and again failed to provide a privilege log or satisfy any of the other requirements under Local Civil Rule 26(e).[17]

Next, in Requests for Production nos. 11, 12, and 15, Plaintiff requested all documents, including electronic records, and communications concerning Plaintiff's alleged debt and concerning, relating, or referring to Plaintiff.[18] In response, C&S produced Plaintiff's collection file, which lists activity on Plaintiff's collection account, and contains collection letters, pleadings, and a purported bill of sale, purported closing statement, and an unidentified field data form purportedly from the Bill of Sale / Assignment of Accounts. These are the only documents demonstrating a chain of title C&S has produced in the six months since Plaintiff first served his requests for production. Plaintiff again followed up via email yesterday to C&S's attorney concerning whether this is the entirety of the document production related to the chain of title, but has not yet received a response. The chain of title is discoverable because it goes directly to one of the defendants' primary defenses. C&S claims that it had a right by contract to add the $140 filing

---

[16] *See* Exhibit A, Interrogatory nos. 1 and 2.
[17] *See id.*
[18] *See* Exhibit A, at 39-40.

fee pre-judgment.[19] Leaving aside the fact that C&S decided to introduce this purported evidence in its *reply* and not in its motion under Rule 12(c), the fact that C&S is relying on this alleged agreement compels it to produce all responsive documents concerning the chain of title to Plaintiff's alleged debt and all applications, agreements, contracts, amendments, or any other documents related to Plaintiff's alleged debt.[20]

## IV. C&S must produce information about who paid what fees, to whom, and when, because this information is integral to the calculation of damages

In response to discovery requests, C&S produced a spreadsheet identifying the 38,325 people by name and address who are members of the putative class. But this spreadsheet did not answer all of Plaintiff's discovery requests. In order to simplify the discovery process for C&S, Plaintiff requested, via an email on February 15, 2013, that C&S produce information about who paid what to whom, when, and whether pre- or post-judgment.[21] In other words, Plaintiff simplified his earlier discovery requests by saying "this" is the information we need for these people listed on your spreadsheet. C&S converted this email into formal interrogatories and served responses.[22] C&S refused to produce the requested information Plaintiff, instead objecting, primarily on burdensomeness grounds, as follows:

---

[19] *See* C&S Reply Brief (ECF #69-3), at 3-4.
[20] *See Citibank (S.D.), N.A. v. Martin*, 11 Misc.3d 219, 226 (Civ. Ct., N.Y. Co. 2005) (holding that "an assignee must tender proof of assignment of a particular account").
[21] *See* Exhibit B to the Litrownik Decl. (email asking five questions).
[22] *See* C&S's Third Supplemental Responses to Plaintiff's Interrogatories, attached as Exhibit C to the Litrownik Decl.

> Defendant is unable to provide the information requested. Defendant objects as the demand is unduly burdensome. Defendant states that it has consulted with its IT Department and has been informed that in order to provide an accurate accounting of the 38,325 persons identified in the spreadsheet who paid the City Court filing fee, individual examination of each of the 38,325 files/debtors will be required. The basis of the determination that individual examination of each [of the] 38,325 files will be required is the fact that there is no way to determine whether a fee has been paid by a consumer without looking at the files on an individual basis. Defendant states that its clients pay all the costs associated with litigation and there is no for defendant to determine out of the 38,325 files which ones have paid a filing fee. This is in large part due to the fact that defendant does not break down payments received from debtors in a manner that is easily retrievable and categorized.[23]

But C&S's objection must fail because conclusory and unsupported assertions concerning undue burden are insufficient. C&S has failed to establish through affidavits or any other evidence why this request is too burdensome. "An objection must show specifically how an interrogatory is overly broad, burdensome or oppressive, by submitting affidavits or offering evidence which reveals the nature of the burden."[24] Because C&S has not met its burden, the Court should respectfully compel responses to what C&S has identified as Plaintiff's Interrogatory nos. 1-5 in its Third Supplemental Responses.[25]

Moreover, every one of the entries on C&S's collection log is a variable that can be searched in its database. This can be seen from the "collection log" produced of C&S's computer records for Plaintiff. There is no affidavit from any IT person as to why a $140 filing fee can be *added* to every amount demanded by letter, but the

---

[23] *See* Exhibit C, at 2-3.
[24] *Chubb Intergrated Sys. v. National Bank of Wash.*, 103 F.R.D. 52, 59-60 (D.D.C. 1984); *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980).
[25] *See* Exhibit C.

8

IT person cannot write a script to determine who paid all or a portion of the $140 fee and whether it was paid before or after judgment. This information is vital, because it goes directly to determining *actual* damages, *i.e.*, those consumers who paid a filing fee *before* entry of judgment have suffered actual damages of at least the $140 filing fee. Because C&S's computer records show the amounts paid by consumers as well as the dates of payment and the dates of entry of judgment, C&S's claims of not being able to write a script to cull this information from its database rings hollow. In other words, C&S should have little difficulty listing those individuals who paid the $140, when they paid it, and whether it was paid before or after the date of judgment. All of these variables should be searchable in C&S's database.

Finally, this is not the first time C&S has claimed not to be able to do something on its computer only to change its tune later. For example, C&S initially claimed not to be able to identify the class members, but when confronted by Plaintiff's counsel, Brian Bromberg, Esq., who walked its attorneys through the collection log for Plaintiff showing the variables that contained the key information necessary to create a class list, C&S created a class list in short order. It is therefore unacceptable that Plaintiff is forced to move to compel this information.

**V.    C&S must produce all insurance policies covering it for violations of the FDCPA alleged by this action**

Plaintiff not only requested information and documents concerning all insurance policies covering C&S for violations of the FDCPA alleged by this

lawsuit,[26] but Federal Rule of Civil Procedure 26(a)(1)(D) requires C&S to provide all insurance policies that may provide coverage for part or all of any judgment that might be entered in the action.[27] C&S stated details about its purported insurance policy, but has refused to produce the policy itself,[28] either in discovery or as part of its initial disclosures under Rule 26(a). This is improper; C&S must produce all insurance policies.[29]

## Conclusion

By reason of the foregoing, this Court should grant Plaintiff's motion to compel responses to Interrogatory nos. 10, 11, 15, 16, and 19-24 and responsive documents to Requests for Production of Documents nos. 1, 2, 6, 8, 9, 11, 12, 15, 18-24, and 26-49, should award Plaintiff fees for making this motion under Rule 37, and should award any other relief as the Court deems appropriate.

Dated: New York, New York
      April 12, 2013

                                /s/ Michael N. Litrownik
                                Michael N. Litrownik, Esq.
                                Bromberg Law Office, P.C.
                                *Attorneys for the Plaintiff*
                                40 Exchange Place, Suite 2010
                                New York, New York 10005
                                (212) 248-7906
                                mike@bromberglawoffice.com

---

[26] *See* <u>Exhibit A</u>, Interrogatory no. 15 and Request for Production no. 18
[27] Fed. R. Civ. P. 26(a)(1)(D).
[28] *See* <u>Exhibit A</u>, Interrogatory Response no. 18.
[29] *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010); *Excelsior College v. Frye*, 233 F.R.D. 583, 585-86 (S.D. Cal. 2006).