UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL HALLMARK,
*on behalf of himself and all others similarly situated,*

Plaintiff,

v.

COHEN & SLAMOWITZ, LLP and MIDLAND FUNDING, LLC d/b/a MIDLAND FUNDING OF DELAWARE LLC,

Defendants.

**DECISION AND ORDER**
11-CV-842S

## I. INTRODUCTION

Seeking to represent a class of similarity situated individuals, Plaintiff Michael Hallmark brings this action against Defendants Cohen & Slamowitz, LLP ("C&S") and Midland Funding, LLC ("Midland"). Hallmark alleges that Defendants violated the federal Fair Debt Collection Practices Act ("FDCPA") in the course of attempting to collect a debt.

There are currently five motions before this Court, three of which were filed by Hallmark; he seeks to (1) certify this case as a class action, (2) amend his complaint, and (3) strike an affirmation submitted by C&S. For their part, each defendant has also moved for judgment on the pleadings, with Midland simply adopting the reasoning articulated in C&S' motion.

As an initial matter, this Court must address Hallmark's motion to amend his complaint. Defendants object, arguing, in essence, that the proposed amendments in the second amended complaint are futile. Nonetheless, Defendants have addressed the

proposed amended complaint and they are therefore not prejudiced by this Court considering the amended pleading. Moreover, this Court finds that the proposed amendments do not materially alter the substantive allegations in this case. Finding no "undue delay, bad faith or dilatory motive on the part of the movant," see Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002) (quoting Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)), this Court will grant Hallmark's motion and construe the motions for judgment on the pleadings as against the second amended complaint. See Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

So construed, and for the following reasons, Defendants' motions for judgment on the pleadings are denied; Hallmark's motion to certify this case as a class action is granted, and his motion to strike is denied as moot.

## II. BACKGROUND

### A. Facts[1]

The allegations in this case are straightforward: According to Hallmark, he incurred and defaulted on a credit card debt owed to HSBC Bank Nevada, N.A. (Second Am. Compl. ¶¶ 7, 9; Docket No. 63-1.) At some point, Midland came to own the debt, and it employed C&S to collect it. (Id., ¶ 10.) In a letter addressed to Hallmark from C&S, dated August 1, 2011, the balance of the debt was stated as $1,835.31. (Id., ¶ 11.) In a subsequent letter from C&S to Hallmark, dated August 17, 2011, the balance of the debt was stated as $1,982.89, or $147.58 more than the balance stated in the first letter. (Id.,

[1] Facts alleged in the complaint – but not labels or legal conclusions – must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

¶ 12.) $140.00 of this increase was added to Hallmark's debt because C&S wrote and mailed a check, along with a summons and complaint, to Buffalo City Court to pay the required filing fee for a newly instituted debt-recovery action against Hallmark. (Id., ¶¶ 13–14.)

Hallmark alleges this increase, specifically the attempt to collect the court cost, violated the FDCPA.

**B. Procedural History**

The procedural history of this case far exceeds the factual one. Hallmark filed his initial complaint on October 6, 2011. After both Defendants answered, Hallmark moved to amend his complaint in March of 2012. (Docket No. 16.) In June of that year, Magistrate Judge Leslie G. Foschio granted that motion (Docket No. 27), and Hallmark soon filed his amended complaint. In December of 2012, Hallmark moved for class certification. (Docket No. 38.) Shortly after that, C&S moved for judgment on the pleadings (Docket No. 42); and Midland soon filed its own motion, adopting the reasoning set forth by C&S. (Docket No. 48).

In March of 2013, Hallmark moved to amend the complaint again (Docket No. 63). Then the floodgates opened. In April of 2013, Hallmark filed:

- a motion to compel (Docket No. 71),
- a supplemental motion to compel (Docket No. 74),
- a motion to strike (Docket No. 83) the declaration of Daniel Ryan (Docket No. 69), and
- a motion to compel further discovery responses (Docket No. 86).

Also in April, C&S filed motions to:

- quash Hallmark's subpoena *duces tecum* (Docket No. 82), and
- stay discovery (Docket No. 85).

Judge Foschio granted the motion to stay discovery, awaiting resolution of the current motions before this Court. Accordingly, only the five motions identified in the introduction are currently before this Court.

## III. DISCUSSION

### A. Judgment on the Pleadings – Standard

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion . . . ." Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006). Rule 12(b)(6), in turn, allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

to legal conclusions.”).

“To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a “formulaic recitation of the elements of a cause of action will not do.” Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim “across the line from conceivable to plausible.” Twombly, 550 U.S. at 570.

