UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL HALLMARK,
on behalf of himself and all other similarly situated,

                              Plaintiffs,          **DECISION**
          v.                                         **and**
                                                    **ORDER**
COHEN & SLAMOWITZ,
MIDLAND FUNDING LLC,                               **11-CV-842S(F)**
                              Defendants.

APPEARANCES:   BROMBERG LAW OFFICE, P.C.
               Attorneys for Plaintiff
               BRIAN L. BROMBERG,
               JONATHAN R. MILLER, of Counsel
               40 Exchange Place
               Suite 2010
               New York, NY 10005

               LAW OFFICES OF KENNETH HILLER, PPLC
               Attorneys for Plaintiff
               SETH ANDREWS, of Counsel
               6000 North Bailey Avenue, Suite 1A
               Amherst, New York   14226

               CONNELL FOLEY LLP
               Attorneys for Defendant Cohen & Slamowitz, LLP
               ANDREW C. SAYLES, of Counsel
               85 Livingston Avenue
               Roseland, New Jersey 09068

               WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
               Attorneys for Defendant Midland Funding, LLC
               THOMAS A. LEGHORN, of Counsel
               150 East 42nd Street
               New York, New York   10017

        In this Fair Debt Collection Practices Act ("FDCPA") class action, Plaintiffs seek,

by motions to compel filed April 12, 2013, and May 1, 2013 (Doc. Nos. 71 and 86),

documents withheld by Defendants based on attorney-client privilege and lack of

relevancy.  Plaintiffs' claims are predicated on Plaintiffs' allegations that Defendant Cohen & Slamowitz, LLC ("C&S") violated the FDCPA, specifically § 1692e (prohibiting the use of false, deceptive and misleading statements in collection of a debt) and § 1692e(2)(A) (prohibiting false representation of the amount of any debt), by including a $140 court filing fee in a collection letter C&S sent to Plaintiffs prior to the actual payment of such fee.  C&S has asserted the filing fee was authorized by Plaintiffs' original debt contract, and that Plaintiffs' document requests are overbroad and seek irrelevant information, Doc. No. 138-6 at 13.  C&S also argues that as C&S's authority to collect the Plaintiff Hallmark's debt is not at issue and Plaintiffs' FDCPA allegation pursuant to FDCPA § 1692e(5) (prohibiting falsely threatening intended legal action) was dismissed by the District Judge, Plaintiffs' requests seek irrelevant information. Defendant C&S Memorandum of Law in Opposition, Doc. No. 138-6 at 16, ("Defendant C&S's Memorandum").  Defendant Midland argues that because C&S has admitted that the decision to include the premature fee payment in the collection letter was C&S's decision neither of the documents at issue – the Service Agreement ("Service Agreement" or "Agreement"), alleged by Defendants to constitute an attorney-client privileged retainer agreement, a so-called Firm Manual ("the Firm Manual") authored by Midland Credit Management, Inc. ("MCM"), a non-party, and Midland's affiliate, acting on behalf of Defendant Midland Funding, LLC ("Midland") in hiring C&S as its debt collector, both wholly owned subsidiaries of another non-party Encore Capital Group, Inc. – is relevant to Plaintiffs' claims against Midland.  Midland Funding's Response to Plaintiffs' Notice of Supplemental Authority.  Doc. No. 182 at 1.

At oral argument, conducted April 3, 2014 (Doc. No. 184), Defendants

represented that the retainer agreement between C&S and Midland sought by Plaintiffs

includes the Service Agreement and the Firm Manual.  A review of the Service

Agreement reveals that it is an agreement that in fact is between MCM and C&S, not

between Midland and C&S, thus rendering Defendants' references in Defendants'

opposing papers to Plaintiffs' motion, *see* Defendant C&S's Memorandum, Defendant

Midland's Memorandum of Law in Opposition, Doc. No. 140 (Defendant Midland's

Memorandum"), inaccurate.   Plaintiffs contested Defendants' assertion that these

documents were covered by an attorney-client privilege based on Defendants' failure to

provide a privilege log including the documents.[1]  While recognizing Plaintiffs'

argument, that Defendants had thereby waived any privilege, had potential merit, the

court directed the documents be submitted for *in camera* review (Doc. No. 184).  The

documents were submitted to the court along with a joint certification by Defendants'

attorneys on April 16, 2014 ("the Joint Certification").  In the Joint Certification, C&S

reiterated the documents are privileged and that only five sections of the Service

Agreement are relevant to Plaintiffs' claims: the "whereas" provisions on page one,

Section 2.2, Section 3.3, Section 3.4.2, and Section 3.4.3.  Joint Certification at 1-2.

