# Exhibit A

1  sheet.
2           MR. SAYLES:  But we also have the case law guidance
3  that the net worth is based on the balance sheet which would
4  be the assets and the liability.
5           THE COURT:  Yes, including cash, which may be
6  minimal.
7           MR. SAYLES:  Yes.
8           THE COURT:  But unless they're bankrupt, then there
9  must be other assets which exceed liabilities.  As far as I
10 know -- and you help me out here, I may be wrong -- does
11 anybody know whether or not such information is reportable or
12 is required to be reported on an LLC's tax return?
13          MR. SAYLES:  As a matter of fact, it's an LLP, Your
14 Honor.
15          THE COURT:  LLP, same difference, limited
16 partnership.
17          MR. SAYLES:  I'm not aware.  I haven't personally
18 seen the income tax returns for the corresponding years.  I
19 have seen the accountant's report.
20          THE COURT:  Well, do they have or do they not have
21 audited balance sheets?
22          MR. SAYLES:  I do not believe they have audited.
23 What I have been provided is a financial sheet.  I don't
24 believe they --
25          THE COURT:  What is it and who prepared it?

1    MR. SAYLES:  Pardon?
2    THE COURT:  What is it and who prepared it?
3    MR. SAYLES:  It was a report prepared by their
4  accountant, Markham and Associates which outlined their net
5  worth for 2011.  It identified assets, income, things like
6  that, information and basically provides a picture of their --
7    THE COURT:  I'm sensitive to the issue of audited
8  because we know that many small businesses don't have audited
9  financials.  This doesn't sound like an -- what is their
10 annual revenue?
11   MR. SAYLES:  I don't know that off the top of my
12 head, Your Honor.
13   THE COURT:  Did you do a -- is there a Dun and
14 Bradstreet available for C&S, Mr. Bromberg?
15   MR. BROMBERG:  I haven't tried running a D&B on them,
16 Your Honor.  There's a privately-held company.
17   THE COURT:  Well, that doesn't mean anything.  That's
18 what D&B is for.  That's exactly what you use D&B for,
19 otherwise you go to the SEC and look up the case.
20   MR. BROMBERG:  Good point.  I haven't tried running a
21 D&B on them.
22   MR. SAYLES:  Your Honor, I would suggest as an
23 initial process, start with the information that was ordered
24 in Godson and I believe it's adequate.  I believe it's
25 comprehensive.

```
 1            THE COURT:  Well, that requires you to file -- to
 2   serve audited balance sheets.
 3            MR. SAYLES:  Well, I guess under that caveat --
 4            THE COURT:  And you're now on the record as saying
 5   just order what Godson --
 6            MR. SAYLES:  Well, no, Your Honor.  I understand
 7   Godson to require that information, but I think the audit
 8   aspect was incidental.
 9            THE COURT:  Well, you talked to Judge Schroeder about
10   that?
11            MR. SAYLES:  I didn't.
12            THE COURT:  Well, if you know Judge Schroeder, he
13   doesn't order incidental information.
14            MR. SAYLES:  Well, I don't mean his statement was
15   incidental.  What was presented to him were financials that
16   happened to be audited.
17            THE COURT:  No, I don't think anything was presented
18   to him.  I think that is what was at issue.  He was asked to
19   allow for production.  Where is that decision?  Oh, I see your
20   point.  The defendant agreed to reproduce a copy -- agreed to
21   produce a company of its audited balance sheets subject to a
22   protective order.  Why was there a motion in front of him?
23   Oh, I see, because the plaintiff wanted more, apparently.
24            MR. SAYLES:  Your Honor, incidentally, I don't have
25   the specific case, but the documents I'm speaking about have
```

```
 1   been accepted in the Eastern District of New York case subject
 2   to a confidentiality order on behalf of Cohen and Slamowitz as
 3   to their net worth.  I don't have that matter before me, but I
 4   can't tell you they have been submitted in other litigations.
 5            THE COURT:  So, you're -- what you mean by so -- so,
 6   this puts some meat on the bones here about the incidental
 7   aspect of Judge -- what you're really saying is that he didn't
 8   reach the merits of the question of whether audited was
 9   required because of the defendant's proffer?
