UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MICHAEL HALLMARK, | Civil Action |
| | 11-cv-0842(WMS)(LGF) |
| Plaintiff, | |
| v. | Class Action |
| | |
| COHEN & SLAMOWITZ, LLP, | |
| and MIDLAND FUNDING LLC d/b/a | |
| MIDLAND FUNDING OF DELAWARE LLC | |
| | |
| Defendants. | |

_____


**Memorandum in Support of Plaintiff's Motion to Hold
Defendant Cohen & Slamowitz, LLP in Contempt and
to Impose Sanctions Under Fed.R.Civ.P. 37(b)**


I. Introduction

On October 6, 2011, Plaintiff Michael Hallmark brought this lawsuit against Defendants Cohen & Slamowitz, LLP (C&S) and Midland Funding LLC ("Midland") for attempting to collect money from a class of New York consumers in violation of the Fair Debt Collection Practices Act ("FDCPA").[1] In summary, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, and 1692g by including court filing costs in consumers' total amount due, before Defendants had even filed lawsuits against the consumers.[2]

In a FDCPA case brought as a class action, discovery concerning a defendant's net worth is critical because the amount of statutory damages a class of

---

[1] 15 U.S.C. § 1692, *et seq.*
[2] *See* Second Amended Complaint, ECF#112, ¶ 36-40.

1

consumers can recover is directly tied to the defendants' net worth.[3] Recognizing the importance of C&S's net worth to the interests of the absent class members, this Court – in an order issued from the bench on April 2, 2014 – ordered C&S to produce three years' worth of audited financial statements, plus three years' worth of tax returns with schedules,[4] within 90 days.[5]

Even though the 90-day period set by the Court expired on July 1, 2014, C&S has failed to comply with the Court's Order. Neither has C&S requested additional time to comply with the Order. C&S's only response has been to provide *two* years' worth of *unaudited* financial statements – despite the fact that, on April 2, 2014, this Court specifically rejected C&S's arguments (1) that two years' worth of statements would be sufficient, and (2) that unaudited statements would be sufficient. In other words, after failing to convince the Court after briefing and oral arguments, C&S went right ahead and produced exactly what it wanted to produce, in defiance of the Court's April 2 Order.

C&S has filed a Motion for Reconsideration of the Court's April 2 Order. But merely filing a Motion for Reconsideration of an Order does not, in itself, stay the order. Because C&S neither asked the Court to stay its Order, nor asked Plaintiff for an accommodation, C&S was under a duty to obey the April 2 Order by the deadline set by the Court. And C&S's refusal to comply with the April 2 Order is further delaying the resolution of this case – which, despite its relative simplicity,

---

[3] *See* 15 U.S.C. § 1692k(a)(2)(B).
[4] *See* ECF#204-3 at 82-83.
[5] *See Id.* at 85, 132.

has now dragged on for nearly three years. For these reasons, Plaintiff respectfully requests that this Court impose on C&S sanctions listed in Fed.R.Civ.P. 37(b), including an order directing that, for the purposes of this action, the net worth of C&S be taken as established to be $50 million, and an order holding C&S in contempt of court and sanctioning C&S in the amount of $1,000 per day for each day that C&S continues to defy the Order.

## II. Procedural Background

Hallmark has brought this case as a class action, alleging that C&S wrongly charged thousands of New York consumers court costs, in violation of the FDCPA. As more fully explained below, C&S's net worth is a key fact issue in this case because, in any FDCPA class action, the amount of statutory damages to which the class is entitled is based upon the net worth of the defendant.

Plaintiff's purpose in filing this Motion to Impose Sanctions is to obtain documents that will enable Plaintiff to ascertan C&S's net worth. Plaintiff first sought this information on November 5, 2012, when he served his First Set of Written Discovery Demands on C&S.[6] A number of the First Set's requests related to C&S's net worth, including Requests for Admission 30-51 and Requests for Production 19-23 and 26-50. C&S's responses to this First Set of Written Discovery were unacceptable for three reasons: First, C&S made the implausible claim that the net worth of the law firm – one of the most active firms in the State of New York, and one that litigates tens of thousands of civil cases each year – was less

---

[6] *See* **Exhibit A** to accompanying Declaration of Plaintiff's Attorney Brian L. Bromberg ("Bromberg Decl.").

than $1,000. Second, C&S claimed that it owned no assets – not even a paperclip. Third, C&S refused to produce any documents in support of these implausible claims. Plaintiff conferred with attorneys for C&S at least seven times in an effort to resolve this and other discovery disputes, in addition to conferrals conducted via email. Ultimately, Plaintiff was forced to move this Court for an order compelling the production of C&S's net-worth information. Plaintiff filed his motion on April 12, 2013.[7]

