UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL HALLMARK on behalf of
himself and all others similarly situated,

Plaintiff,

vs.                                              No. 11-CV-842(WMS)(LGF)

COHEN & SLAMOWITZ, LLP                CLASS ACTION
MIDLAND FUNDING LLC d/b/a
MIDLAND FUNDING OF DELAWARE LLC,

Defendants.

_____

**Memorandum of Law in Support of**
**Plaintiff's Fourth Motion to Compel Discovery**

## I.  Preliminary Statement

Plaintiff has brought this case under the Fair Debt Collection Practices Act

("FDCPA")[1] for Defendants' abusive and unfair collection tactics employed in the

course of their attempt to collect consumer debts from Plaintiff Michael Hallmark

and 30,192 other New York consumers. Specifically, Defendant Cohen & Slamowitz,

LLP ("C&S") attempted to recover millions of dollars in court costs from New York

consumers even before filing lawsuits against those consumers. As to 10,250 of

those New York consumers, C&S was collecting on behalf of Defendant Midland

Funding LLC ("Midland"). Hallmark alleges that, as to those 10,250 consumers

("the Midland class"), Midland is vicariously liable for C&S's actions.

In this Fourth Motion to Compel Discovery, Plaintiff principally seeks

production of "[a]ll documents – including credit applications, assignment

_____

[1] 15 U.S.C. 1692 *et seq.*

1

agreements, contracts, cardmember agreements with amendments, and bills of sale – that [Defendants] claim[] entitled [them] to collect from, sue, or recoup court filing fees from any of the 10,250 class members whose alleged accounts were owned by Midland."[2] Admittedly, this Fourth Motion to Compel seeks a considerable number of documents – perhaps several hundred thousand pages' worth. But this is no fishing expedition. As explained more fully below, Defendants have raised a curious argument: that they were contractually entitled to recover court filing fees *before* filing court cases. Thus far, Defendants have raised this argument both in the context of their Motions for Judgment on the Pleadings as well as their oppositions to Hallmark's Motion for Class Certification. The argument was unsuccessful in both instances, but Judge Skretny reached his decision on procedural and evidentiary grounds – leaving the door open for Defendants to try again in a future Motion for Summary Judgment or Rule 23 Motion for Decertification.

Plaintiff, skeptical of the basis of this defense and mindful of the voluminous discovery necessary to litigate it, has asked Defendants to waive the defense.[3] Both have refused.[4] Hallmark therefore asks this Court for an order compelling Defendants to produce all cardmember agreements and other documents that entitle them to collect court fees from the 10,250 Midland class members – as well

---

[2] *See* accompanying Notice of Motion. Hallmark seeks all documents pertaining to each of these 10,250 class members from both Defendants – except that Hallmark does not seek credit applications from C&S. This is because counsel for C&S has represented that they possess no such credit applications. *See* accompanying Declaration of Attorney Jonathan R. Miller ("Miller Decl.").

[3] *See Id.*

[4] *See Id.*

as the assignment agreements, bills of sale, and other supporting documents demonstrating that Defendants had the right to enforce those cardmember agreements. For reasons more fully explained below, Hallmark also asks this Court to compel both Defendants to produce transcripts of depositions taken of their employees. Finally, Hallmark asks this Court to compel C&S to produce all training manuals and materials, since it continues to insist that it has a bona fide error defense.

## II. Procedural History

### A. Defendants' contractual-entitlement argument.

On October 6, 2011, Plaintiff Michael Hallmark brought this lawsuit against Defendants C&S and Midland for attempting to collect money from a class of New York consumers in violation of the FDCPA. In summary, Plaintiff alleges that Defendants violated 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(2)(B), 1692e(10), 1692f, and 1692g by including court filing costs in consumers' total amount due, before Defendants had even filed lawsuits against the consumers.[5] Hallmark moved for Class Certification in December 2012.[6] Both C&S and Midland moved for Judgment on the Pleadings in January 2013.[7]

On April 5, 2013, C&S and Midland filed their reply memoranda in further support of their Motion for Judgment on the Pleadings.[8] In those reply memoranda,

---

[5] *See* Second Amended Complaint, ECF#112, ¶ 36-40.
[6] *See* Motion for Class Certification, ECF#38.
[7] *See* C&S Motion for Judgment on the Pleadings, ECF#42; Midland Motion for Judgment on the Pleadings, ECF#48.
[8] *See* ECF#69-3; ECF#70.

