UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,
on behalf of himself and all others similarly situated,    **DECISION**
                         **and**
             Plaintiff,     **ORDER**

   v.                    **11-CV-842S(F)**

COHEN & SLAMOWITZ,
MIDLAND FUNDING LLC,
            Defendants.
_____

APPEARANCES:  BROMBERG LAW OFFICE, P.C.
         Attorneys for Plaintiff
         BRIAN L. BROMBERG,
         JONATHAN R. MILLER, of Counsel
         40 Exchange Place, Suite 2010
         New York, New York   10005

         LAW OFFICES OF KENNETH HILLER, PPLC
         Attorneys for Plaintiff
         SETH ANDREWS, of Counsel
         6000 North Bailey Avenue, Suite 1A
         Amherst, New York   14226

         CONNELL FOLEY LLP
         Attorneys for Defendant Cohen & Slamowitz, LLP
         ANDREW C. SAYLES, of Counsel
         85 Livingston Avenue
         Roseland, New Jersey 09068

         WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
         Attorneys for Defendant Midland Funding, LLC
         THOMAS A. LEGHORN, of Counsel
         150 East 42nd Street
         New York, New York   10017

## JURISDICTION

This action was referred to the undersigned by Hon. William M. Skretny on

November 10, 2011 for all non-dispositive pretrial matters (Doc. No. 9).  It is presently

before the court on Defendant Cohen & Slamowitz, LLP's motion for reconsideration

and a protective order, filed April 30, 2014 (Doc. No. 190) ("Defendant's motion").

## BACKGROUND and FACTS[1]

This class action asserting Defendants' violations of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), was initiated on July  2, 2012 by the

filing of Plaintiff's Amended Complaint (Doc. No. 28).  Specifically, Plaintiff alleges C&S

violated FDCPA Section 1692e(2)(A) by demanding, in a letter to Plaintiff, payment of a

$140 court filing fee in connection with Buffalo City Court collection actions instituted

against Plaintiff without actually having paid such filing fee at the time C&S's demand

letter was sent, between March 2011 and March 2012, to approximately 38,000 debtors

residing in New York State, for payment of the debt and such filing fees.  Plaintiff also

alleges Defendants violated FDCPA Sections 1692e, 1692e(2)(A), e(5), e(10), (f) and

(f)(1) by making deceptive and misleading demands.  Plaintiff's class action was

certified by Chief District Judge Skretny on September 16, 2013 (Doc. No. 110).  By

order dated January 8, 2014, Judge Skretny denied Defendants' motion to decertify the

class (Doc. No. 177).

On April 12, 2013, Plaintiff moved to compel responses to Plaintiff's First Set of

Interrogatories, Document Requests and Requests to Admit (Doc. Nos. 71) ("Plaintiff's

motion to compel").  Plaintiff's discovery requests[2] were directed to C&S's net worth

specifically requesting C&S financial information such as: (1) C&S's real property

---

[1]   Taken from the papers and pleadings filed in this action.

[2]   Each of Plaintiff's discovery requests is referenced in Defendant C&S's responses to Plaintiff's
discovery requests, filed as Doc. No. 73-1.

ownership (Int. No. 19), (2) financial assets  including bank deposits, investment

accounts, retirement accounts, securities, vehicles, furnishings, fixtures, equipment,

computers and accounts receivable (Int. No. 20), (3) debt whether individually or jointly

owned with co-Defendant Midland (Int. No. 22), (4) C&S's tax returns and related

schedules for 2007 through 2013 (Doc. Request No. 20), (5) accounting statements

regarding C&S's assets and liabilities for 2007 to 2013 (Doc. Request No. 21), (6)

applications for credit and related financial statements (Doc. Request No. 22), (7) asset

and financial statements provided to investors, creditors, auditors, accountants, and

agencies (Doc. Request No. 23), (8) any litigation documents reflecting C&S's net worth

(Doc. Request No. 26), (9) all relevant corporate documents such as shareholder and

buy-sell agreements (Doc. Request No. 28), (10) documents describing C&S's accounts

receivables and payables, budget forecasts and hourly rates (Doc. Request Nos. 30-

