# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

MICHAEL HALLMARK,

Plaintiff,

v.

COHEN & SLAMOWITZ, LLP and MIDLAND
FUNDING LLC d/b/a MIDLAND FUNDING OF
DELAWARE LLC,

Defendants.

Civil Docket Number:
11-cv-0842 (WMS)(LGF)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S FOURTH MOTION TO COMPEL DISCOVERY

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Thomas A. Leghorn
Joseph L. Francoeur
150 E. 42nd Street
New York, NY 10017

*Attorney for Defendants*
*MIDLAND FUNDING LLC d/b/a*
*MIDLAND FUNDING OF DELAWARE,*
*LLC*

October 29, 2014

# TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................1

STATEMENT OF FACTS ......................................................................................6

ARGUMENT...........................................................................................................8

    **A.**   Plaintiff made no attempt to resolve the dispute prior to filing a motion, and so his motion should be denied............................................................8

    **B.**   The document requests are overly broad and unduly burdensome ...........10

    **C.**   Representative agreements are sufficient, especially in light of the fact that the Burden of Proof is Plaintiff's, not Midland's .....................................12

    **D.**   The demands against Midland seek irrelevant information......................15

    **E.**   Deposition transcripts ..............................................................................16

    **F.**   Cost-shifting ............................................................................................16

CONCLUSION ....................................................................................................18

i

## TABLE OF AUTHORITIES

**Cases**

*Bodur v. Palisades Collection, LLC,* 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) ......................16

*Boyd v. J.E. Robert Co.,* 2010 U.S. Dist. LEXIS 140905, *51-52 (E.D.N.Y. Mar. 31, 2010)......14

*Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1173 (9th Cir. 2006) .............16

*Gelb v. Am. Tel. & Tel. Co.,* 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) ..................................10

*Hallmark v. Cohen & Slamowitz, LLP,* 2014 U.S. Dist. LEXIS 67985 (W.D.N.Y. May 16, 2014)
............................................................................................................................................13, 16

*Hinterberger v. Catholic Health Sys.,* 284 F.R.D. 94, 103 (W.D.N.Y. 2012) ............................15

*In re Agent Orange Prod. Liab. Litig.,* 517 F.3d 76, 103 (2d Cir. 2008) .....................................10

*Mitchell v. Fishbein,* 2005 U.S. Dist. LEXIS 5069, *14 (S.D.N.Y. Mar. 31, 2005).....................11

*Nichols v. Niagara Credit Recovery, Inc.,* 5:12-cv-1068 (MAD/TWD), 2013 U.S. Dist. LEXIS
64671, at *12 (N.D.N.Y. May 7, 2013)..................................................................................16

*Nixon v. Warner Commc'ns,* 435 U.S. 589, 599, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978) ..........10

*Sanchez v. Abderrahman,* 2013 U.S. Dist. LEXIS 186537 (E.D.N.Y. July 24, 2013)..................16

*Scott v. Chipotle Mexican Grill, Inc.,* 300 F.R.D. 188 (S.D.N.Y. 2014)....................................10

*SEC v. Rajaratnam,* 622 F.3d 159, 181 (2d Cir. N.Y. 2010) ...........................................10, 11

*United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002) ................................................14

*United States v. Tenzer,* 213 F.3d 34, 39 (2d Cir. 2000) ..........................................................14

*Zubulake v. UBS Warburg LLC,* U.S. Dist. LEXIS 7939, *19 (S.D.N.Y. May 13, 2003)............18

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.14 (2009)................................................................14

**Rules**

Fed. R. Civ. P. 26(b)(2)(C) ..........................................................................................................11

Fed. R. Civ. P. 26(c) ....................................................................................................................16

Fed. R. Civ. P. 26(c)(1) ................................................................................................................11

Local Rule 7(d)(4) ..........................................................................................................................8

6406813v.1

Defendant Midland Funding LLC d/b/a Midland Funding of Delaware LLC ("Midland")

respectfully submits this Memorandum of Law in Opposition to Plaintiff's Fourth Motion to

Compel Discovery, with such other and further relief as this Court may deem just and proper.

## PRELIMINARY STATEMENT

Plaintiff's demand for every class member's terms and conditions and related

correspondence is not one targeted for reasonable discovery, but instead is designed for another

inappropriate purpose – to crush the defendants under the weight of an expensive and time

consuming demand that would hopefully force a settlement.  Plaintiff is taking this approach

because the terms and conditions produced by Midland in response to Plaintiff's prior demands

*expressly permit the collection of court costs,* directly refuting the claims presented in this action.