**B. The Fair Debt Collection Practices Act**

Congress enacted the FDCPA “to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.” 15 U.S.C. § 1692(e).

To determine whether a FDCPA violation has occurred, this Circuit employs the “least sophisticated consumer” test. Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993). The “basic purpose” of this standard is to “ensure that the FDCPA protects all consumers, the gullible as well as the shrewd.” Id. But “[t]he unsophisticated consumer isn't a dimwit. She may be uninformed, naïve and trusting but she has rudimentary knowledge of the financial world and is capable of making basic logical deductions and inferences.” Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 645 (7th Cir. 2009) (internal citations and quotation marks omitted).

## C. Defendants' Motions for Judgment on the Pleadings

Hallmark alleges that Defendants violated FDCPA Sections1692e,1692f, 1692g,and, as well as several of their subsections – 1692e(2)(A), 1692e(B), 1692e(10), 1692e(5), and 1692f(1). Generally, these provisions make it unlawful for a debt collector to "use unfair or unconscionable" or "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§ 1692e, 1692f. In particular, Section 1692e(2) prohibits the false representation of "the character, amount, or legal status of any debt." And Section 1692f(1) prohibits the "collection of any amount (including interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Hallmark asserts that the $140.00 charge violates these provisions because, at least until a judgment is entered against him by the court in which the action was commenced, Defendants are not entitled to recover court costs.

In response, Defendants argue that the additional $140.00 charge – as represented in the August 17, 2011 letter – does not violate the FDCPA because C&S actually incurred the fee. But it is clear that, even if lawfully incurred, a debt collector cannot seek to collect such a fee unless authorized by law or the underlying agreement. Although Defendants vigorously assert that they actually incurred the fee by drafting and mailing a check for the purpose of commencing a suit against Hallmark, they fail to adequately address the second question: whether they were authorized to pass along that fee to Hallmark. Defendants rely on Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292 (2d Cir. 2003) for the proposition

that a debt collector is permitted to include attorneys' fees and court costs "within the amount of debt owed when the demanded amount is what the obligation is, not what the final worst case scenario could be." (C&S Br. at 21; Docket No. 42-4.) But in Miller, the "plaintiff [did] not dispute that the credit card agreement [] provided for payment of attorneys' fees." 321 F.3d at 307. This, of course, renders the collection of attorneys' fees permissible because they were "expressly authorized by the agreement creating the debt." § 1692f(1). Here, Defendants wait until their reply memorandums of law to point to any such agreement in this case. Indeed, in their joint initial memorandum, they did not submit any agreement or make any attempt whatsoever to argue that any such agreement (or law) exists. And, for several reasons, this Court finds the late submission and argument to be inadequate.[2]

First, "new arguments may not be made in a reply brief." Ernst Haas Studio, Inc. v. Palm Press, Inc., 164 F.3d 110, 112 (2d Cir. 1999) (declining to hear new argument where, as here, an "attempt [was] made in the Reply Brief to supply what was conspicuously omitted in the main Brief").[3] This principle is particularly apt here where Hallmark was unable to respond to the potentially pivotal argument that he is bound by an agreement – heretofore unmentioned – that permitted Defendants to recover court costs.

Second, Defendants chose to move for judgment on the pleadings, rather than summary judgment. Yet they have not sufficiently demonstrated that the complaint *solely*

---

[2]Hallmark moves to strike this submission and a related affidavit. But because this Court finds – independent of the motion to strike – that the submission is insufficient, the motion to strike is rendered moot.

[3]For this reason, this Court also declines to address Midland's argument, raised for this first time midway though its reply brief, that Hallmark insufficiently alleged that it "exercised control" over C&S. (Midland Reply Br., at 4; Docket No. 70.)

relies on this proffered agreement, and they have failed to point to any authority suggesting that a document such as this is *integral* to the complaint, as is required for this Court to consider documents outside the pleadings. See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original). C.f. Shapiro v. Riddle & Associates, P.C., 351 F.3d 63 (2d Cir. 2003) (affirming grant of *summary judgment* where agreement authorized defendant to assess collection costs).

Finally, Defendants' proof is cursory. Defendants provided what appears to be only a portion (and a partially inverted portion at that) of the "HSBC Select Credit Agreement," which purports to grant them the authority to collect court costs. But there is no indication that this was signed or otherwise executed by Hallmark. And Defendants have supplied no affidavit from anyone associated with HSBC Bank Nevada, N.A., the entity that originally issued the credit card and presumably drafted the agreement, to authenticate it. There are, accordingly, serious questions about its authenticity that have not been addressed by Defendants.