According to C&S and Midland, the entire Firm Manual is within the privilege, and only

Section 5.2.1 is relevant.  *Id.* at 2.  Defendants also request that any production ordered

by the court be subject to a Confidentiality Agreement between the parties.  *Id.*

Whether a client's communication to an attorney is within the privilege depends

---

[1] Defendant C&S's contention, Defendant C&S's Memorandum of Law at 20 (citing cases), that no privilege log was required based on C&S's objection that Plaintiffs' document requests were overbroad is moot based on the court's *in camera* review and its conclusion that the requested documents are not privileged.

3

upon whether the communication was made in confidence "for the purpose of obtaining legal advice or services." *See Robbins & Myers, Inc. v. J.M. Huber Corp.,* 274 F.R.D. 63, 83 (W.D.N.Y. 2011) (citing *United States v. Int'l. Bhd. of Teamsters*, 119 F.3d 210, 214 (2d Cir. 1997) (citing *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983,* 731 F.2d 1032, 1036 (2d Cir. 1984))).  For purposes of applying the privilege, "only those communications made in confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege" are eligible to be withheld from pretrial discovery.  *See In re Six Grand Jury Witnesses*, 979 F.2d 939, 943-44 (2d Cir. 1992), *cert. denied sub nom., XYZ Corp. v. United States*, 509 U.S. 905 (1993).   The burden of establishing each element of the privilege, including the absence of any waiver, is on the party asserting the privilege.  *Int'l. Bhd. of Teamsters*, 119 F.3d at 214 (citing *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989)).  Further, as relevant to the instant case, courts have held that when an attorney or law firm acts as a collection agent the privilege does not apply.  *See Avoletta v. Danforth*, 2012 WL 3113151, at **1-2 (D.Conn. July 31, 2012) (documents relating to the "underlying collection matter" not within the privilege where defendants did not contend that at all relevant times defendants acted "as legal counsel," and the privilege log failed to demonstrate all disputed documents were subject to the privilege); *Torres v. Toback, Bernstein & Reiss LLP*, 278 F.R.D. 321, 323 (E.D.N.Y. 2012) (*in camera* review of documents from holder of debt showed no purpose to obtain legal advice but instead demonstrated disputed communications with defendant's attorney were related to defendant's "debt collection business" and, as such, were not privileged and subject to production).  "'[W]here the attorney acts as a . . .  collection agent, . . . the

4

communications between him and his client are not protected by the privilege.'"
*Avoletta*, 2012 WL 3113151, at *2 (quoting *In re Shapiro*, 381 F.Supp. 21, 22 (N.D.Ill.
1974)); *see FTC v. Lungren*, 1997 U.S. Dist. LEXIS 9557, *7 (E.D.Cal. Apr. 29, 1997)
(citing *In re Shapiro*).   In this case, Plaintiffs allege, Second Amended Complaint ¶ 5,
C&S acted as a debt collector as defined by § 1692a(6) ("'debt collector' means any
person [using instrumentalities of interstate commerce] in any business the <u>primary
purpose</u> of which is the collection of any debts") (underlining added).   Significantly, C&S
admits Plaintiffs' allegation, C&S Answer ¶ 5, thus establishing that C&S is primarily
engaged in the business of debt collection.   Here, a fair review of the Service
Agreement and the Firm Manual supports that the documents were provided to C&S, a
nationally recognized debt collection firm, for the express and primary purpose of
facilitating C&S admitted debt collection activity on behalf of Midland, and not for the
purpose of obtaining legal advice or services, and Defendants provided no affidavit, as
was their burden, *see Int'l. Bhd. of Teamsters*, 119 F.3d at 314 (party asserting privilege
has burden to establish each element of privilege), to the contrary.

   First, the Service Agreement, as characterized by Defendants, Joint Certification
Exh. A, is actually titled "Collection Agreement," thus defeating Defendants' contention
it constitutes a confidential communication to obtain legal advice or services that would
not have been made if not considered privileged.   *In re Six Grand Jury Witnesses*, 979
F.2d at 943-44.   Second, upon inspection, the Agreement deals primarily with such
matters as "accounts," "closing codes," and "commissions" paid to C&S "for collection
services" on the accounts of debtors owned by MCM, or an MCM owner, directly related
to conducting C&S debt collection activity.   As such, these matters appear to be