10            MR. SAYLES:  They haven't -- they were already in
11   existence.  It wasn't the issue of whether they had to --
12            THE COURT:  All right.  Well, that's good enough.  I
13   think so.  So, what authority do you have that they have to be
14   audited under the FDCPA?
15            MR. BROMBERG:  Well, it would just be -- well, the
16   leading case on the entire issue is the 7th Circuit case of
17   Sanders v. Jackson which says that net worth is book value net
18   worth --
19            THE COURT:  Not market value.
20            MR. BROMBERG:  -- Not market value.  Now, the
21   question is what is the book value.
22            THE COURT:  That's excluding good will.
23            MR. BROMBERG:  Well, actually, that's a frequent
24   misreading of Sanders v. Jackson.
25            THE COURT:  Well, I don't know.  I've read it a
```

```
 1   couple times.  I couldn't see any way around it.
 2          MR. BROMBERG:  Now, there's some loose language in
 3   there and this is entirely aside --
 4          THE COURT:  I know, I know.  Go ahead.  Make your
 5   point.  We have to move on.
 6          MR. BROMBERG:  Okay, okay.  My point though is there,
 7   they actually had books and I don't think they indicated one
 8   way or another whether they were audited.  I'd have to go back
 9   and look.  I'd have to go back and double check.  I haven't
10   read Sanders v. Jackson in a couple months, but the
11   question -- there is a key question here if all we're getting
12   is something coming from their accountant, that is, by its
13   nature, something that's not -- that hasn't been examined by a
14   third party.
15          It's been examined by a party that's been hired by
16   and works frequently with the defendant and there's no clarity
17   on what's actually there.  Unless we, ourselves, can examine
18   the underlying documents, we have no way of relying on what's
19   been presented to us by their own accountants.
20          THE COURT:  What case says that you're entitled to
21   more than what Judge Schroeder provided?
22          MR. BROMBERG:  Well, Judge Schroeder said audited.
23          THE COURT:  Well, no.  I mean, you're saying that if
24   they were audited, then you wouldn't have made all these
25   document requests and interrogatory demands?
```

1       MR. BROMBERG:  If they were audited, we'd be hard-
2  pressed to go far beyond maybe asking for say, three years of
3  tax returns with schedules.  I think if they produced audited
4  tax returns, it makes it very difficult to argue against the
5  book value net worth as represented in the audited tax
6  returns.  I had this come up on a case recently where the
7  defendants produced audited returns and we basically decided
8  we weren't going to fight what was on the audited returns.
9  You're not going to -- you know --
10      THE COURT:  Well, you can see from the Court's point
11 of view that we, you know -- your discovery requests do
12 challenge the notion of creating satellite litigation in which
13 you're attempting to second guess, for example, the tax
14 returns, which was the issues in the Malo (phonetic), case in
15 the Eastern District.
16      MR. SAYLES:  Your Honor, if I may add, in Godson,
17 Judge Schroeder cites to <u>Miller vs. Abrams</u>, Eastern District
18 of New York case rejecting discovery demands effectively
19 seeking to audit defendant's tax returns.  What Mr. Bromberg
20 just explained, he's effectively seeking to perform his own
21 audit of their returns.  So, we've got an Eastern District
22 case cited by --
23      THE COURT:  Well, that's it.  There's more than an
24 echo of concern among judicial officers who have confronted
25 the issue about opening the door into collateral litigation

```
 1  less than 50,000 to photocopy the documents that we've asked
 2  for, turn them over, we go to our account and have them look
 3  at them.
 4          THE COURT:  Point made.
 5          MR. SAYLES:  But those are -- there's a breadth of
 6  information that there's some entitlement of confidentiality
 7  and privacy because especially where the defendants are sued
 8  for --
 9          THE COURT:  No, that's -- no, no, no.  We have a
10  confidential agreement.  It's not an issue.
11          MR. SAYLES:  But the case law that exists does not
12  require more than production of the returns.  I know Godson
13  didn't have happen to involve a (sic) audited financial, but
14  it wasn't the threshold.  Nothing in that decision suggests
15  that the audited nature of those financials --
16  (An off-the-record discussion was held.)