C&S employed every trick in the book in an effort to delay consideration of the Plaintiff's motion to compel as long as possible. These included a Motion to Stay Discovery, filed by C&S on April 30, 2013.[8] Reasoning that a stay of discovery while Defendants' Motions for Judgment on the Pleadings were pending would be prudent, this Court granted the Motion to Stay on May 28, 2013.[9] On September 16, 2013, Judge Skretny issued a decision certifying the class, and holding that Plaintiff's claims could proceed.[10]

Just two days after Judge Skretny's Decision and Order, Judge Foschio issued a revised briefing schedule on Hallmark's Motion to Compel, ordering C&S to respond to the motion by October 4, 2013, and setting down oral argument for October 29, 2013.[11] Yet C&S's bag of tricks was far from exhausted. On or about September 23, 2013, one of C&S's attorneys asked Hallmark's attorneys to consent

---

[7] *See* ECF#72.
[8] *See* ECF#85.
[9] *See* ECF#101.
[10] *See* ECF#110.
[11] *See* ECF#111.

4

to an extension of Judge Foschio's revised briefing schedule and for an adjournment of the October 29 oral argument date.[12] The stated reason for the request for the extension was that one of C&S's attorneys – Daniel Ryan, Esq. – was scheduled to be in trial on an unrelated matter beginning October 28, 2013, while the other attorney for C&S – René Moya, Esq. – would be traveling for his wedding from October 16 to November 1.[13] Attorneys for Plaintiff consented to this request and worked with opposing counsel and chambers to determine a mutually convenient time to reschedule oral arguments.[14] Judge Foschio granted C&S's request and reset oral argument for November 12, 2013.[15]

But C&S's true motivation for requesting an extension soon emerged. On September 30, 2013, C&S filed a Petition seeking permission from the Second Circuit to file an interlocutory appeal of Judge Skretny's class certification decision.[16] C&S then filed a Motion for Reconsideration of Judge Skretny's Decision and Order on October 14, 2014.[17] Then C&S decided to hire substitute counsel. C&S's current attorney, Andrew Sayles, Esq., filed his Notice of Appearance on behalf of C&S on October 31, 2013;[18] Mr. Ryan and Mr. Moya would file their Withdrawals on November 5, 2013.[19] On November 1, 2013, Mr. Sayles requested another extension of the briefing schedule on what were by now several pending

---

[12] *See* ECF#114-1.
[13] *See Id.*
[14] *See Id.*
[15] *See* ECF#116.
[16] *See* Bromberg Decl., ¶ 9.
[17] *See* ECF#132.
[18] *See* ECF#147.
[19] *See* ECF#157 and ECF#158.

5

discovery motions;[20] as indicated in Mr. Sayles Declaration in support of that motion, Hallmark's attorneys refused to consent to yet another extension, pointing to the fact that resolution of the pending discovery motions had already been substantially delayed.[21] On November 4, 2013, Judge Foschio granted Mr. Sayles's request for an extension, setting a November 18 deadline.[22] Oral argument had already been reset for December 3, 2013.[23]

More tricks were still to come. On November 11, 2013, C&S, through Mr. Sayles, moved this Court for *another* stay of discovery.[24] Judge Foschio granted the second request for a stay on November 27, 2013, pending Judge Skretny's decision on C&S's Motion for Reconsideration.[25] It was now well over a year since Plaintiff had served his First Set of Written Discovery Demands, and seven months since he had filed his motion to compel, and no resolution of the discovery disputes was in sight.

On January 8, 2014, Judge Skretny rejected C&S's Motion for Reconsideration in decisive fashion, in an Order in which he said C&S's Motion "border[ed] on the frivolous."[26] Then, on February 12, 2014, the Second Circuit denied C&S's petition for leave to file an interlocutory appeal.[27] The next day, Judge

---

[20] *See* ECF#150.
[21] *See* ECF#150-1.
[22] *See* ECF#152.
[23] *See* ECF#146.
[24] *See* ECF#160.
[25] *See* ECF#174.
[26] *See* ECF#177 at 2.
[27] *See* ECF#178.

Foschio rescheduled oral argument for March 5, 2014,[28] though this later adjourned to April 2, 2014 because of scheduling conflicts.[29]

On April 2, all parties participated in an oral argument that lasted approximately three hours and thoroughly probed all the factual and legal issues relating to the net-worth discovery.[30] During oral argument, Judge Foschio issued a bench order compelling C&S to produce three years' worth of audited financial statements, as well as three years' worth of tax returns.[31] Judge Foschio ordered C&S to produce the documents within 90 days of oral argument.[32] Judge Foschio's order was a compromise decision. He did not, as Plaintiff had requested, order C&S to produce all the underlying documents evidencing C&S's assets, liabilities, and all other aspects of its finances; rather, the aim of the Order was to allow C&S to do its own auditing, while at the same time providing enough reliable net-worth information to enable Plaintiff to investigate a key factual issue.