Defendants for the first time argued that Hallmark lacked any FDCPA claim because C&S and Midland were contractually entitled to bill Hallmark for court filing fees before filing any court case.[9] In this Court's Decision and Order,[10] Judge Skretny rejected the contractual-entitlement argument on three different grounds. First, Defendants were barred from raising the argument for the first time in their reply briefs.[11] Second, Defendants' contractual-entitlement argument was inapposite to their Motions for Judgment on the Pleadings, since the contract upon which Defendants attempted to rely was not integral to Hallmark's Complaint.[12] Third and most importantly, the evidence produced by Defendants in support of their contractual-entitlement argument was defective, as it consisted only of a partial cardmember agreement, without the paper trail necessary to authenticate it.[13] In the same Decision and Order, Judge Skretny granted Plaintiff's Motion for Class Certification.[14]

Each Defendant then filed its own Motion for Reconsideration both as to the denial of their Motions for Judgment on the Pleadings and as to class certification.[15] Defendants again raised the contractual-entitlement issue in their respective

---

[9] *See* ECF#69-3 at 5 ("Plaintiff is <u>contractually</u> obligated to pay additional costs related to Plaintiff's defaulted debt.") (emphasis in original); ECF#70 at 3 ("Plaintiff's Credit Card Agreement Expressly Authorized C&S to Seek Court Filing Fees in Its Letter to Plaintiff.").

[10] ECF#110.

[11] *See Id.* at 7.

[12] *See Id.* at 7-8.

[13] *See Id.* at 8.

[14] *See Id.* at 10-17.

[15] *See* Midland's Motion for Reconsideration, ECF#127; C&S's First Motion for Reconsideration, ECF#132.

attempts to reargue Judgment on the Pleadings. But they also raised it as a new argument in the context of class certification: That since each of the thousands of class members were bound by various cardmember agreements, each cardmember agreement would have to be individually scrutinized – and, consequently, Plaintiff could demonstrate neither commonality under Rule 23(a)[16] nor predominance under Rule 23(b)(3).[17]

Again, Judge Skretny rejected the arguments. In his Decision and Order, he said that Defendants' assertion that they had sufficiently raised the contractual-entitlement argument in their opening briefs in support of Judgment on the Pleadings "bordered on the frivolous."[18] Judge Skretny also rejected the argument in the context of Class Certification, noting, first, that Defendants' argument was late; and, second, that Defendants had failed to substantiate the argument with competent evidence.[19] In Judge Skretny's words: "Indeed, these agreements, which purportedly authorize the collection of court costs, are presumably in Defendants' possession. Yet none has been adequately identified, filed with the Court, or (to this Court's knowledge) turned over to Plaintiff."[20]

In summary, Defendants have attempted to raise its contractual-entitlement argument twice and failed both times. But each time this Court has rejected the argument, it has done so on procedural or evidentiary grounds; this Court has not

---

[16] *See* ECF#129 at 16-17 (ECF page numbers).
[17] *See* ECF#134 at 13-16 (ECF page numbers).
[18] *See* ECF#177 at 2.
[19] *See Id.* at 3-4.
[20] *See Id.* at 4.

yet reached the merits of the argument, leaving the door open for Defendants to raise it again in a Motion for Summary Judgment or Motion for Class Decertification.[21] Plaintiff's counsel, cognizant of the costs of producing the cardmember agreements and other underlying documents for tens of thousands of class members, asked each Defendant to waive its contractual-entitlement defense.[22] Both Defendants refused to do so.[23]

In response to Hallmark's the demands for production at issue here, C&S has produced no documents.[24] Midland has produced approximately 10 cardmember agreements bearing the logos of various original creditors; however, it has not provided any other documents necessary to show that they were binding on any particular class members.[25]

B. **Class size.**

Defendants have provided conflicting numbers for the size of the class, resulting in considerable confusion. In February 2013, in response to Plaintiff's discovery demands, C&S indicated that it had mailed letters similar to the one mailed to Hallmark to 38,325 consumers; in each instance, C&S mailed the letter before filing a state-court summons or complaint against the respective consumer.[26]

---

[21] Judge Skretny noted this possibility in his denial of Defendants' Motions for Reconsideration. *See* ECF#177 at 3-4.