31), (11) annual financial statements and tax returns for each segment of C&S's

business (Doc. Request No. 34), (12) discretionary expenses (Doc. Request No. 35),

(13) the fair market value of any intangible assets (Doc. Request No. 36), work in

process, inventory, and any off-the-books assets or liabilities (Doc. Request Nos. 37-

40), (14)  compensation and employee benefit plans, balance sheets, loan applications,

income and profit and loss statements for the past three years, bank statements and

mortgage, pledge or security agreements (Doc. Request Nos. 41-42, 45-49) and (15)

C&S's transfer of any identified assets, the circumstances regarding such transfer and

any consideration received (Int. No. 24).  Defendant's response included the general

objection that Plaintiff's requests were (1) premature given that at the time no class had

then been certified and (2) irrelevant as C&S's net worth was less than $1,000 because

C&S had no retained earnings or real property (C&S Answer to Plaintiff's Int. No. 30,

Doc. No. 73-1 at 17).  Plaintiff asserts Plaintiff is entitled to discovery of such requested

information because in an FDCPA class action plaintiffs' recovery is limited by 15

U.S.C. § 1692(a)(2)(B) to the lesser of $500,000 or 1% of a defendant's net worth and

Plaintiff must be prepared to challenge Defendant's assertion of "low net worth."

Plaintiff's Memorandum of Law, Doc. No. 72, at 3 and n. 4 (citing cases).

Defendants' motion is supported by Defendant Cohen & Slamowitz, LLP's

Memorandum Of Law In Support Of Motion For Reconsideration Or For A Protective

Order (Doc. No. 190-1) ("C&S's Memorandum of Law"), Affidavit Of Gregory Giugliano,

CPA (Doc. No. 190-2) ("Giugliano Affidavit") and Declaration Of Andrew C. Sayles, Esq.

In Support Of Motion For Reconsideration And For Protective Order (Doc. No. 190-3)

("Sayles Declaration I").  In further support of Defendant's motion, on May 9, 2014, C&S

submitted, for filing under seal, the Declaration Of Andrew C. Sayles, Esq., submitting

financial information consisting of C&S's financial statement for 2011-2012 ("Sayles

Declaration II") in further support of Defendant's motion, attaching Exhibits A – D

("Sayles Declaration II Exh(s). ___") ("Defendant's Sealing Request").  By order of the

court, on July 23, 2014 (Doc. No. 217), this document was filed under seal (Doc. No.

218).

On May 27, 2014, Plaintiff filed, in redacted form, Plaintiff's Memorandum of Law

in Opposition to Defendant Cohen & Slamowitz, LLP's Motion for Reconsideration or, in

the Alternative, for a Protective Order (Doc. No. 201) ("Plaintiff's Memorandum")

(Plaintiffs also submitted to the court an unredacted form of Plaintiff's Memorandum)

along with the Declaration of Plaintiff's Attorney Brian L. Bromberg in Opposition to

Cohen & Slamowitz, LLP's Motion for Reconsideration or, in the Alternative, for a

Protective Order (Doc. No. 202) ("Bromberg Declaration I") together with exhibits A – C

(Doc. No. 202-1-3 ("Bromberg Declaration I Exh(s).  ___").  By papers, also filed May

27, 2014, Plaintiffs moved to file under seal the unredacted version of Plaintiff's

Memorandum and Bromberg Declaration Exhs. B & C (Doc. No. 203) ("Plaintiff's Motion

to Seal").  Plaintiff's Motion to Seal requests that the aforereferenced Bromberg

Declaration Exhibits B & C be filed under seal because C&S has submitted such

documents, marked Confidential, to the court in support of Defendant's motion and such

designation requires that documents be filed under seal when submitted to the court in

accordance with the Stipulation of Confidentiality ¶ 10 (Doc. No. 193) and Plaintiff's

opposition to Defendant's motion requires reference to such documents.  Plaintiff's

Motion to Seal at 2.  Plaintiff's motion was granted on July 23, 2013 (Doc. No. 219).  An

unredacted form of the Bromberg Declaration and Bromberg Declaration Exhs. A – C)

filed July 23, 2014 (Doc. No. 221) was submitted by Plaintiff.