This disastrous development for Plaintiff's case threatens not only decertification but also

eventual dismissal, forcing Plaintiff to make the unduly burdensome demand of "everything"

from "everyone."  This is a complete abuse of the discovery system, and is not permitted in this

Circuit.

Further, Midland has produced the terms and conditions of Plaintiff's original creditor,

HSBC, which expressly provide for the collection of court costs, eliminating Plaintiff himself

from participation in the class and leaving the class without a representative.  The HSBC

agreement, which applies to more than 1,587 Midland class members, provides:

> **HSBC – (1,587+ class members)** - "If we sue you or if we hire a
> third party to collect your Account balance, **you will pay our court
> costs,** reasonable attorneys fees and other collection costs related to
> the default to the extent permitted by law in the state in which you
> reside…" MF 000369.

Similarly, the other agreements already provided by Midland contain the standard

language whereby users of the credit expressly consent to paying court costs:

1

**Beneficial New York, Inc. – (199+ class members) -** "Default and Cancellation of Agreement: We have the right to require you to pay your entire balance **plus all other accrued but unpaid charges** immediately and/or to cancel your credit privileges under this Agreement…" MF 000276.

**Bank of America – (330 + class members) 7.12: Default.** … To the extent not prohibited by law, if you are in default, you will pay our collection costs, attorneys fees (including allocated costs for attorneys who are employ`yed by us), **court costs** and all other expenses of enforcing our rights under this Agreement." MF 000278.

**MBNA - (-- + class members)** "*When We May Require Immediate Payment*. If you are in default, we can require …we can also require you to pay **the costs we incur in any collection proceeding** as well as reasonable attorneys' fees if we refer your account for collection to an attorney who is not our salaried employee." MF 000289.

**Capital One – (835+ class members)  -** "To the extent permitted by applicable law, you agree to pay us all of our actual **court costs,** collection expenses and attorney's fees (whether paid to an attorney who is one of our employees or an attorney who is not one of our employees) incurred by us in the collection of any amount you owe us under this Agreement…" MF 000295.

.  .  .  .

"You must pay us all of our actual collection expenses, attorneys' fees and **court costs** unless the law does not allow us to collect these amounts." MF 000307.

**Chase – ( 2,647+ class members) -** "…To the extent permitted by law, if you are in default because you have failed to pay us, you will pay our collection costs, attorneys' fees, **court costs**, and all other expenses of enforcing our rights under this Agreement." MF 0003170.

**Citibank – (2,945+ class members) -** "Collection Costs. To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee.  These costs may include reasonable attorneys' fees. They may also include **costs and expenses of any legal action**." MF 000326.

**Sears National Bank – (13+ class members) -** "(d) Collection Fees. If you are in default and fail to pay what you owe us, we may charge

2

you reasonable attorney's [sic] fees, collection costs **and court costs**
if permitted by applicable law. . ." MF 000353.

**GE Money Bank – (695+ class members) -** "If, after your default,
we refer your Account for collection to an attorney who is not our
salaried employee, you will pay, to the extent permitted by
applicable law, our collection costs, **including court costs** and
reasonable attorneys' fees." MF 000366.

The above represent at least 9,242 class members, which is 90.17% of the 10,250

Midland class members.  Notably, the only reason the number is not 100 percent is that Plaintiff

failed to confirm with defendant Midland which spreadsheet of class members was the accepted

version, and Midland's prior production related to a smaller spreadsheet.  With their theory of

liability rebutted by the terms and conditions themselves, Plaintiff in desperation make this

Fourth Motion to Compel.

Plaintiff now claims that the agreements provided above do not represent all of the

creditors, and this is based upon a spreadsheet that was not attached to Plaintiff's motion.

However, the issue that Midland's production did not include all creditors on a certain

spreadsheet *was never raised, never discussed with Midland, and the first Midland heard of this*

*issue was when it received the present motion.*  Plaintiff's failure to confer with Midland on this

issue is a violation of the local rules of this District, which expressly prohibit motions to compel

without conferring on the issue prior to filing.