In sum, since Defendants have not satisfactorily identified an agreement or provision of law authorizing them to collect the $140.00 fee, Hallmark has stated a claim that Defendants violated Section 1692f(1) of the FDCPA by adding that fee to his debt. Further, because the inclusion of this fee, to which Defendants may not have been entitled, would serve to mislead the "least sophisticated consumer" as to the true amount of the debt, Hallmark's Section 1692e(2)(A), 1692e(2)(B), and1692e(10) claims also withstand Defendants' motions for judgment on the pleadings. See Shula v. Lawent, 359 F.3d 489, 492 (7th Cir. 2004) ("Because the plaintiff did not owe the defendants $52.73 [in court costs], the letter demanding that payment as a debt that he did owe them was false and

misleading and so violated section 1692e.") Bird v. Pressler & Pressler, L.L.P., No. 12-CV-3007 JS ETB, 2013 WL 2316601, at *3 (E.D.N.Y. May 28, 2013) (impermissible attempted recovery of fees, if correctly pleaded, states a claim under Section 1692e(2)(B)).

The same cannot be said, however, about Hallmark's new allegation, found only in the second amended complaint, that Defendants violated Section 1692g(a) by failing to provide him with a new validation notice after adding the court filing fee. That provision provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall" send the consumer written notice of certain enumerated background information and rights with respect to the debt.

This provision is inapplicable here because, although the $140 filing fee was a new charge, it was connected to, and indeed it was added to, the original debt. A new validation notice was therefore not required. See 15 U.S.C. §§ 1692g(a) (validation notice required only after initial communication). This fact distinguishes this case from Lawent, on which Hallmark relies. 359 F.3d 489. There, the original debt was extinguished because the debtor-plaintiff paid it in full. Significantly, it was not until after the debtor-plaintiff had done so that the debt collector then sought, exclusively, court costs for an action it had previously commenced. The attempted collection of court costs was therefore considered a new debt – albeit one incidental to the original – and it constituted a separate collection effort, thus requiring an accompanying validation notice within 5 days. But that is not so here, where Defendants maintained only one, unified collection effort. Accordingly, this claim is dismissed.

Last, Hallmark's claim under Section 1692e(5) is also dismissed, as Hallmark has not alleged sufficient facts to suggest that Defendants "threaten[ed] to take any action that

cannot legally be taken" or threatened action "that is not intended to be taken." 15 U.S.C. § 1692(e)(5). To the contrary, the allegations establish that Defendants could, and fully intended to, take legal action against Hallmark.

### D. Hallmark's Motion for Class Certification[4,5]

In "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (citation omitted), Rule 23 of the Federal Rules of Civil Procedure permits individuals to sue as representatives of an aggrieved class. Floyd v. City of New York, 283 F.R.D. 153, 160 (S.D.N.Y. 2012). The underlying purpose of the class-action mechanism is to foster judicial economy and efficiency by adjudicating, to the extent possible, issues that affect many similarly situated persons. Califano v. Yamasaki, 442 U.S. 682, 701, 99 S. Ct. 2545, 61 L. Ed.2d 176 (1979). "The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010); see Levitt v. J.P. Morgan Securities, Inc., 710 F.3d 454, 465 (2d Cir. 2013). Rule 23(a) provides that a class action is appropriate only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); Levitt, 710 F.3d at 464. "[C]ertification is proper only if the trial court

---

[4] Only C&S – not Midland – filed memoranda in opposition to the motion for class certification.

[5] Although Hallmark requested in his initial memorandum that this Court stay further briefing until Defendants answered basic discovery requests, those issues have been resolved and this motion is ripe for decision.

is satisfied, after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) (internal quotation marks omitted). In addition to these prerequisites, a proposed class action must fall within one of the three "types of class actions" described in Rule 23(b).

Here, Hallmark seeks to represent a class of plaintiffs who he describes as:

> All consumers with New York addresses, who: (a) within one year before March 9, 2012, the date of filing of Plaintiff's Motion to Amend in this action; (b) were sent a debt collection letter by Defendant in a form materially identical or substantially similar to the letter attached to the Amended Complaint as Exhibit B sent to the Plaintiff; or (c) were sent a debt collection letter demanding City Court filing fees that had not yet been paid, incurred, or reduced to judgment; or (d) were sent a debt collection letter that failed to disclose that the balance demanded included filing fees that had not yet been paid, incurred, or reduced to judgment; and (e) the letter was not returned by the postal service as undelivered.