required aspects of C&S's regular debt collection activity, the Agreement does not represent information that would not have been communicated to C&S absent the privilege, *id.*, and therefore does not constitute a confidential communication between MCM and C&S in order to obtain legal advice or services for either MCM or Midland. Although the Agreement refers to providing notice to MCM regarding litigation instituted by C&S to collect a debt, the court finds such reporting requirements would have been communicated to C&S by MCM as a large-scale holder or owner of debt regardless of the privilege, and as such do not convey confidential information needed to enable C&S to provide legal advice or services; rather, the referenced information is incidental to the primary purpose of the Agreement which is to establish, consistent with C&S's admission that it is a debt collector primarily engaged in the commercial debt collection business, a relationship with MCM (and Midland) of debt-collector and debt-owner, not one of an attorney and client.  The remaining provisions in the Agreement relating to insurance, accounting procedures, and reporting on the status of accounts assigned to C&S for collection, confirm the substance of the Agreement is wholly incidental to any of the legal services C&S may provide to MCM on behalf of Midland, such as the actual filing of suit against a debtor, and instead establishes the general operational aspects of C&S's primary function as a debt collection agency acting as an agent on behalf of MCM and Midland.  The court therefore finds, under applicable authority, the Service Agreement is not a document protected by the privilege.  *See Avoletta*, 2012 WL 3113151, at **1-2; *Torres*, 278 F.R.D. at 323.

As noted, although MCM is not a defendant in this action, MCM's role as a party to the Agreement and author of the Firm Manual, as acknowledged by Midland's

counsel, demonstrates MCM acts as an affiliate to Midland which, according to Plaintiffs, takes title to the debts to be assigned for collection, and that MCM is the entity which arranges actual collection by C&S. *See* Doc. No. 139 Exh. F.  Although the Service Agreement does not specifically reference this fact, at oral argument counsel for Midland stated that the MCM Firm Manual also applied to Midland's working relationship with C&S and agreed to provide it for *in camera* review.  The court therefore addresses whether the Firm Manual is subject to the privilege.

The court's review of this document demonstrates that as with the Service Agreement, the Firm Manual does not contain any material within the privilege even assuming the privilege were applicable to the MCM-C&S debt collection enterprise. Specifically, the Firm Manual addresses a wide variety of business and administrative matters requiring C&S's compliance in connection with C&S's debt collection activity on behalf of MCM demonstrating that, except for those instances where C&S may actually initiate suit against a debtor, the work to be performed by C&S for MCM, and thus Midland, is that of a debt collector which attempts debt collection in most of its accounts without initiating legal action.  As Defendants fail to provide any evidence to support a contrary conclusion, Defendants have also failed to satisfy their burden to establish the applicability of the privilege on this ground.  For example, the Firm Manual specifies a code of conduct guiding the collection of MCM's debt accounts by debt collectors such as C&S, account management practices including specific procedures for the recording and remittance to MCM of funds received by C&S from debtors in the course of its collection activity, requirements for disaster recovery and continuation of service by C&S during C&S's work for MCM, auditing of C&S debt collection accounts by MCM,

7

and criteria for the decision to commence legal action.  Although some of these guidelines, *e.g.,* Firm Manual Section 5.3.6.3, do pertain to legal services, namely litigation, referring, as they do, to general and obvious conditions relevant to C&S's future decision to sue on particular accounts, directing C&S consider the applicable statute of limitations and account-debtor data, *i.e.*, potential collectibility of any judgment, such guidelines can hardly constitute confidential communications by MCM to facilitate such potential legal services by C&S that would not have been communicated unless protected by the privilege.  *See In re Six Grand Jury Witnesses*, 979 F.2d at 943-44.  Similar self-evident admonitions, such as that C&S is responsible for the accuracy of all pleadings and court filings, Firm Manual Section 5.3.6.5, that would eventually become public records, equally lack any indicia of confidentiality.  *See Robbins & Meyers, Inc.*, 274 F.R.D. at 83-86 (documents prepared for public dissemination not intended as a confidential communication not within privilege); *see also Stencil v. Fairchild Corporation*, 174 F.Supp.2d 1080 (C.D.Cal. 2001) (pleadings as public documents not confidential).  The same may be said for the Firm Manual's settlement guidelines intended to generally guide C&S negotiations with debtors. Finally, the Training Manual, Section C of the Firm Manual, contains a plethora, Firm Manual at 68-124, of detailed computerized forms or data entry templates, and related instructions, C&S is required to use to record and administer its collection activities on MCM's accounts, reflecting nothing of a confidential nature remotely within the scope of the privilege.  Additionally, Defendants provide no affidavit to support that this material was not provided to any persons within their respective organizations on other than a need to know basis, thus failing to demonstrate that even if the documents contained

information within the privilege, it was not thereby waived.  *See Robbins & Myers, Inc.*,