17          THE COURT:  One of the cases is cited by Judge
18  Schroeder, I forget which, I think it's Malo, it refers to
19  financial documents.  It doesn't actually say what Judge
20  Schroeder says it says about tax returns.  Oh, it says and
21  financial report.  Excuse me, he did get it right.  Yes, he
22  did.  Of course he did.  So, we don't know though, in that
23  case, whether those documents were audited or not.
24          MR. BROMBERG:  Actually, it was my case, Your Honor.
25          THE COURT:  That's right.  It was.  I remember that.
```

```
 1            MR. BROMBERG:  It was Arrow Financial.
 2            THE COURT:  Remember I said I saw that?  It's the
 3   same guy.  He's all over the place.
 4            MR. BROMBERG:  It's the Arrow case.  It was
 5   Magistrate Levy, Eastern District.  It was a pretty major-
 6   sized firm.  I can't remember whether the financials were
 7   audited or not.  It was Arrow Financial which is one of the
 8   largest debt collectors in the country, which has since been
 9   acquired by Sallie Mae or Fanny Mae, Sallie Mae, right and now
10   they're worth even more.
11            THE COURT:  Yeah.  We've got to move on.  Here is my
12   ruling for the day:  We are going to abide by Judge
13   Schroeder's ruling.  We are going to grant the -- I'm going to
14   call it the net worth discovered request.  We are going to
15   grant the requests, including the associated document requests
16   by directing the defendant C&S, not Midland, C&S, to provide
17   audited financial statements for the relevant years for the
18   relevant period.  Are you sure about this now, Mr. -- for
19   purposes of discovery, Mr. Bromberg, one year only?
20            MR. BROMBERG:  Well, the problem is that the case law
21   is not clear on whether you determine the net worth as --
22            THE COURT:  Will I be clearly erroneous if I required
23   them to provide for a year prior to the relevant year and a
24   year subsequent thereto, which would conclude 2013?
25            MR. BROMBERG:  That's fine.
```

```
 1              MR. SAYLES:  The cost in that could be upwards of 150
 2   to $200,000 if you're including three years.
 3              THE COURT:  Well, you don't know that.
 4              MR. SAYLES:  Well, we don't know that at all at this
 5   point.
 6              THE COURT:  And it might be substantially less.  I
 7   mean, the way -- I'm not pointing the finger at anybody,
 8   Mr. Sayles, but in a way, the Court's being asked to try to
 9   nail jelly to the wall and it's just not fair and I've got to
10   put some burden on the defendant here because in effect you're
11   saying, you know, look, you know, take it or leave it, you
12   know?  Whatever we give you, that's it.  You're not entitled
13   to --
14              MR. SAYLES:  I'm not saying that.
15              THE COURT:  I'm not telling -- I'm not permitting
16   them to do the auditing that you're resisting.  I'm giving you
17   the chance to do your own auditing by directing that you
18   provide audited financial statements and tax returns,
19   corporate partnership tax returns for the -- what is the year
20   before again?  I've got to get this right.
21              MR. BROMBERG:  2011 to 2012, Your Honor is the range
22   of the class that's been served.
23              THE COURT:  And the -- for purposes of discovery,
24   2010 to 2011 on the back side and on the front side, 2012 to
25   2013.  I'm assuming their fiscal year is the calendar year.
```

1        MR. SAYLES:  Your Honor, if that's the order, is
2   there a possibility --
3        THE COURT:  Just a second.  Let me finish.  So, we're
4   going to order audited financials for those calendar years
5   2010 to 2011, 2011-2012, 2012-2013 and we're going to require
6   those to be financial -- excuse me, balance sheets, income
7   statements, profit and loss statements, cash flow statements
8   and current trial balance for the defendant's current fiscal
9   year.  That would be the first quarter of 2014.
10       MR. SAYLES:  If I may, Your Honor, is there an out --
11  given that ruling or that instruction, is there an option that
12  would give Cohen and Slamowitz the option to produce the
13  documents to plaintiff in lieu of its incurring that
14  expensive --
15       THE COURT:  The requested documents?
16       MR. SAYLES:  Because I don't want to speak -- I don't
17  know.  It's a substantial sum that's been imposed on them.