At that point, C&S reached again into its seemingly bottomless bag of tricks. On April 30, 2014, C&S filed again resorted to one of its favorite delay tactics, filing another Motion for Reconsideration.[33] The new Motion for Reconsideration challenged this Court's order compelling three years' worth of audited financial

---

[28] *See* ECF#179.
[29] *See* ECF#180.
[30] A complete recap of the portions of the April 2 oral argument relating to the C&S net-worth discovery can be found in Plaintiff's Memorandum of Law in Opposition to Defendant Cohen & Slamowitz, LLP's Motion for Reconsideration or, in the Alternative, for a Protective Order, ECF#201, at 8-14 (ECF page numbers).
[31] *See* ECF#204-3 at 82-83 (ECF page numbers).
[32] *See Id.* at 85, 132 (ECF page numbers.
[33] *See* ECF#190.

statements.

On May 1, 2014, this Court issued a briefing schedule that set a deadline of Monday, May 12, 2014 for Plaintiff's Opposition to the second Motion for Reconsideration.[34] On Friday, May 9, at 3:23 p.m., counsel for C&S served *two years' worth of unaudited* financial statements on Hallmark's counsel via email.[35] At 4:49 p.m. on the same day, counsel for C&S emailed the unaudited financial statements to Judge Foschio's chambers, along with a letter requesting that they be filed under seal as supplements to the Motion for Reconsideration.[36] The result was that, at the close of business leading into a holiday weekend, with Plaintiff's opposition to the Motion for Reconsideration due the following Monday, counsel for Plaintiff had no idea whether the one hundred pages of complicated financial information that had appeared in his inbox an hour and a half earlier constituted part of the record before the Court on the motion to which he had to respond.[37]

Hallmark moved to strike the C&S's "supplemental" material it attempted to file in support of its Motion for Reconsideration.[38] Both C&S's Motion for Reconsideration and Hallmark's Motion to Strike the supplemental material have been fully briefed and remain pending.

C&S has not requested this Court to stay its April 2, 2014 bench order regarding net-worth discovery. Moreover, C&S has not contacted attorneys for

---

[34] *See* ECF#191.
[35] *See* ECF#195 at 2.
[36] *See Id.*
[37] *See Id.* at 2-3.
[38] *See* ECF#194.

Plaintiff to request additional time to produce the ordered net-worth discovery. The 90 days allotted to C&S to comply with the April 2, 2014 order expired on July 1, 2014.

### III. Argument

"Under Rule 37(b)(2), the court in which an action is pending may impose a variety of sanctions upon a party for failure to comply with an order compelling discovery. The flexibility of the Rule gives the court broad discretion with regard to sanctions, and in exercising its discretion the court should take into account the full record of the case before it."[39]

All of the forms of relief for which Plaintiff moves here are explicitly authorized by Fed.R.Civ.P. 37(b)(2)(A), which provides:

> If a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (i)   directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking the pleadings in whole or in part;
>
>    . . .
>
> (vii) treating as contempt of court the failure to obey any

---

[39] *Krieger v. Texaco, Inc.*, 373 F.Supp. 108, 111 (W.D.N.Y. 1972).

>order except an order to submit to a physical or mental examination.

Here, the full record before the Court demonstrates why the relief Plaintiff seeks is justified. Hallmark first moved to compel the production of net worth documents on April 12, 2013 – 15 months ago. And Hallmark first demanded documents related to C&S's net worth on November 5, 2012 – 20 months ago. Plaintiff submits that 20 months is long enough to wait.

The detailed procedural history laid out above is shows why a contempt order and sanctions are not only appropriate, but necessary, *now*. C&S has demonstrated a willingness to delay this case and obstruct discovery in every way imaginable. As explained above, C&S's delay tactics have included: making statements in its discovery responses alleging that C&S owns no assets; luring opposing counsel into consenting to extensions of time to brief discovery motions, then using the extra time to seek permission to file an interlocutory appeal and motion for reconsideration; filing multiple frivolous motions; and surprising opposing counsel with "supplemental" evidence in support of its motion papers one business day before Plaintiff's response was due. Now, C&S is simply refusing to comply with a Court Order. The issue here is not that C&S is eight days late in complying with the April 2 Order; the issue is C&S's pattern of stonewalling for the past 20 months.

As the Court well knows, the C&S net-worth information is unquestionably relevant. Under 15 U.S.C. § 1692k(a)(2)(B), the maximum amount of statutory damages that the certified class can hope to recover from C&S is tied directly to C&S's net worth. More specifically, the class, if successful, can recover up to 1% of

10

C&S's net worth; if the finder of fact determines that C&S's net worth exceeds $50 million, then the damages that the certified class could recover from C&S would be capped at $500,000.