[22] *See* Miller Decl.

[23] *See Id.*

[24] *See Id.*

[25] *See Id.*

[26] *See* ECF#58-1 at 4 (ECF page number).

In the same discovery responses, C&S indicated that it had it had been collecting on behalf of Midland as to a subset of 17,475 of those consumers.[27]

The Court certified the class based on C&S's representations,[28] and on October 3, 2013, Plaintiff moved for approval of notice to the class members.[29] When C&S responded to Plaintiff's motion on November 11, 2013, it indicated for the first time that the 17,475 figure was incorrect – though it did not include a corrected figure.[30]

The confusion now seems to have been resolved. In June 2014, C&S provided Plaintiff with spreadsheets containing corrected information.[31] According to these spreadsheets, C&S mailed letters similar to the letter it mailed to Hallmark to 30,192 consumers before state-court summonses or complaints had been filed against those consumers.[32] These spreadsheets also indicate that C&S's letters were sent on behalf of Midland as to a subset of 10,250 of those consumers.[33] As indicated above, this Fourth Motion to Compel seeks "documents – including credit applications, assignment agreements, contracts, cardmember agreements with amendments, and bills of sale – that [Defendants] claim[] entitled [them] to collect from, sue, or recoup court filing fees" *only* as to the 10,250 members of the Midland class.

---

[27] *See Id.* at 6-7.
[28] *See* ECF#110 at 11-12.
[29] *See* ECF#124.
[30] *See* ECF#161 at 14 (ECF page number).
[31] *See* Miller Decl.
[32] *See Id.*
[33] *See Id.*

## C. Defendants' discovery responses.

In addition to all documents Defendants believe entitled them to collect court filing fees from the Midland class members before filing summonses and complaints, this Fourth Motion to Compel seeks two other categories of documents: first, transcripts of depositions taken of Defendants' employees within five years before the filing of this lawsuit; and, second, all internal training materials used by C&S. As to the former, neither party has produced any deposition transcripts.[34] As to the latter, C&S has produced only photocopies of covers of a few outside-published treatises on the FDCPA and other bodies of law relevant to debt collection; it has provided no internally-produced training materials whatsoever.[35]

## III.   Argument

### A. Defendants should be ordered to produce all cardmember agreements they claim entitle them to collect court fees from the class members – and all supporting documents they claim authenticate those agreements – so that Plaintiff can defend against Defendants' defense.

Midland and C&S should be compelled to produce all cardmember agreements and other underlying documents that they claim entitled them to collect court fees from class members before actually suing them. The documents are relevant because Defendants themselves claim that these very documents entitle them to judgment – or, alternatively, that they render this case unsusceptible to class treatment. Moreover, Defendants cannot claim that producing the documents would impose an undue burden, since Defendants have commenced lawsuits against

---

[34] *See Id.*
[35] *See Id.*

most or all of the Midland class members – and the documents sought are just the documents Defendants would be expected to present as evidence in support of their prima facie case in any state-court debt collection lawsuit.

### 1.  Invalid objections under the Federal Rules.

Midland has asserted overbreadth and undue burden objections,[36] and C&S objected relevance and undue burden grounds.[37] C&S, however, also asserted other, stranger defenses. In two instances, C&S stated that the class members for whom the information was sought involved "matters handled by C&S on behalf of Midland. In those matters, C&S was retained to collect the debt on behalf of Midland and therefore would not independently possess information responsive to this request."[38] But the issue is not whether C&S "independently possesses" the documents (whatever that might mean); rather, the issue is whether C&S has possession, custody, or control of the documents.[39] If C&S has possession, custody or control of responsive documents, it should produce them; if not, it should say so in a verified response. By instead framing the statement as an objection, C&S has avoided the factual question of whether it actually possesses any responsive documents.