On June 2, 2014, Defendant C&S filed a Reply Memorandum Of Law In Further

Support Of Defendant Cohen & Slamowitz, LLP's Motion For Reconsideration Or For A

Protective Order (Doc. No. 207) ("Defendant's Reply Memorandum").

On July 23, 2014, Plaintiff filed Plaintiff's Memorandum of Law in Opposition to

Defendant Cohen & Slamowitz, LLP's Motion for Reconsideration or, in the Alternative,

for a Protective Order (Doc. No. 220) ("Plaintiff's Memorandum"), along with the

Declaration of Plaintiff's Attorney Brian L. Bromberg in Opposition to Cohen &

Slamowitz, LLP's Motion for Reconsideration or, In the Alternative for a Protective Order

(Doc. No. 221) ("Bromberg Declaration II") attaching Exhibits A – C (Bromberg

Declaration II Exhs. A-C").  On August 6, 2014, Plaintiff filed Plaintiff's Supplemental Memorandum of Law in Opposition to Defendant Cohen & Slamowitz, LLP's Motion for Reconsideration or, In the Alternative, for a Protective Order (Doc. No. 224) ("Plaintiff's Supplemental Memorandum").

On August 18, 2014, Defendant C&S filed Defendant Cohen & Slamowitz, LLP's Supplemental Response In Further Support Of Its Motion For Reconsideration Or For A Protective Order (Doc. No. 226) ("Defendant's Supplemental Response") together with the Supplemental Declaration Of Andrew C. Sayles, Esq., In Further Support Of Motion For Reconsideration And Protective Order  (Doc. No. 226-1) ("Sayles Supplemental Declaration") attaching exhibits A&B  ("Sayles Supplemental Declaration Exhs. A&B").

On October 1, 2014, Defendant filed a Notice of Supplemental Authority, (Doc. No. 229) ("Supplemental Authority"), attaching a copy of a recent Decision and Order in *Godson v. Eltman, Eltman & Cooper, P.C., et al.*, 11-CV-764S(Sr) (Doc. No. 229-1) ("*Godson* September 15, 2014 D&O").

## DISCUSSION

Defendant Cohen & Slamowitz, LLC ("C&S" or "Defendant") moves for reconsideration of the court's decision, following oral argument conducted April 2, 2014 (Doc. No. 184), on Plaintiff's motion, filed April 12, 2013, to compel information relating to Defendant's net worth (Doc. No. 71).  At that hearing, the court, without specifically ruling on Plaintiff's motion to compel, directed, based on a recent decision by another magistrate judge of this court, Hon. H. Kenneth Schroeder, involving a similar discovery dispute, *Godson v. Eltman, Eltman & Cooper, P.C.,* 2013 WL 4832715 (W.D.N.Y. Sept.

11, 2013) ("*Godson*"), that Defendant should, in satisfaction of Plaintiff's discovery requests, produce audited financial statements and copies of Defendant's tax returns for Defendant's 2011, 2012 and 2013 tax years, Declaration of Brian L. Bromberg, Doc. No. 221, Exh. A (transcript of oral argument conducted  April 2, 2014) at 78-79 ("the April 2, 2014 ruling").  Defendant argues that in directing Defendant produce audited financial statements, instead of the underlying financial information which Defendant's balance sheets were based, in response to Plaintiff's discovery requests, the court misread *Godson*.  Specifically, according to Defendant, *Godson* did not hold that a FDCPA class action defendant, like C&S, is required to produce audited financials on the issue of damages which is capped by statute at the lesser of $500,000 or 1% of a defendant's net worth by the FDCPA, *see* 15 U.S.C. § 1692k(a)(2)(B) ("§1692K(a)(2)(B)").  C&S's contention is predicated on its assertion that, because the defendant in *Godson* had provided audited financials the court would not have required defendant to produce audited financials had not the audited financials been created by defendant and available for production, and, as such, the court's direction to defendant to produce its audited financial was merely "incidental" to Judge Schroeder's primary determination that plaintiff was not entitled to defendant's financial records, other than defendant's previously prepared audited financials and its tax returns.  Defendant's Memorandum (Doc. No. 190-1) at 10.  *See Godson*, 2013 WL 4832715, at *3.  Defendant also claims Judge Schroeder cited no authority "for requiring production of audited financial records," in cases like this one, Defendant's Memorandum at 10.  Defendant further argues that this court erred in requiring audited financials for Defendant's fiscal years ending 2011, 2012 and 2013, referencing the transcript of the oral argument, Bromberg