The demands themselves are absurd.  Despite the fact that Plaintiff chose the class action

as the vehicle to bring this case, Plaintiff demands "everything" from "everyone."  Specifically,

Plaintiff demands that Midland produce, for each of the 10,250 Midland class members, "all

documents – including assignment agreements, contracts, cardmember agreements with

amendments, and bills of sale."  These demands are truly overly broad and unduly burdensome,

points acknowledged by Plaintiff's counsel in the present motion - "Admittedly, this Fourth

Motion to Compel seeks a considerable number of documents – perhaps several hundred thousand pages' worth." The demand for each and every file from 10,250 Midland class members is easily shown as overly broad and unduly burdensome. Midland's sworn affidavit identifies that in man hours alone it will require 533 hours to request and review the 3,200 class members for whom Midland does not possess agreements, and another 6,166 hours for the remaining class members which, at a modest $40 per hour, totals $268,000. Furthermore, the agreements that Midland does not possess cost $10 each to obtain, adding another $32,000, for a total costs of over $300,000 to comply with this demand. A demand such as this one totally defeats the purpose of a class action, and is not permitted.

Significantly, it is Plaintiff's burden – not Midland's – to prove that the original creditors did not have a legal basis to collect court costs. Obtaining documents showing whether the creditors had the right to collect court costs is a burden that belongs to the plaintiff, not Midland, as this is not an affirmative defense but rather remains part of plaintiff's burden of proof in his case in chief. It is Plaintiff's theory that no legal right existed to collect the court costs, and Midland's contention that Plaintiff's theory is unsupported does not make this an affirmative defense as this Court has already ruled and is law of the case. Plaintiff cannot impose upon Midland the cost of obtaining "all documents – including assignment agreements, contracts, cardmember agreements with amendments, and bills of sale" of every class member simply because it drafted a demand and a motion. The burden is Plaintiff's, and remains Plaintiff's, irrespective of the filing of this motion.

Midland nevertheless has proposed a cost-saving and practical solution - namely the production of 117 representative terms and conditions, one for each creditor. It is not necessary to look at, for example, all 2,495 Citibank terms and conditions to see if one of the agreements

somehow dropped the standard term permitting collection of court costs. If that was possible, it would defeat the purpose of a class action. Plaintiff has offered no reason to believe the Citibank agreements would be different from one another on this point, and there is no reason to think any such difference exists. Plaintiff, again, only demands every single agreement to purposely overburden Midland so as to force a settlement.

Plaintiff points out that the representative agreements previously provided may not have included all of the original creditors. Midland's production relied on a spreadsheet produced by C&S that listed only eight creditors. There was substantial confusion as to what spreadsheet was accurate, a point Plaintiff admits in describing the exchange of spreadsheets as "confusing." Plaintiff apparently decided that the spreadsheet with ten thousand Midland class members was sufficient, but never bothered to confirm this fact with Midland. Midland received this spreadsheet, along with other spreadsheets containing wildly varying numbers of class members from three thousand to ten thousand to seventeen thousand to nineteen thousand. Plaintiff should have clarified this with Midland prior to filing, and was required to raise the claim that not every original creditor was accounted for on the spreadsheet. This is a point counsel could have easily worked out without the involvement of the court. Instead, only through the pending motion was Midland placed on notice that Plaintiff had decided on the spreadsheet of 10,250 (the "Midland 10k List").

Additionally, the demands against Midland are improper as they seek *irrelevant* information from Midland. Midland, as opposed to C&S, is in this case *solely* on the basis of vicarious liability, and thus the *only relevant issue for Midland is control*. Issues relating to whether the terms and conditions permitted collection of court costs do not speak to the issue of whether Midland had any control at all over the procedure of C&S to include a demand for the

collection of court costs. The demanded terms and conditions simply do not speak to the claims of vicarious liability against Midland. Therefore, in addition to it being Plaintiff's burden, Plaintiff cannot demand that Midland obtain and produce the terms and conditions for the additional reason that it is not relevant to claims against Midland.

Finally, Plaintiff makes an outrageous demand for transcripts of any deposition in any case Midland has been involved in for the past five years. Again, this demand seeks irrelevant information as it does not speak to the issue of control over C&S. Further, Plaintiff admits that this demand goes to the issue of damages, but as Midland has stipulated to its net worth it leaves the demand with no possible relevance but to harass and burden Midland.

For these reasons, discussed further below, Plaintiff's Fourth Motion to Compel Discovery as directed toward Midland should be denied in its entirety.