(Motion for Class Certification; Docket No. 38.)[6] Hallmark further asserts that this class is appropriate under Rule 23(b)'s third category, where "questions of law or fact common to class members predominate over any questions affecting only individual members," and where a class action "is superior to other available methods." Fed. R. Civ. P 23(b)(3).

**1. Rule 23(a) Requirements**

*i. Numerosity*

In the Second Circuit, it is established that "numerosity" and impracticality of joinder are presumed when the proposed class totals at least 40. Consol. Rail Corp. v. Town of

[6] In his memoranda and second amended complaint, Hallmark also seeks to certify a subclass of plaintiffs, entitled "Class B." But that class is not identified in his motion for certification, as required by Local Rule 23(d)(2). In addition, the definition of that class varies; it is inconsistent as set forth in the second amended complaint and Hallmark's memoranda of law. Accordingly, this Court will not consider it at this time. But Hallmark is granted leave under Rule 23(c)(5) to divide the class into a subclass at a later date if appropriate.

Hyde Park, 47 F.3d 473, 483 (2d Cir.1995). In its supplemental response to Hallmark's discovery requests, C&S indicates that it sent approximately 17,475 letters to consumers, in a form similar to that which was received by Hallmark, with a filing fee included in the alleged debt. This figure elevates Hallmark's claim above mere speculation and serves to satisfy the numerosity requirement.

*ii. Commonality*

Rule 23 requires that there be "questions of law or fact common to the class." The crux of this requirement "is to ensure that 'maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir.1997) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 n. 13, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." Dukes, 131 S. Ct. at 2551 (internal quotations marks and citations omitted). The class claims must "depend upon a common contention," which "must be of such a nature that it is capable of classwide resolution." Id. This means that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

This Court finds that standard to be met. The common question – the answer to which will resolve all the claims – is whether a court filing fee was impermissibly added to a debt that defendants sought to collect. C&S argues simply that Hallmark has not met this requirement because he has failed to state a cognizable claim. But this Court has already ruled differently, and, accordingly, it finds the commonality requirement is satisfied.

*iii. Typicality*

Like commonality, the typicality requirement is meant to ensure both the economical maintenance and adequate protection of the potential class members' claims. See Marisol, 126 F. 3d at 376. This requirement, however, focuses on the "claims or defenses of the representative parties." Fed. R. Civ. P. 23(a)(3).

C&S argues that Hallmark cannot represent the class because his claim is subject to a "unique" defense, namely that Defendant has not stated a cause of action because C&S was permitted to include the filing fee. But once again, this Court has found differently, rendering this argument ineffective. And although Hallmark may be subject to *a* defense, namely an agreement authorizing Defendants to collect the filing fee, that defense is not a *unique* defense. The FDCPA statute itself creates this defense, and it has the potential to apply to the class members and Hallmark alike.

Further, it appears that the claims that the proposed plaintiffs would assert are nearly identical to those asserted by Hallmark. Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." Robidoux v. Celani, 987 F.2d 931, 936–37 (2d Cir.1993); see also In re NYSE Specialists Sec. Litig., 260 F.R.D. 55, 72–73 (S.D.N.Y.2009) ("As long as plaintiffs assert, as they do here, that defendants committed the same wrongful acts in the same manner, against all members of the class, they establish [the] necessary typicality."). Accordingly, this Court finds that Hallmark's claims and defenses are "typical of the claims and defenses of the class." See Fed. R. Civ. P. 23(a)(3).

*iv. Adequacy of Representation*

The final requirement of Rule 23(a) is that the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement asks "whether plaintiff['s] interests are antagonistic to the interest of other members of the class." In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted).

"A finding that a proposed class representative satisfies the typicality inquiry constitutes 'strong evidence that [his] interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiff['s] claims will vindicate those of the class." Pub. Employees' Ret. Sys. of Mississippi v. Merrill Lynch & Co., Inc., 277 F.R.D. 97, 109 (S.D.N.Y. 2011) (quoting Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008)). That "strong evidence" proves dispositive in this case. Indeed, Hallmark's allegation is simple and applies to each of the proposed class members. Moreover, the class members are tied together by a single legal theory – that inclusion of a court filing fee in collection letters violated the FDCPA.

**2. Rule 23(b)(3) Requirements**

Having found Rule 23(a)'s requirements satisfied, this Court must turn to Rule 23(b)(3), which provides that a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In short, two elements must be met: predominance and superiority.