274 F.R.D. at 94-95 (failure to demonstrate material asserted as within privilege limited

to individuals on a need to know basis fails to meet burden to establish confidentiality

element required for application of privilege (citing cases)).  Nor is there any merit in

C&S's contention that production of the Service Agreement would reveal proprietary

information.  Defendant C&S's Memorandum (Doc. No. 138-6) at 15.  Neither C&S nor

Midland have provided any evidence by affidavit or otherwise to support this dubious

contention.  Significantly, Midland makes no similar assertion in its responses to

Plaintiffs' Document Requests Nos. 1-3.  *See* Doc. No. 156-5 at 2.  In sum, the court

finds neither the Service Agreement between MCM, on behalf of Defendant Midland,

and C&S, nor the Firm Manual, to be within the attorney-client privilege.[2]  The court

turns to the question of relevancy interposed by Defendants' objections.

As noted, Defendants contend that because C&S has admitted it was C&S and

not Midland which decided to include the court filing fee in its written communications

with Plaintiff Hallmark, nothing in the retainer agreement between these Defendants (as

revealed by Defendants' attorneys at oral argument, actually between MCM on behalf

of Defendant Midland) is relevant to Plaintiffs' claim.  *See* C&S's Memorandum at 13-

15; Midland's Memorandum at 2.  Defendants also rely on the dismissal of Plaintiffs'

FDCPA § 1692e(5) falsely threatening unintended legal action claim ("Plaintiffs' §

1692e(5) claim"), C&S's Memorandum at 16, as supporting Defendants' relevancy

---

[2]  There is no need to discuss C&S's further contention, C&S's Memorandum at 15, that as a retainer agreement the facts contained within the Service Agreement are privileged (citing cases) given the court has reviewed the contents of the Service Agreement and Firm Manual and find such documents as representing agreements relating primarily to debt collection activity fall outside the privilege and that the documents are entirely without confidential communications within the privilege.

objection.  However, Defendants' contention overlooks that Plaintiffs also seek to impose liability on Midland vicariously, Plaintiffs' Reply Memorandum (Doc. No. 155) at 2, and that by virtue of the extensive and detailed requirements and other controls imposed on C&S, as MCM's, and, impliedly Midland's, debt collector, by the Service Agreement and the Firm Manual, the relationship between Midland (through MCM) and C&S is one of principal and agent supporting vicarious liability upon Midland, as Plaintiffs allege.  *See* Second Amended Complaint (Doc. No. 112) ¶ 42.  That C&S has accepted responsibility for the alleged FDCPA violations based on the improper attempt to collect, prematurely, an unpaid court filing fee, or that Plaintiffs' § 1692e(5) claim has been dismissed, therefore does not foreclose Plaintiffs' attempt to impose vicarious liability on Midland, based on the other FDCPA violations asserted by Plaintiffs against C&S particularly resulting from inclusion of the yet unpaid filing fee in C&S's collection letter to Plaintiffs.  *See Okyere v. Palisades Collection, LLC,* 961 F.Supp.2d 508, 517 (S.D.N.Y. 2013) (recognizing liability against defendant debt collection company for FDCPA violations committed by defendant's attorney based on control over attorney's actions (citing cases)); *see also Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (recognizing vicarious liability of client under FDCPA for actions of attorney for violations of the FDCPA based on client's control of attorney (citing *Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516 (9th Cir. 1994))).  Thus, as the court finds the relationship with C&S on behalf of Midland established by MCM's Service Agreement with C&S, including its Firm Manual, is probative of a degree of control sufficient to support Midland's potential vicarious liability for C&S's FDCPA violations as Plaintiffs allege, the documents are relevant as responsive to Plaintiffs'

Document Requests Nos. 1 and 2 directed to C&S, and Plaintiffs' Document Requests

Nos. 1, 2 and 3 directed to Midland.

**CONCLUSION**

Based on the foregoing, the Service Agreement and Firm Manual, submitted to

the court for *in camera* review pursuant to the Certification, are not protected by the

attorney-client privilege and are relevant, for purposes of discovery in this case, to

Plaintiffs' claims.  Accordingly, Plaintiffs' motions  (Doc. Nos. 71 and 86) to compel

production of these documents are GRANTED, and the documents shall be produced

to Plaintiffs **within 10 days** subject to the Confidentiality Agreement between the

parties.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: May 7, 2014
         Buffalo, New York