18       THE COURT:  Well, I mean --
19       MR. SAYLES:  And Your Honor, I don't --
20       THE COURT:  You know what my reaction to that is,
21  Mr. Sayles?  In your -- you've been practicing long enough and
22  I'm sure Mr. Leghorn and the other lawyers are, this
23  information is probably the information that a competent, in-
24  house accountant or outside accountant would have at his or
25  her fingertips if they were charged with the responsibility of

```
 1   preparing a competently-prepared balance sheet only.
 2          MR. SAYLES:  This doesn't have to be audited by an
 3   independent third party?
 4          THE COURT:  You figure it out.  I'm using the word
 5   audited as commonly referred to and if there's a way to do it
 6   in and a way that's satisfactory to the plaintiff, you work it
 7   out with them and that's it.  If there's an alternative you
 8   want to explore --
 9          MR. SAYLES:  That's as to the Cohen and Slamowitz LLP
10   only, correct?
11          THE COURT:  Yes.  Okay?  Did you get that, Sandra?
12   That's it.  That disposes of a number of requests,
13   Mr. Bromberg?
14          MR. BROMBERG:  Yes, many.
15          MR. SAYLES:  Your Honor, was there a timeframe set on
16   that?
17          THE COURT:  Not yet.  Timeframe -- I want to get the
18   numbers down here for the record.
19          MR. BROMBERG:  That covers Request for Production 19
20   through 49 with the exception of 24 and 25.
21          THE CLERK:  What were those, 19 through?
22          MR. BROMBERG:  19 through 49, but not 24 and 25.
23          THE COURT:  And interrogatories?
24          MR. BROMBERG:  Interrogatories, no.
25          THE COURT:  Well, yes, 19 to 24 interrogatories.
```

1   MR. BROMBERG: Oh, excuse me. Sorry, 19 to 24. I'm
2   sorry, Your Honor, you're right.
3   THE COURT: Thank you. All right. Anybody need a
4   break?
5   MR. SAYLES: And just if I may, I believe --
6   THE COURT: Oh, the timeframe. Ninety days,
7   Mr. Bromberg?
8   MR. BROMBERG: That's fine, Your Honor.
9   THE COURT: Ninety days, Mr. Sayles?
10   MR. SAYLES: I don't want to speak out of turn. I
11   don't know what timeframe the accountant would require. I
12   imagine at least the month of April through the next two weeks
13   is shot for the accountant, but 90 days would be time to at
14   least inquire and urge that. Although, Judge, I believe the
15   requests that were presented here were documents that they
16   relied upon in forming their net worth value that they
17   reflected.
18   I mean, now we've got three years. Cohen and
19   Slamowitz have got audited financials for three years,
20   including a year that's not even within the class that's been
21   certified here.
22   THE COURT: Why am I saying that? Because I'm
23   looking at it from a discovery point of view which is to test
24   the -- well, you know, Mr. Bromberg, now that I think about
25   it, maybe that's more than you really need, now that I think

1  about it on reflection.  If they're audited, why wouldn't that
2  one year be good enough?
3          MR. BROMBERG:  Well, the only issue really becomes
4  that --
5          THE COURT:  I know I'm asking you a difficult
6  question despite your vast experience in this, but we're
7  dealing in uncharted waters here.
8          MR. BROMBERG:  Okay.  The problem is, it's not clear
9  from the case law what point you measure the net worth for
10 purposes of the cap; whether it's the date of the violations
11 or the date that the case actually goes to trial.
12         THE COURT:  I was thinking more a matter of the trier
13 of fact trying to figure out what the right number is and it
14 could be that an expert accountant would say, Judge, you
15 really need a time frame within which to make a judgment based
16 on an opinion that somebody would give after looking at these
17 things.
18         An opinion might be that it was just the one year,
19 that's good enough, but an opinion from a forensic accountant
20 might be, you know, we needed to have the year prior and the
21 year following in order to advise the trier of fact what the
22 correct number really is.  I mean, the fact that they claim it
23 to be done with -- under general accounting principals, would
24 that prevent you from challenging that?  I don't think so.