The FDCPA claims brought by Hallmark on behalf of the class are simple. C&S charged court filing fees to consumers whom it planned to sue, adding court costs to the consumers' total amounts due before the costs were incurred – let alone before costs had been awarded by any court. Either this practice violated the sections of the FDCPA listed in the Second Amended Complaint, or it didn't – and this is a question of law. As such, C&S's net worth is one of the few serious factual issues presented in this case – and possibly the *sole* serious factual issue presented.[40] C&S's obstruction as to this factual issue is the main reason why, nearly three years in, this case is so far from resolution. Until C&S complies with this Court's April 2 Order, it is impossible for Plaintiff to engage in arm's-length settlement negotiations, and this case will continue to stall, consuming judicial resources.

---

[40] The net worth of Midland is not at issue because Midland has admitted that its net worth is greater than $50 million. [CITE] The other major unresolved issue is whether Midland can be held vicariously liable for C&S's acts. But there is a split in authority as to what a plaintiff must show in order to hold a debt-collector principal liable for the acts of its debt-collector agent. If this Court holds that Hallmark must demonstrate that Midland "controlled" C&S, that would obviously involve questions of fact. The split in authority is more fully explained elsewhere in the docket, including at ECF#149 at 19-22 (ECF page numbers). There are no other serious factual issues. While Midland and C&S have contended that they were authorized, by contracts entered into by the class members, to charge the court costs when they did, this contention cannot be taken seriously. As Judge Skretny has said, "none [of the agreements that purportedly authorize the collection of court costs have] been adequately identified, filed with the Court, or (to this Court's knowledge) turned over to Plaintiff." ECF#177 at 4.

11

The relief Plaintiff seeks is appropriate and is in line with relief granted by other courts in similar circumstances.[41] Moreover, it should be noted that, while C&S has moved for reconsideration of the April 2 Order, C&S has not requested a stay of the Order while its Motion for Reconsideration is pending – and the Motion for Reconsideration, in and of itself does not as a stay.[42]

## IV. Conclusion

Courts "cannot permit unconscionable delay by one party to frustrate the prompt and efficient administration of justice."[43] Nor can courts "countenance such trifling with the orderly administration by the court of its heavy backlog of litigation."[44] The 20-month saga of obstruction and delay laid out in this memorandum certainly qualifies as "unconscionable delay." Plaintiff therefore respectfully requests that this Court impose on C&S sanctions listed in Fed.R.Civ.P. 37(b), including an order directing that, for the purposes of this action, the net worth of C&S be taken as established to be $50 million; an order holding C&S in contempt of court and sanctioning C&S in the amount of $1,000 per day for each

---

[41] *See Baker v. Valentine & Kebartas, Inc.*, CV 12-1000(ADS)(ETB) (E.D.N.Y. March 7, 2013), ECF#36 (attached hereto as **Exhibit A**); *Thomas v. Continental Serv. Grp., Inc.*, CV 11-5844(MKB)(ETB) (E.D.N.Y. March 6, 2013), ECF#27 (attached hereto as **Exhibit B**).
[42] *See Brown v. Varan*, 322 Fed. Appx. 453, 454-55 (7th Cir. 2009); *New Pacific Overseas Group (USA) Inc. v. Excal Intern. Development Corp.*, No. 99 CIV. 2436(DLC), 99 CIV. 3581, 2000 WL 802907 at *2 (S.D.N.Y. June 21, 2000). *Cf. Pasadena City Bd. Of Ed. v. Spangler*, 427 U.S. 424, 439-440 (1976) ("[T]hose who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is modified or reversed.").
[43] *Iaconelli v. Anchor Lines, Ltd.*, 51 F.R.D. 144, 147 (E.D. Pa. 1970).
[44] *Id.*

12

day that C&S continues to defy the Order; an order directing C&S to pay Plaintiff's reasonable expenses, including attorney fees, caused by C&S's failure to comply with this Court's April 2 Order; and for such other and further relief as to this Court seems just and proper.

Dated: July 9, 2014
      New York, New York

                                      Respectfully submitted,

                                      /s/ Brian L. Bromberg
                                      Brian L. Bromberg
                                      One of Plaintiff's Attorneys

Brian L. Bromberg
Jonathan R. Miller
Bromberg Law Office, P.C.
26 Broadway, 21st Floor
New York, New York 10004
(212) 248-7906

Kenneth R. Hiller
Seth J. Andrews
Law Offices of Kenneth Hiller
6000 North Bailey Ave, Suite 1A
Amherst, NY 14226
(716) 332-1884