In two other instances, C&S stated the following "objection": "In those matters, C&S was retained to collect the debt on behalf of Midland and therefore

---

[36] *See* **Exhibit B** to Miller Decl. at 18.
[37] *See* **Exhibit C** to Miller Decl. at 11-13.
[38] *See* **Exhibit C** to Miller Decl. at 10-11.
[39] *See* Fed. R. Civ. P. 34(a)(1).

would not have any contractual relationship with the purported class members."[40] A letter from C&S's attorney explains in more detail:

> [B]ecause C&S did not own the debts "there can be no "assignment agreements, contracts and/or bills of sale permitting [C&S]" to collect or file suit. . . . You have been provided with a copy of the service agreement between Midland and C&S and it has been established that C&S was pursuing debt collection efforts on behalf of Midland. Similarly, RFP 25 seeks contracts between "you [C&S] and any of the . . . class members." As noted in C&S's response, it did not have any contractual relationship with the class members and therefore would not possess any responsive information.[41]

This is not a valid objection – it is childish quibbling over language. Plaintiff had demanded "[a]ll documents that you claim constitute contracts between *you* and any of the . . . class members (or between any of the . . . class members and any predecessor in interest to *you*)."[42] Plaintiff also demanded "[a]ll documents – including assignment agreements, contracts and/or bills of sale – that you claim give *you* (or any predecessor in interest to *you*) the right to collect filing fees from any of the . . . class members . . . ."[43]

C&S's quibble is with the word "you." Its so-called objection boils down to this: We are C&S – we are not Midland. So when we read the discovery demands, that word "you" refers to C&S, not to Midland. But we, C&S, don't have any contract with these consumers, nor do we have contractual rights to collect any money from these consumers. We'd like to help you out but, since we obviously don't

---

[40] *See* **Exhibit C** to Miller Decl. at 12-13.
[41] *See* **Exhibit E** to Miller Decl. at 1-2.
[42] *See* **Exhibit C** to Miller Decl. at 12 (emphasis added).
[43] *See Id.* at 13 (emphasis added).

have contractual relationships with these people, no documents exist that pertain to those non-existent contractual relationships.

In short, C&S's "objection" is no more than an attempt to play word games. And it is a losing attempt at that: The Third Set's definition section defines "you" to mean "defendants, C&S and/or Midland and, where applicable, their officers, directors, employees, partners, corporate parent subsidiaries or affiliates, including, but not limited to, Midland Credit Management, Inc."[44] In other words, "you" always refers to both C&S *and* Midland. In any case, RFP 27 asks for contracts that entitled C&S to collect court filing fees – it does *not* ask for contracts between C&S and the class members. RFP 27 covers any contract at all – whether between a class member and C&S *or* between a class member and one of C&S's clients – so long as the contract established C&S's legal right to collect court costs.

Again, if C&S has no responsive documents, it should simply say so in a verified response. Instead, it has opted to tap-dance around the issue, forcing Plaintiff to file this Fourth Motion to Compel.

## 2.  Relevance and overbreadth.

In some ways, Defendants' relevance and overbreadth objections are more difficult to understand than the invalid objections discussed above. As detailed above in Part II.A, it is Defendants who have raised the contractual-entitlement issue – not Hallmark. And it is Defendants who have refused to waive the contractual-entitlement issue – not Hallmark. Defendants cannot rely on a defense

---

[44] *See* **Exhibit A** to Miller Decl. at 1.

while withholding from Plaintiff the documentation necessary to establish that defense.

As noted above, Midland has produced approximately 10 cardmember agreements bearing the logos of various purported original creditors. But this addresses only half the issue – or perhaps less than half. For one thing, several of the class members' alleged original creditors are not included among the agreements produced by Midland.[45] But, more importantly, whether certain contractual language empowered Midland's predecessors in interest to charge court fees before initiating lawsuits is only part of Defendants' contractual-entitlement defense. As Judge Skretny has already indicated, the other part is proving that the contractual language was actually binding on any of the class members. To do that, Defendants must produce more than a simple cardmember agreement – they must produce business records showing that cardmember agreement version X matches up with class member Y. This is important because credit-card issuers revise their cardmember agreements often, and may use several different form agreements for different classes of customers. In short, to prove up their contractual-entitlement defense, Defendants must produce cardmember agreements; business records demonstrating that proffered agreements were binding on particular class members at the time Midland purchased the accounts; and bills of sale and/or assignment agreements demonstrating when Midland purchased the accounts and that it in fact

---

[45] *See* **Miller Decl.**

had the right to enforce the agreements. For these reasons, Plaintiff respectfully asks the Court to grant this Fourth Motion to Compel in full.