Declaration, Exh. A, at 80, where the court stated that audited financial information for the Defendant's fiscal years prior to and following 2012, during which the alleged FDCPA violations occurred, would be relevant to an accurate factual determination of C&S's net worth at trial, with the probable aid of expert testimony, of Defendant's net worth for 2012.  *Id.* at 83-84.

1.    **Defendant's Motion for Reconsideration.**

The standard for granting a motion for reconsideration under Fed.R.Civ.P. 60(b) is strict.  *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or important facts that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Id.*  Nor is a motion for reconsideration intended to be a "second bite at the apple" for a party dissatisfied with the court's ruling by "relitigating old issues, presenting the case under new theories, [or] securing a rehearing on the merits . . .."  *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).  Generally, reconsideration is justified only where there exists "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atlantic Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 C. Wright, A Miller & E. Cooper, FEDERAL PRACTICE & PROCEDURE § 4478 at 790).

Here, Defendant seeks reconsideration of the court's decision, following oral argument on April 2, 2014, directing Defendant produce audited financial statements, particularly C&S's balance sheet for its 2011, 2012 and 2013 fiscal years.  In reaching

its determination, the court was guided by *Godson v. Eltman, Eltman & Cooper, P.C.*, 2013 WL 4832715 (W.D.N.Y. Sept. 11, 2013) ("*Godson*"), a recent decision on a similar discovery dispute in which the court directed defendants to produce their audited financials.  However, upon further review, it appears that in *Godson* such audited financials had been previously prepared for defendants by defendants' outside accountants, and thus it was not the case that the court had directed production of audited financials that did not previously exist in response to plaintiff's discovery requests.  More specifically, in a recent ruling, dated September 15, 2014, in the *Godson* litigation, the court directed production by co-defendant LVNV of "its audited financial statements," *Godson* September 15, 2014 D&O, Doc. No. 229-1, at 9 (underlining added), from which it is inferable that such audited financials already existed.[3]

It is basic that in responding to a document production request, pursuant to Fed.R.Civ.P. 34(a) ("Rule 34(a)"), "a party is not required to create documents meeting the document requests, only to produce documents already in existence."  Baicker-McKee Janssen Corr, FEDERAL CIVIL RULES HANDBOOK, Thompson Reuters (2014) at 889) citing caselaw.  *See also Breedlove v. Mandell*, 2008 WL 596864, at *2 (W.D.N.Y. Feb. 29, 2008) (denying motion to compel based on requested party's representation that it had no record of requested document, and in the absence of any reason to doubt such representation, because the "[c]ourt cannot compel production of what does not exist." (quoting *American Banana Co., Inc. v. Republic National Bank of New York, N.A.*, 2000 WL 521341, at *3 (S.D.N.Y. May 1, 2000)))  Thus, in the instant case, while

---

[3]   Although there is no explicit statement denying the existence of audited financials for C&S, taken as a whole, the record indicates this to be the fact.

this court sought to dispose of Plaintiff's motion to compel consistent with *Godson*, by directing C&S to produce audited financials which do not presently exist, to do so would be contrary to the general rule that defendants are only required to produce previously prepared audited financials.  Therefore, the court's recent rulings in *Godson* provide clarification of the prior *Godson* decision regarding discovery of defendant's financial documents, consistent with this general rule.  Although production by C&S of audited financials, the 'gold standard' of accounting practice, could, if accepted by Plaintiff in lieu of Plaintiff's discovery requests, obviate the need for discovery of the C&S's underlying financial records relevant to C&S's net worth which remain the subject of Plaintiff's motion to compel, nevertheless, as discussed, *supra*, the court is required to avoid directing discovery beyond that permitted by Rule 34(a).