## STATEMENT OF FACTS

As alleged in the plaintiff's Second Amended complaint, this matter arises from debt collection activities that C&S undertook on behalf of Midland. (2nd Am. Compl., ¶¶8-10). Plaintiff claims that Defendants engaged in deceptive practices because C&S sent plaintiff a letter on August 1, 2011 stating a balance due that was $147.58 less than the stated balance due on a subsequent letter, sent on August 17, 2011. (2nd Am. Compl., ¶¶11-12, 41). The difference purportedly was meant to reimburse $140.00 in court fees to C&S that C&S incurred with respect to plaintiff's account. (2nd Am. Compl., ¶¶11-12). Midland is implicated by Plaintiff solely on the basis of vicarious liability for C&S's actions. (2nd Am. Compl., ¶42).

On September 16, 2013, Judge William M. Skretny certified a class of approximately 17,475 consumers, defining the class as:

> All consumers with New York addresses, who: (a) within one year
> before March 9, 2012, the date of filing of Plaintiff's Motion to
> Amend in this action; (b) were sent a debt collection letter by

Defendant in a form materially identical or substantially similar to the letter attached to the Amended Complaint as Exhibit B sent to the Plaintiff; or (c) were sent a debt collection letter demanding City Court filing fees that had not yet been paid, incurred, or reduced to judgment; or (d)were sent a debt collection letter that failed to disclose that the balance demanded included filing fees that had not yet been paid, incurred, or reduced to judgment; and (e) the letter was not returned by the postal service as undelivered. (DE No. 110).

Plaintiff served its First set of Discovery Demands on November 5, 2012. Midland responded on January 9, 2013 and first supplemented its response on January 30, 2013. Midland's responses to these First set of Demands are not at issue in Plaintiff's Fourth Motion to Compel.

Plaintiff's Second set of Discovery Demands were served on May 6, 2013. After the class was certified, Plaintiff served its Third set of Discovery Demands on September 24, 2013. Midland responded on October 29, 2013 and supplemented its responses to Plaintiff's Second and Third demands on April 1, 2014, objecting on the grounds that a motion to compel was pending which related to many of plaintiff's demands. Also pending at that time was Midland's motion for reconsideration, arguing that a class should not have been certified. The outcome of these motions may have mooted plaintiff's demands, and thus, discovery was temporarily stayed.

After the motion to reconsider class certification was denied and the plaintiff's previous motions to compel were decided, Midland supplemented its responses to plaintiff's First, Second and Third discovery demands on July 18, 2014. Midland fully complied with the Court's order and on August 11, 2014, went further to attach the terms and conditions of certain original creditors that it believed represented the original creditors of the class members. As described, there was confusion as to which class list was accurate, and Plaintiff did not confirm the final class size, the approved class list, and the relevant original creditors at issue to Midland. Indeed,

7

plaintiff did not contact Midland at all after receipt of its supplemental response to discuss any

alleged deficiencies or objections it had to Midland's response.  Instead, Plaintiff filed its Fourth

Motion to Compel.

## ARGUMENT

### A. Plaintiff made no attempt to resolve the dispute prior to filing a motion, and so his motion should be denied

Plaintiff's motion took Midland completely by surprise, as Midland's last correspondence

with Plaintiff on this issue was in July of 2014, when Plaintiff indicated he was considering

whether Midland's production of representative agreements was sufficient.  Without any notice

to meet and confer with Midland, Plaintiff unilaterally filed the current motion contending that

Midland's production of the eight representative agreements was insufficient because Plaintiff

identified more than eight creditors on the Midland 10k List.  For this reason alone – Plaintiff's

utter failure to meet and confer with Midland as required by the rules of court – Plaintiff's

motion should be denied.

The Local Rules of the United States District Court, Western District of New York,

prohibit any discovery motion from being heard unless the moving party has made "sincere

attempts to resolve the discovery dispute."  Specifically, Local Rule 7(d)(4) provides:

> (4) **Discovery Motion**. No motion for discovery and/or production
> of documents under Federal Rule of Civil Procedure 37 shall be
> heard unless accompanied by an affidavit showing that sincere
> attempts to resolve the discovery dispute have been made. Such
> affidavit shall detail the times and places of the parties' meetings
> or discussions concerning the discovery dispute and the names of
> all parties participating therein, and all related correspondence
> must be attached.