*i. Predominance*

"Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." UFCW Local 1776 v. Eli Lilly and Co., 620 F.3d 121, 131 (2d Cir. 2011). Although the standard here is more demanding than that under Rule 23(a), Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002), this Court finds that the common questions of law and fact identified above serve to satisfy this element too. As this Court has repeatedly found, the issue at the center of this litigation – the legality of attempted collection of a court cost – is common to each of the proposed class members' claims. See id. (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note (1966 amendment)) ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action . . . ."). In this sense, there are no material variations in the plaintiffs' claims, rendering this case appropriate for class-action treatment. Indeed, class-action treatment is particularly appropriate here because the Court will apply the objective "least-sophisticated-consumer" standard to each Plaintiff's claims and "this court will not have to make an individual determination of each potential class member's subjective understanding of the letter in question." Mailloux v. Arrow Fin. Servs., LLC, 204 F.R.D. 38, 42 (E.D.N.Y. 2001) (certifying FDCPA class action).

*ii. Superiority*

The second element is superiority. Factors to be considered in determining whether a class action is superior to other methods of adjudication include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the

extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. R. 23(b)(3).

This Court finds that superiority element has been met. Initially, "[s]uits brought under the FDCPA such as this case regularly satisfy the superiority requirement of Rule 23." Petrolito v. Arrow Fin. Servs., LLC, 221 F.R.D. 303, 314 (D. Conn. 2004). Moreover, multiple lawsuits would be "inefficient and costly," Lapin v. Goldman Sachs & Co., 254 F.R.D. 168, 187 (S.D.N.Y. 2008), and the prospect of relatively small recovery means that potential plaintiffs might be dissuaded from bringing a claim such as this on an individual basis. See Petrolito, 221 F.R.D. at 314. None of the remaining factors appear to detract from these considerations. In fact, C&S raised no argument with respect to the superiority element. Accordingly, this Court finds it to be satisfied, and certification to be appropriate.

**3. Rule 23(g) Requirements**

Under Rule 23(g), "a court that certifies a class must appoint class counsel." While Rule 23(a)(4) "call[s] for scrutiny of the proposed class representative," subdivision (g) "guide[s] the court in assessing proposed class counsel as part of the certification decision." Fed. R. Civ. P. 23(g) (Advisory Committee Notes to the 2003 Amendments). In appointing class counsel, the court must consider: "(i) "the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action (iii) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class." Fed. R. Civ .P. 23(g)(1)(A)(i)–(iv).

There is no dispute that attorneys Brian Bromberg and Kenneth Hiller have significant experience in litigating FDCPA and class action matters. (See Hiller and Bromberg Decls.; Docket Nos. 38-3, 38-4.) Further, this Court has considered the work that these attorneys have done in identifying and investigating potential claims in this action. To that end, it finds that Plaintiff's attorneys have diligently and ably prosecuted this action to date. The attorneys further avow that there are committed to the class. Accordingly, this Court will appoint them class counsel under Rule 23(g).

## IV. CONCLUSION

Hallmark has sufficiently alleged that Defendants violated the FDCPA by misrepresenting the true amount of his debt. He has further demonstrated compliance with the pertinent requirements of Rule 23, and this Court will therefore grant his motion to certify the proposed class.

## V. ORDERS

IT HEREBY IS ORDERED, that Hallmark's Second Motion to Amend his Complaint (Docket No. 63) is GRANTED.

FURTHER, that C&S's Motion for Judgment on the Pleadings (Docket No. 42) is GRANTED in part and DENIED in part.

FURTHER, that Midland's Motion for Judgment on the Pleadings (Docket No. 48) is GRANTED in part and DENIED in part.

FURTHER, that Hallmark's Motion to Strike (Docket No. 83) is DENIED as moot.

FURTHER, that Hallmark's Motion to Certify this action as a class action (Docket No. 38) is GRANTED. The class, as defined in Hallmark's Motion for Class Certification, is CERTIFIED.

FURTHER, that the Brian Bromberg Law Office, P.C. and the Law Offices of Kenneth Hiller, PLLC are APPOINTED class counsel.

FURTHER, that Hallmark must file his Second Amended Complaint by September 20, 2013.

FURTHER, this case is referred back to Magistrate Judge Leslie G. Foschio for the handling and resolution of pending pretrial matters.

SO ORDERED.

Dated: September 14, 2013
Buffalo, New York

/s/William M. Skretny
William M. Skretny
Chief Judge
United States District Court