25 It's going to be the trier of the fact will decide.  So, just

1   as we do in other discovery context, typically we ask for some
2   timeframe in order to help us achieve some reasonable accuracy
3   as to what the underlying fact really is.  So, that's why I am
4   tempted to -- intending to do what I've just already said I
5   think we should do.
6           MR. BROMBERG:  No, I think that makes sense.  I think
7   that's -- I hadn't thought of it that way.  I was thinking
8   more of a legal question of when you fixed that.
9           THE COURT:  Well, it's a discovery dispute.  I'm not
10  attempting to fix liability here.
11          MR. BROMBERG:  No, I think that makes sense that you
12  need one year before and one year after to make sure that what
13  you're seeing --
14          THE COURT:  Whatever the number is for the relevant
15  period is the correct number.
16          MR. BROMBERG:  Right.
17          THE COURT:  That's my thinking, Mr. Sayles.  If you
18  want to come up with something else by some agreement with
19  Mr. Bromberg after the proceeding is over with, you go right
20  ahead.
21          MR. SAYLES:  Well, no more in any of the other cases
22  on this point have I seen any discussion of looking at years
23  in a bracket.  It was net worth for financial records for the
24  given year.  I just -- it's been explained unduly and I think
25  it's overly prejudicial and burdensome to my client.

```
 1            THE COURT:  Yeah, but it makes sense, does it?
 2            MR. SAYLES:  I respectfully disagree.
 3            THE COURT:  I mean, really, I mean, it's a question
 4   of fact as to what is the net worth during the relevant
 5   timeframe and what -- your theory is that they'll never be an
 6   accountant in the whole world who would ever say if they had
 7   an audited financial statement for a particular year by
 8   another accountant that that number, in their opinion, is the
 9   correct number and it that they would never need to see a
10   bracketed set of years before and after.
11            MR. SAYLES:  Well, we're not preparing a general
12   market value.  We're looking at a net worth for the year.  I
13   mean, we're not getting into multiple years and then you're
14   almost the value of the basis generally.  You know, this is --
15            THE COURT:  No, I'm talking about accuracy here.
16            MR. SAYLES:  Well, then I don't see what -- the
17   letter here was issued in 2000 --
18            THE COURT:  Well, let's try this.  Are you agreeable
19   to doing the audited statement for the one year?
20            MR. SAYLES:  No, I'm not.
21            THE COURT:  Oh, okay then.  We're going to do it for
22   three.
23            MR. SAYLES:  Your Honor, I just can't -- it's a big
24   obligation to take on for my client.
25            THE COURT:  If I'm wrong, Judge Skretny will correct
```

```
 1  me on your request.  All right.  Let's move on to the next
 2  issue, Mr. Bromberg.
 3          MR. BROMBERG:  Okay.  The next issue would be covered
 4  by Request for Production 11, 12 and 15 to Cohen and
 5  Slamowitz.
 6          THE COURT:  Okay.  And I'll see those where, please?
 7          MR. BROMBERG:  Pulling them up right now, Your Honor.
 8  That's page 40 of 52 and page 41 of 52.
 9          THE COURT:  What document, please?
10          MR. BROMBERG:  Oh, sorry.  It's Document 73-1.
11          THE COURT:  Page what again, please?
12          MR. BROMBERG:  Page 40 of 52 and page 41 of 52.
13          THE COURT:  Where are we?
14          MR. BROMBERG:  11, 12 and 15.
15          THE COURT:  All documents concerning plaintiff's debt
16  to Midland vague, ambiguous, overbroad, notwithstanding
17  documents are provided; 12, all communications to and form
18  plaintiff's attorneys, agents acting on plaintiff's behalf
19  response vague, ambiguous, overbroad, notwithstanding
20  documents responsive are attached; 15, all documents without
21  limitation, computer records related to plaintiff retrievable
22  under any number assigned to plaintiff by defendant.  Objects
23  vague, et cetera, notwithstanding, they produced.
24          MR. BROMBERG:  Okay.  Well, Your Honor, there are a
25  number of documents that the defendants have produced, but
```