### 3.  Producing the documents would not impose an undue burden.

C&S's remaining objection is that production of the documents would be unduly burdensome. But nothing could be further from the truth. Defendants possess all the requested documents – or, at least, ought to possess them – because they proceeded to file debt-collection lawsuits against all or nearly all of the Midland class members after mailing the offending letters. And the documents Plaintiff seeks are just the documents Defendants would be required to produce to establish their prima facie cases in these state-court lawsuits.

The leading case on the issue is the New York City Civil Court case of *Citibank (South Dakota), N.A. v. Martin*,[46] in which Civil Court Judge Lebedeff decided two summary judgment motions that did not meet the most basic evidentiary criteria for admissibility. Faced with an increasing number of frivolous motions for summary judgment filed by debt-collection law firms (like Defendant C&S) on behalf of debt-buyers (like Midland), she sought to lay out the minimum showing necessary under New York law to obtain summary judgment on a credit-card action brought by a debt buyer. Certain sections of Judge Lebedeff's decision are especially relevant here:

- ■ "As a part of a credit card issuer's presentation of a prima facie case, the motion papers must include an affidavit sufficient to tender to the court

---

[46] 11 Misc. 3d 219 (Civil Ct., N.Y. Co. 2005)

the original agreement, as well as any revision thereto, and the affidavit must aver that the documents were mailed to the card holder."[47]

- "The same affidavit typically advances copies of credit card statements which serve to evidence a buyer's subsequent use of the credit card and acceptance of the original or revised terms of credit."[48]

- "The Affidavit must demonstrate personal knowledge of essential facts or the judgment will be assailable, even if the defendant defaults. An attorney's affirmation generally cannot advance substantive proof."[49]

- "[A]s to assigned claims, it is essential that an assignee show its standing, which 'doctrine embraces several judicially self-imposed limits on the exercise of . . . jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights.' A lack of standing renders the litigation a nullity, subject to dismissal without prejudice. It is the assignee's burden to prove the assignment. Given that courts are reluctant to credit a naked conclusory affidavit on a matter exclusively within a moving party's knowledge, an assignee must tender proof of an assignment of a particular account or, if there were an oral assignment, evidence of consideration paid and delivery of the assignment."[50]

- "These showings can easily be made by an affidavit from an official of the credit card issuer."[51]

Thus, Judge Lebedeff neatly explained that in order for a debt buyer to rely upon a credit card agreement to which it was not a party, it must submit proof upon personal knowledge sufficient to authenticate the purported agreement, show that it is binding upon the alleged debtor, and prove all assignments. And any attempt to submit documents based on hearsay must fall within one of the exceptions to hearsay. In other words, to submit a cardholder agreement in admissible form, a debt buyer must not only meet New York State's substantive requirements to show

---

[47] *Id.* at 223 (internal citations omitted).
[48] *Id.* at 223 (internal citations omitted).
[49] *Id.* (internal citations omitted).
[50] *Id.* at 225-26. (internal citations omitted).
[51] *Id.* (internal citations omitted).

offer, acceptance, consideration, and standing, but must do so in the manner required by the forum in which the case is pending.

The bottom line is that Midland must have been in possession of the documents sought by Plaintiff in order to have any hope of establishing prima facie claims in state court. Not only that, but under the FDCPA, C&S, as Midland's attorney, must also have reviewed – and, thus, come into possession – of these documents. The FDCPA requires that any attorney acting as a debt collector must be meaningfully involved in drafting the complaint.[52] "[A] signed complaint is inherently false and misleading, in violation of 15 U.S.C. § 1692e, where, at the time of signing, the attorney signing it has not 1) drafted, or carefully reviewed, the complaint; and 2) conducted an inquiry, reasonable under the circumstances, sufficient to form a good faith belief that the claims and legal contentions in the complaint are supported by fact and warranted by law."[53] It is difficult to see how C&S could have formed such a good faith belief without examining the documents necessary to establish a prima facie case under New York State law.