The question remains, however, whether Plaintiff's motion to compel, left unresolved by the court's April 2, 2014 ruling, seeking such underlying information should be granted in light of C&S's proffer of its financial statements that have been reviewed, but not audited, by C&S's outside accountant.  *See* Sayles Declaration Exhs. A-D (Independent Accountant Review Report for C&S's Unconsolidated and Consolidated Financial Statements for Fiscal Years ending December 31, 2011 and 2012, respectively) ("Reviewed Statements").  While such Reviewed Statements are certainly helpful in providing a definitive answer to the question of C&S's net worth, they are not dispositive, and, for that matter, neither would audited statements.  Significantly, Defendant cites to no authority holding that the production of such Reviewed Statements forecloses further discovery on the issue of a defendant's net worth and the court's research reveals none.  On the other hand, to illustrate the need for further fact

discovery in this case directed to whether the Reviewed Statements accurately describe
C&S's net worth, Plaintiff questions whether C&S has fairly stated the value of its
Portfolio Investments, the underlying defaulted debt instruments acquired by C&S as a
major asset of its collections business which C&S attempts to collect thereby producing
significant revenue to C&S, which C&S stated at cost on the Reviewed Statements, as a
significant C&S asset, or whether the value of these assets are substantially
understated by C&S.  *See* Plaintiff's Memorandum at 17.  Additionally, in FDCPA class
action cases seeking damages pursuant to § 1692K(a)(2)(B) courts permit discovery of
a defendant's underlying financial data relevant to the issue of defendant's net worth.
*See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.*, 256 F.R.D. 661, 669
(D.N.M. 2009) (court "will ultimately determine how to calculate net worth and whether
any documents produced in response to [plaintiff's] request are admissible"); *Miller v.
Abrams, Fensterman, et al.*, 2011 WL 6105033, at *1 ("'Plaintiff need not accept
defendant's interpretation of its financial data  . . . but is entitled  . . . to examine the data
underlying defendant's statement of net worth.'" (quoting *Mailloux v. Arrow Financial
Services, L.L.C.*, 2002 WL 246771, at *1 (E.D.N.Y. Feb. 21, 2002))).  In *Miller*, the court
permitted deposition questions directed to certain deductions on defendant's tax returns
challenged by plaintiff as improperly understating defendant's net worth.  *Miller*, 2011
WL 6105033, at *1.  In *Mailloux*, the court enforced plaintiff's discovery requests "related
to defendant's net worth."  *Mailloux*, 2002 WL 246771, at *1.  Thus, production of the
&S's Reviewed Statements, although relevant to the question of C&S's net worth, does
not foreclose Plaintiff's discovery of C&S's financial information upon which such
Reviewed Statements were based.  Accordingly, Defendant's motion for reconsideration

should be GRANTED and, *sua sponte*, the court finds Plaintiff's motion to compel, should also be GRANTED.

2.    **Defendant's Motion for a Protective Order.**

Defendant's motion for a protective order is predicated on Defendant's contention that the cost of producing audited financials is disproportionate to the value of the issue of Plaintiff's damages.  Defendant's Memorandum at 10.  Specifically, Defendants argue that, based on Defendant's Reviewed Statements, the costs of producing audited financials for Defendant's 2010, 2011, and 2012 fiscal years would be in the range of $100,000 to $150,000, s*ee* Giugliano Affidavit ¶ 6, vastly exceeding Plaintiff's potential recovery which Defendant asserts would be substantially less.  Defendant's Memorandum at 14.  However, as the court, upon reconsideration, will vacate its April 2, 2014 ruling directing Defendant to provide audited financials responsive to Plaintiff's motion to compel, the court finds Defendant's alternative motion for a protective order is moot and, as such, is DISMISSED.


## CONCLUSION

Based on the foregoing, Defendant's motion for reconsideration  (Doc. No. 190) is GRANTED; the court's order that C&S produce audited financials for three fiscal years (Doc. No. 184) is VACATED; Defendant's motion for a protective order is DISMISSED as moot; Plaintiff's motion to compel  (Doc. No. 71) is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:October  8, 2014
       Buffalo, New York