Plaintiff made absolutely <u>no attempt to resolve the dispute</u> before filing the instant

motion.  The motion is the first time Midland heard that Plaintiff felt Midland's production was

insufficient.  Indeed, Plaintiff's own moving papers admit that the required meet and confer

8

discussions never took place.  The Declaration of Jonathan Miller accompanying Plaintiff's

motion cites to only two conferences – one on July 2, 2014 and the second on July 11, 2014 –

both of which *pre-date* Midland's response and production of the representative agreements

which did not occur until July 18, 2014.  (*See* the Declaration of Jonathan R. Miller in Support of

Plaintiff's Motion to Compel, Docket Entry 231, hereinafter "Miller Dec." pp.5-6).  In other

words, the issue of whether Midland's production of representative agreements was sufficient

*could not have been addressed* on July 2 or July 11.  Nowhere in Miller's Declaration is there

any representation that Plaintiff contacted Midland to discuss the issue of the number of original

creditors, because no such meet and confer conversation took place.  Had Plaintiff discussed this

issue with Midland, he would have learned that Midland was willing to:  (a) clarify which

spreadsheet Plaintiff was relying on and (b) supplement its response to include as many creditors

as the new spreadsheet disclosed.  Instead, Plaintiff's disregard of the Local Rules has led to this

unnecessary motion practice and waste of judicial resources.

 As Plaintiff acknowledges, there was substantial confusion as to the various spreadsheets

containing the number of class members in general and Midland class members specifically.

(*See* the Memo of Law in Support of Plaintiff's Motion to Compel, Docket Entry 232,

hereinafter "Pl. Mem." p. 7: "the confusion now seems to have been resolved.  In June 2014,

C&S provided Plaintiff with spreadsheets containing corrected information.").  The

correspondence on this issue was between C&S and Plaintiff, and while Midland was provided a

copy of the spreadsheet, at no time did Plaintiff confirm he accepted the spreadsheet and that

Midland should use the spreadsheet for its responses.  Thus, while the confusion abated for

Plaintiff, his counsel never bothered to inform Midland that the substantial issues and confusion

had been resolved.  Midland only discovered Plaintiff had accepted the Midland 10k List as the

9

final list of class members when Plaintiff filed the present motion.  Plaintiff's failure to meet and

confer with Midland pursuant to the local rules is alone a basis for the denial of this motion.

## B.  The document requests are overly broad and unduly burdensome

While discovery is meant to be broad to allow parties to establish the facts necessary to

support their claim, the court can, and should, limit abusive discovery demands where, as here,

the burden outweigh the benefits:

> While "[a] party must be afforded a meaningful opportunity to
> establish the facts necessary to support his claim," *In re Agent
> Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008), the
> Court has broad discretion to limit discovery, particularly when
> such discovery may be duplicative, more readily obtained from
> another source, or when the burden or expense outweighs the
> benefits of the discovery.  Fed. R. Civ. P. 26(b)(2)(C).  *See also*
> *S.E.C. v. Rajaratnam,* 622 F.3d 159, 181 (2d Cir. 2010) ("The right
> of access to discovery materials is frequently qualified in the
> interest of protecting legitimate interests."); *Gelb v. Am. Tel. & Tel.
> Co.,* 813 F. Supp. 1022, 1034 (S.D.N.Y. 1993) ("The decision to
> limit the open and far-reaching discovery permitted under the
> Federal Rules of Civil Procedure is left to the discretion of the trial
> court in light of the relevant facts and circumstances of a particular
> case." (citing *Nixon v. Warner Commc'ns*, 435 U.S. 589, 599, 98 S.
> Ct. 1306, 55 L. Ed. 2d 570 (1978)).
>
> *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 188 (S.D.N.Y.
> 2014).

Plaintiff's motion unabashedly seeks "everything" for "everyone."  The motion seeks

from Midland, for every class member, "all documents – including assignment agreements,

contracts, cardmember agreements with amendments, and bills of sale."  (Miller Dec. p. 3).

Plaintiff's counsel readily admits the absurdity and extremely burdensome nature of the request,

stating, "Admittedly, this Fourth Motion to Compel seeks a considerable number of documents –

perhaps several hundred thousand pages' worth."  (Pl. Mem. p. 2).  Plaintiff explains away the

burdensome nature of the request by stating "this is no fishing expedition" but that does not

change the overbreadth and burden of the request.