In any case, every observation made by Judge Lebedeff as to what must be shown in order to introduce a credit card agreement applies with equal force in federal court. The only difference is that the common law rules of evidence that apply in New York state courts have been codified in Federal Rules of Evidence 802 ("The Rule Against Hearsay"), 803 ("Exceptions to the Rule Against Hearsay"), and

---

[52] *See Bock v. Pressler and Pressler, LLP*, ___ F. Supp. 2d ___, Civ. No. 11-7593(KM)(MCA), 2014 WL 2937929 at *16 (D.N.J. June 30, 2014).
[53] *See Id.*

901 ("Authenticating or Identifying Evidence"). Thus, if Midland intends to rely on the approximately ten cardmember agreements it has already turned over to Plaintiff,[54] a good place for Defendants to start is to turn over the amendments, bills of sale, assignment agreements, and other documentation necessary to authenticate those particular cardmember agreements. Defendants should also be compelled to produce all remaining cardmember agreements on which they intend to rely – complete with all supporting documentation necessary to authenticate them.

Because, as explained above, this supporting documentation was necessary to establish Midland's prim facie claims in the state-court cases, and because C&S must have had access to the documents in order to conduct the reasonable inquiry required by federal law, it is impossible for Defendants to now argue that compiling the documents constitutes an undue burden. And, certainly, it is unfair for Defendants to reserve the right to raise a defense in one breath, and in the next breath to withhold from Plaintiff the documents necessary to evaluate and oppose that defense. For these reasons, Plaintiff asks that his Fourth Motion to Compel be granted in full.

**B. Defendants should be ordered to produce transcripts of all depositions taken of their employees because they will likely lead to the discovery of admissible evidence.**

Plaintiffs have demanded that both Defendants, as well as Midland Credit Management, Inc. ("MCM"), produce transcripts of all depositions taken of their officers and employees within five years of the filing of this lawsuit to present.

---

[54] *See* **Exhibit F** to Miller Decl.

Contrary to Defendants' objections, Plaintiffs' demand is reasonably calculated to lead to the discovery of admissible evidence. Even if neither Defendant has been previously sued by Hallmark, these requests are well within the "the broad scope of discovery delimited by the Federal Rules of Civil Procedure . . . designed to achieve disclosure of all the evidence relevant to the merits of a controversy."[55]

Deposition transcripts from past litigation are relevant to damages for several reasons. This is a class action brought under the FDCPA, which ties the maximum amount of statutory damages available to the class to Defendants' net worth.[56] First of all, C&S's net worth is an issue in this case, and it is likely that discussion related to C&S's finances arose in most if not all of its employees' previous deposition. But one percent of net worth is a *ceiling* for statutory damages; courts must also balance a number of factors in determining a class statutory damages award, including "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional."[57] Previous depositions could touch on any of those factors. This information has been consistently held to be discoverable in FDCPA and FCRA matters,[58] and, since it goes to intent, would be admissible under Federal Rule of Evidence 404(b)(2).

---

[55] *Thomas E. Hoar, Inc. v. Sara Lee Corp.,* 882 F.2d 682, 687 (2d Cir. 1989).

[56] *See* 15 U.S.C. § 1692k(a)(2)(B).

[57] § 1692k(b)(2).

[58] *Boutvis v. Risk Mgmt. Alternatives, Inc.,* 2002 U.S. Dist. LEXIS 8521, 9-10 (D. Conn. May 3, 2002); *Kimbro v. I.C. Sys.*, 2002 U.S. Dist. LEXIS 14599, 7-8 (D. Conn.

Additionally, whether or not Midland exercised "control" over C&S is an issue in this case.[59] The degree of control that Midland ordinarily exerts over the law firms it retains is likely to have come up in many of its employees' previous depositions. Those depositions are reasonably calculated to lead to the discovery of admissible evidence, even if they pertain to law firms other than C&S, since they would help Plaintiff to investigate the precise relationship between Midland and C&S during future depositions in this case.