10

While the scope of evidence subject to discovery under the federal rules is broad, a party is protected from non-privileged discovery that is an undue burdensome or which is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive . . . [or where] the burden or expense of the proposed discovery outweighs its likely benefit." *SEC v. Rajaratnam*, 622 F.3d 159, 181 (2d Cir. N.Y. 2010); *see also* Fed. R. Civ. P. 26(b)(2)(C). Indeed, "a district court may issue protective orders 'for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *Rajaratnam*, 622 F.3d at 181 (quoting Fed. R. Civ. P. 26(c)(1)). Furthermore, "even in instances where the materials sought are relevant and within the scope of Rule 26(b)[ ]", the Court has "broad authority to limit or prevent discovery[.]" *Mitchell v. Fishbein*, 2005 U.S. Dist. LEXIS 5069, *14 (S.D.N.Y. Mar. 31, 2005).

Here, the request seeking all documents for all class members is the very definition of overbroad. The request literally seeks every piece of paper for each individual class member. If Plaintiff truly needs documents for each individual class member to prove his case, decertification of the class is appropriate, as production and review of documents for each class member requires an individualized inquiry that is antithetical to a class action. Furthermore, if the creditors use the same or similar provisions in all of its credit card agreements, there is no reason to obtain 5,000 copies, and thus there is no good cause shown for demanding anything more than a representative sample for each creditor. Additionally, Plaintiff can obtain these agreements from the creditors themselves via non-party disclosure which limits his ability to demand the agreement from Midland. As a compromise, Midland is willing to provide one agreement for each creditor, but if Plaintiff wants the other 4,999 copies of that same agreement,

11

the Court should require Plaintiff to obtain them from the creditor, otherwise it is clear Plaintiff is using discovery as a sword to impose a massive physical and financial burden on Midland.

Concurrent with this opposition brief, Midland has submitted an affidavit outlining the enormous burdens associated with Plaintiff's document requests. Within the affidavit, Midland clearly and explicitly outlines the burden in terms of man-hours and cost. Midland's sworn affidavit identifies 533 man hours to request and review the 3,200 class members for whom Midland does not possess agreements, and another 6,166 hours for the remaining class members. Midland estimates this cost, at $40 per hour, will total a minimum of $268,000. Furthermore, the agreements that Midland does not possess cost $10 each to obtain, adding another $32,000. The total minimum estimated costs of the demand for "everything" from "everyone" is over $300,000. These burdens are completely unreasonable and unnecessary because, as discussed above, the representative agreements are sufficient and Plaintiff can obtain the agreements from the creditors

The compromise proposed by Midland – production of 117 representative agreements – appropriately balances Plaintiff's purported need for the documents and information with massive cost and time required for Midland to obtain every single agreement.

## C. Representative agreements are sufficient, especially in light of the fact that the Burden of Proof is Plaintiff's, not Midland's

Plaintiff confuses the issue of burden, an issue that This Court already resolved and is now law of the case. Plaintiff claims that "defendants must produce more than a simple cardmember agreement – they must produce business records showing that cardmember agreement X matches up with class member Y… In short, to prove up their contractual-entitlement defense, defendants must produce" agreement, business records and bills of sale. (Pl. Mem. p. 12). The statement "in order to prove… defendants must produce" implies that the

burden of proof is on the defendants – it is not.  Whether or not the original creditors had the

right to collect fees – a fact that goes to Plaintiff's case in chief – is a fact that Plaintiff must

prove, not the defendants.  Defendants only have the burden of proof on affirmative defenses,

and as this Court clearly held, this is not an affirmative defense:

> Should Defendants ultimately prove any or all of these defenses as
> to any of Plaintiffs' claims, it would necessarily follow that
> Plaintiffs would be unable to prove such claims, thereby
> establishing these defenses are not affirmative defenses. *See Saks
> v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir. 2003) ("An
> affirmative defense is defined as a defendant's assertion raising
> new facts and arguments that, if true, will defeat the plaintiff's or
> prosecution's claim, even if all allegations in the complaint are
> true.").
>
> *Hallmark v. Cohen & Slamowitz*, LLP, 2014 U.S. Dist. LEXIS
> 67985 (W.D.N.Y. May 16, 2014).