Finally, Midland should be compelled to turn over depositions not only of its own employees, but also of MCM's employees. As this Court has recognized, MCM is Midland's affiliate, retaining C&S on Midland's behalf and managing the relationship between Midland and C&S. This Court has already compelled the production of the collection agreement entered into by MCM and the firm manual prepared and distributed by MCM.[60] MCM's employees' deposition transcripts ought also to be produced.

### C. C&S should be ordered to produce all training manuals and materials because it insists that it has a bona fide error defense.

Apart from photocopied covers of a few outside-published treatises on the FDCPA and other bodies of law, C&S has not complied with Plaintiff's demand to

---

July 22, 2002); *Yancey v. Hooten*, 180 F.R.D. 203, 213 (D. Conn. 1998), *Castro v. Green Tree Servicing LLC*, 2012 U.S. Dist. LEXIS 102292 (S.D.N.Y. June 13, 2012); *Edeh v. Equifax Info. Servs., LLC*, 2013 U.S. Dist. LEXIS 60421, 3-6 (D. Minn. Apr. 29, 2013); *Chang v. Cavalry Portfolio Services*, 2011 WL 6101952 (E.D.N.Y. 2011); *Strom v. Nat'l Enter. Sys.,* 2010 U.S. Dist. Lexis 37369 (W.D.N.Y. 2010); *McCollough v. Johnson, Rodenburg & Lauinger,* LLC, 637 F. 3d. 939,953 (9th Cir 2011); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 504- 05 (N.D. Ill. 2009).

[59] *See* ECF#197 at 6-7.

[60] *See* ECF#192.

produce all training manuals and materials. Certainly, C&S has provided no internally-produced training materials whatsoever. And these internally-produced training manuals and materials are unquestionably relevant since C&S has raised – and insists on maintaining an FDCPA bona fide error defense.

The bona fide error defense has its roots in the text of the FDCPA. Under 15 U.S.C. § 1692(c), "[a] debt collector may not be held liable in any action under this title if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The internal training manuals and materials are relevant because they are reasonably calculated to lead to the discovery of evidence relevant to those procedures C&S claims were reasonably adapted to avoiding its purported error.

Recall that C&S raised a bona fide error defense in its Answer to the Second Amended Complaint.[61] On May 16, 2014, Magistrate Judge Foschio filed a Report and Recommendation recommending that this defense be stricken.[62] Judge Skretny, however, granted C&S permission to replead the defense with greater specificity.[63] C&S cannot continue to insist that it has a bona fide error defense in this case while at the same time withholding discovery of documents related to that defense.

---

[61] *See* ECF#119 at 8.
[62] *See* ECF#199 at 7-8.
[63] *See* ECF#228.

Moreover, courts in the Second Circuit have frequently compelled disclosure of debt collectors' training manuals and materials.[64] For these reasons, Hallmark respectfully asks this Court to order C&S to turn over the relevant training manuals and materials here.

## IV. Conclusion

For these reasons, Plaintiff asks this Court for an order compelling Defendants to produce all cardmember agreements and other documents that entitle them to collect court fees from the 10,250 Midland class members – as well as the assignment agreements, bills of sale, and other supporting documents demonstrating that Defendants had the right to enforce those cardmember agreements. Hallmark also asks this Court to compel both Defendants to produce transcripts of depositions taken of their employees. Finally, Hallmark asks this Court to compel C&S to produce all training manuals and materials, and for any other relief this Court deems appropriate.

Dated: New York, New York
      October 3, 2014

                                  /s/ Jonathan R. Miller
                                  Jonathan R. Miller

---

[64] *See Hallmark v. Cohen & Slamowitz*, 300 F.R.D. 110, 114-15 (W.D.N.Y. 2014); *Khan v. Midland Funding LLC*, 956 F. Supp. 2d 515, 517 (S.D.N.Y. 2013); *Pullen v. Arrow Fin. Servs., LLC*, No. 3:02 CV 647 DJS, 2002 WL 32864712 at *3-*5 (D. Conn. Oct. 17, 2002); *Kimbro v. I.C. System, Inc.*, No. 3:01 CV 1676(DJS), 2002 WL 1816820 at *3 (D. Conn. July 22, 2002); *Yancey v. Hooten*, 180 F.R.D. 203, 213 (D. Conn. 1998).