Plaintiff cannot shift the burden for its case in chief to Midland simply because it believes

Midland may have some the information that *Plaintiff needs* to prove his case.  Plaintiff cannot

claim that it is part of Midland's defense as the Court already ruled this is not an affirmative

defense and thus is law of the case.  "[W]hen a court has ruled on an issue, that decision should

generally be adhered to by that court in subsequent stages in the same case unless cogent and

compelling reasons militate otherwise."  *Boyd v. J.E. Robert Co.*, 2010 U.S. Dist. LEXIS

140905, *51-52 (E.D.N.Y. Mar. 31, 2010) (quoting *United States v. Quintieri*, 306 F.3d 1217,

1225 (2d Cir. 2002)); "'Cogent' and 'compelling' reasons include 'an intervening change of

controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice'" none of which are present here.  *Boyd*, 2010 U.S. Dist. LEXIS 140905 at *52

(quoting *United States v. Tenzer*, 213 F.3d 34, 39 (2d Cir. 2000)).  Plaintiff cannot shift this

burden of proof, and thus the motion itself must be denied as the requests are Plaintiff's burden

to prove.

Irrespective of the fact that Plaintiff has the burden of proof, Midland is willing to provide 117 representative terms and conditions - one for every creditor. There is no need to examine whether client X has creditor Y's form if creditor Y's form contains the requisite language. In fact, our review of the credit card agreements shows that *every single agreement contains the language authorizing the creditor to recover court costs*. This is a dispositive fact – the agreements all permitted the precise conduct which plaintiff used as the basis for this class action. Thus, Plaintiff seeks in this motion to compel not valid requests for information but rather "everything from everyone," utilizing these discovery demands as a sword to force Midland to settle to avoid incurring the massive costs. Plaintiff makes no secret of the overly broad nature of the demands, and unabashedly demands from every class member not only credit agreements but all chain of title documents for all 10,000 clients. This is abusive. If the agreements themselves all contain the language permitting court costs, then there cannot be any persons with an agreement with other provisions and thus no need to quadruple the effort to establish chain of title.

The representative agreements accomplish this goal at a reasonable cost. Courts recognize that in the context of a class action lawsuit, the use of a sample to avoid burdensome and even impractical discovery in cases involving numerous parties is a well-recognized and approved technique. *Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 103 (W.D.N.Y. 2012) (citing Manual for Complex Litigation, Fourth, § 21.14 (2009) (acknowledging use of sampling methodology for discovery in class actions may be appropriate)). Plaintiff should not be allowed to use this discovery motion as a sword, and thus the relief sought in the motion should be denied.

14

### D. The demands against Midland seek irrelevant information

As this Court has recognized, and as Plaintiff has admitted, Midland is not the alleged active wrongdoer but is a party in this case solely on the basis of vicarious liability. *Hallmark v. Cohen & Slamowitz, LLP,* 2014 U.S. Dist. LEXIS 67985 (W.D.N.Y. May 16, 2014). Thus, being that the claims are purely vicarious in nature, the only relevant issue is Midland's control over the law firm C&S, nothing else matters:

> To be vicariously liable under the FDCPA, however, 'the principal must exercise control over the conduct or activities of the agent.' *Bodur v. Palisades Collection, LLC,* 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011) (quoting *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1173 (9th Cir. 2006)); *see also Nichols v. Niagara Credit Recovery, Inc.,* 5:12-cv-1068 (MAD/TWD), 2013 U.S. Dist. LEXIS 64671, at *12 (N.D.N.Y. May 7, 2013) ("[T]o hold a debt collector vicariously liable for the acts of the agent, the plaintiff must show . . . the principal has exercised control over the agent's conduct or activities.").
>
> *Sanchez v. Abderrahman*, 2013 U.S. Dist. LEXIS 186537 (E.D.N.Y. July 24, 2013)

As the only relevant issue is the issue of control, whether the credit agreements provided authority to collect court costs is an irrelevant issue as to Midland.

Irrespective of C&S's authority to collect court costs, if Midland did not control C&S, then Midland will be not be liable. The *only* way Midland can be liable is if Midland exercised control over C&S, and thus Midland has no burden to prove or disprove anything with regard to the agreements themselves.

Plaintiff cannot be allowed to pressure Midland into producing what he admits may be "hundreds of thousands of documents" on an *irrelevant* issue to its claims against Midland. Whether the agreements are relevant to Plaintiff's claims is Plaintiff's burden to prove. However, Plaintiff is improperly using this motion to compel Midland to incur the costs of this substantial, and yet irrelevant, portion of discovery. Case law is legion that only relevant

15

information may be obtained in discovery from any party, and thus Plaintiff has no basis whatsoever to demand this information from Midland.

### E. Deposition transcripts

Plaintiff makes a demand for transcripts of any deposition in any case Midland has been involved in for the past five years. This demand should be summarily denied as it seeks irrelevant information. It does not address the issue of Midland's alleged control of C&S, and Plaintiff admits its goes to the issue of damages, but as Midland long ago stipulated to its net worth, this demand has no possible relevance. Plaintiff wants to go fishing in claiming "the degree of control that Midland ordinarily exerts over the law firms it retains is likely to have come up in many of its employee's depositions." (Pl. Mem. p. 18). However, if Plaintiff wants it can depose Midland and C&S representatives, but it cannot go fishing through past depositions on the hope that maybe the issue came up.

Plaintiff acknowledges that it is seeking with this demand information "related to C&S's finances [which] arose in most if not all of its employees' previous depositions." (Pl. Mem p. 17). This issue has nothing to do with Midland, and it is also burdensome, broad, and not made in good faith. It should not be considered by this Court in the least.

### F. Cost-shifting

At a minimum, as Plaintiff recognizes the massive nature and expense involved in this burdensome request, any cost incurred by Midland should be shifted back to Plaintiff. *Zubulake v. UBS Warburg LLC*, U.S. Dist. LEXIS 7939, *19 (S.D.N.Y. May 13, 2003) ("the presumption is that the responding party must bear the expense of complying with discovery requests, but [it] may invoke the district court's discretion under Rule 26(c) to grant orders protecting [it] from 'undue burden or expense' in doing so." (citing Fed. R. Civ. P. 26(c)).

16

Whether the fees associated with responding to a discovery demand should be shifted to a requester are determined by the examination of elements: "(1) the specificity of the discovery requests; (2) the likelihood of discovering critical information; (3) the availability of such information from other sources; (4) the purposes for which the responding party maintains the requested data; (5) the relative benefits to the parties of obtaining the information; (6) the total cost associated with production; (7) the relative ability of each party to control costs and its incentive to do so; and (8) the resources available to each party." *Zubulake*, U.S. Dist. LEXIS 7939 at *19.

Here, there is no attempt at specificity in the discovery requests at all.  Plaintiff seeks everything from anyone, which is *prima facie* invalid.  Additionally, looking at every Citibank agreement instead of a typical Citibank agreement is not likely to discover any new or critical information.  Additionally, the information is available from other sources, namely from the original creditors themselves.  The purpose of the requests are unsupported as they do not go to the issue of control, the only relevant issue for Midland.  As noted above, there is no benefit to be derived from reviewing 10,000 agreements when there are only 117 creditors.  The total cost associated with production are staggering – with conservative estimates of 836 "8-hour days" in order to handle the 6,699 hours required to respond to Plaintiff's demands, at a cost exceeding $300,000.  Midland is vicariously liable and cannot afford to incur the costs of obtaining such a burdensome request, and rather the costs should fall to class counsel who have represented that they are qualified to bring this action.  For all these reasons, cost-shifting to the plaintiff is wholly appropriate.

Midland has submitted an affidavit outlining the burdens associated with Plaintiff's document requests.  These burdens are unreasonable and unnecessary as the representative

6406813v.1

agreements are sufficient to answer the question presented, and also because Plaintiff can obtain the agreements from the creditors themselves.  Accordingly, any costs to Midland should be shifted back to Plaintiff.

## CONCLUSION

For the foregoing reasons, Midland respectfully requests that this Court deny Plaintiff's Fourth Motion to Compel Discovery, or in the alternative issue an order limiting the demands to the 117 representative agreements only, with such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
           October 29, 2014

Respectfully Submitted,

WILSON, ELSER, MOSKOWITZ, EDLEMAN & DICKER LLP

By: _____

Thomas A. Leghorn
Joseph L. Francoeur
150 E. 42nd Street
New York, NY 10017
(212) 490-3000 (phone)
10277.00139
thomas.leghorn@wilsonelser.com
joseph.francoeur@wilsonelser.com
*Attorney for Defendants*
*MIDLAND FUNDING LLC d/b/a*
*MIDLAND FUNDING OF DELAWARE,*
*LLC*

18