UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,
on behalf of himself and all others similarly situated,         **DECISION**
                                                                  **and**
                         Plaintiff,           **ORDER**
   v.
                                                                                        **11-CV-842S(F)**
COHEN & SLAMOWITZ,
MIDLAND FUNDING LLC,

                         Defendants.
_____

APPEARANCES:    BROMBERG LAW OFFICE, P.C.
                           Attorneys for Plaintiff
                           BRIAN L. BROMBERG,
                           JONATHAN R. MILLER, of Counsel
                           40 Exchange Place, Suite 2010
                           New York, New York   10005

                           LAW OFFICES OF KENNETH HILLER, PPLC
                           Attorneys for Plaintiff
                           SETH ANDREWS, of Counsel
                           6000 North Bailey Avenue, Suite 1A
                           Amherst, New York   14226

                           CONNELL FOLEY LLP
                           Attorneys for Defendant Cohen & Slamowitz, LLP
                           ANDREW C. SAYLES, of Counsel
                           85 Livingston Avenue
                           Roseland, New Jersey 09068

                           WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
                           Attorneys for Defendant Midland Funding, LLC
                           THOMAS A. LEGHORN, of Counsel
                           150 East 42nd Street
                           New York, New York   10017

## JURISDICTION

By order of Hon. William M. Skretny filed November 10, 2011 (Doc. No. 9) this

matter was referred to the undersigned for all non-dispositive pretrial matters.  It is

1

before the court on Plaintiff's Fourth Motion to Compel Discovery filed October 3, 2014 (Doc. No. 230).

## BACKGROUND

Plaintiff's Fourth Motion to Compel Discovery was filed October 3, 2014 (Doc. No. 230) ("Plaintiff's motion") together with the Declaration of Jonathan R. Miller in Support of Plaintiff's Fourth Motion to Compel Discovery ("Miller Declaration") (Doc. No. 231), including exhibits A – I ("Miller Declaration Exh(s). ___") and a Memorandum of Law in Support of Plaintiff's Fourth Motion to Compel Discovery (Doc. No. 232) ("Plaintiff's Memorandum").

Defendant Midland Funding LLC d/b/a Midland Funding of Delaware, LLC ("Midland") filed on October 29, 2014, its Memorandum Of Law In Opposition To Plaintiff's Fourth Motion To Compel Discovery (Doc. No. 238) ("Midland's Memorandum") along with the Affidavit of Kyle Hannan In Opposition To Plaintiff's Fourth Motion To Compel (Doc. No 239) ("Hannan Affidavit").  Also on October 29, 2014, Cohen & Slamowitz, LLC ("C&S") filed the Memorandum Of Law On Behalf Of Defendant Cohen & Slamowitz, LLP, In Opposition To Plaintiff's Fourth Motion To Compel (Doc. No. 240) ("C&S's Memorandum"), the Supplemental Declaration Of Andrew C. Sayles, Esq. In Support [*sic*] Opposition To Plaintiff's Fourth Motion To Compel (Doc. No. 241) ("Sayles Supplemental Declaration"), together with exhibit A ("Sayles Declaration Exh. A").

On December 2, 2014, Plaintiff filed, under seal, the Reply Declaration of Jonathan R. Miller in Further Support of Plaintiff's Fourth Motion to Compel Discovery (Doc. No. 249-1) ("Miller Reply Declaration") together with exhibits A-C ("Miller Reply

Declaration Exh(s). ___") and a redacted copy of the Reply Memorandum of Law in Further Support of Plaintiff's Fourth Motion to Compel Discovery ("Doc. No. 244) ("Plaintiff's Reply Memorandum"), unredacted copies of which were provided to the court for its *in camera* consideration.  Oral argument was conducted on December 3, 2014 (Doc. No. 250).  In response to questions addressed to Plaintiff by the court at oral argument, Plaintiff provided a letter dated December 5, 2014 (Doc. No. 251) ("Plaintiff's December 5, 2014 Letter") and on December 8, 2014 an amended letter dated December 8, 2014 (Doc. No. 253) ("Plaintiff's December 8, 2014 Letter") with a request to submit as exhibits A and D, copies of credit card documents pertinent to Plaintiff's account with HSBC ("Plaintiff's December 8, Letter Exh(s) ___").  At the direction of the court on December 30, 2104, Plaintiff's December 8, 2014 Letter and Exhs. A & B were filed under seal (Doc. No. 253).  By Text Order filed December 24, 2014 (Doc. No. 252), the parties were directed to submit additional briefing as to whether, based on Judge Skretny's rejection of Defendant's contractual authorization contention in connection with the court's denial of Defendant's motion for judgment on the pleadings, Plaintiff's motion seeking such documents was moot.

## DISCUSSION

In this class action brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1582, *et seq.*, Plaintiff's motion seeks to compel Defendants' production of all requested agreements, including applications for credit cards, assignments of credit cardholder agreements, contracts and similar instruments, which Defendants claim authorize collection, by legal action or otherwise, of court filing fees against 10,250 class members ("the requested agreements").  Plaintiff's motion also seeks production

of transcripts of depositions of Defendants' employees and employees of Midland Credit Management, Inc. ("MCM"), an affiliate of Defendant Midland and a non-party, which manages the collection of charged off credit card debts acquired by Midland from the original issuers or creditors conducted from 2006 to the present and, from Defendant C&S, copies of training manuals and materials used by C&S's employees in conducting debt collection activities on behalf of Midland and MCM.

Plaintiff's suit was certified by Judge Skretny as a class action pursuant to Fed.R.Civ.P. 23 ("Rule 23") by Decision and Order filed September 16, 2013 (Doc. No. 110) ("the September 16, 2013 D&O") based on allegations that on August 17, 2011, Defendant C&S sent Plaintiff a letter demanding payment of a $140 City Court filing fee, prerequisite to commencing an action against Plaintiff on an alleged credit card balance owed to the card issuer HSBC, before suit was commenced.  Plaintiff requested certification of a class constituting all consumers within New York State to whom C&S sent similar letters within one year before March 9, 2012.  The September 16, 2013 D&O at 11.  Defendants opposed Rule 23 certification, *inter alia*, based on Defendants' argument, asserted in a reply brief, that collection of this fee was authorized by a credit card agreement thereby negating any violations of the FDCPA as provided in 15 U.S.C. § 1692f(1) (prohibiting collection of any fee "incidental to the principal obligation," unless such amount is expressly authorized by the agreement creating the debt . . ..) ("§ 1692f(1)").  *Id.* at 7.  In rejecting Defendants' contention, Judge Skretny noted that Defendants had not produced or "satisfactorily identified" such an agreement.  The September 16, 2013 D&O at 8.  Judge Skretny also overruled Defendants' objection, among others, to Rule 23 certification as lacking in typicality based on a finding that the

4

asserted agreement allowing collection of the fee finding such "defense," Plaintiff's Memorandum at 12 ("to prove up their contractual-entitlement defense, Defendants must produce card member agreements; business records demonstrating that proffered agreements were binding on particular class members at the time Midland purchased the accounts; and bills of sale and/or assignment agreements demonstrating when Midland purchased the accounts and that it in fact had the right to enforce the agreements") as relied on by Defendants, was not unique and would apply to Plaintiff and as well the class.  The September 16, 2013 D&O at 13.  Subsequently, Judge Skretny denied Defendants' request for reconsideration in a Decision and Order filed January 8, 2014 (Doc. No. 177) ("Reconsideration D&O") acknowledging that if on-going discovery results in production of requested agreements demonstrating individual differences predominate or bar the claim of Plaintiff or class members, subclasses or decertification may be required.  Reconsideration D&O at 3.

Plaintiff's Request for the Agreements.

Plaintiff contends that given Defendants' apparent intention to establish Defendants were authorized by the requested agreements, particularly the cardholder agreements pertinent to the class members to collect the subject $140 court filing fee, production of all the requested agreements for each of the 10,250 class members is necessary to permit Plaintiff to rebut Defendants' reliance on this defense under § 1692f(1).  Defendants argue that such request is irrelevant and unduly burdensome. Midland's Memorandum at 5 (Plaintiff's discovery demands "seek *irrelevant* information from Midland" (italics in original);  *id.* at 10-12 (plaintiff's requests are "overly broad and unduly burdensome"); C&S's Memorandum at 10 (Plaintiff's requested "information has

5

no bearing on the allegations involved in this action"); *id* (Plaintiff's request would require C&S's "individual review of tens of thousands of files").  Defendants alternatively submit that producing exemplar agreements should be sufficient, Midland's Memorandum at 4 (proposing production of a copy of one agreement for each creditor), or that the court limit production to a fair sample of the requested agreements available to Defendants, Midland Memorandum at 11 ("no good cause shown [by Plaintiff] for demanding anything more than a representative sample [of the requested agreements] for each creditor"); C&S's Memorandum at 12-13 (proposing to produce a sample of the requested "credit agreements").  Plaintiff counters by maintaining that public records indicate the original creditors, from whom Midland acquired the charged-off accounts of the class, have, over the relevant time-period, issued several variations of the cardholder agreements and that absent production of all the requested agreements Defendants cannot demonstrate – and Plaintiff cannot rebut -- that any sampled agreements in fact pertain to each class member thereby rendering Defendants' proposed production by exemplar or sample to be inherently deficient.  Plaintiff's Reply Memorandum at 2 (Midland has not provided any documents "to link any of the purported card member agreement [*sic*] to even a single class member").

   First, Defendants' relevancy objection to production of the requested agreements is untenable.  A fair reading of Judge Skretny's Decisions and Orders bearing on this issue demonstrates that Defendants have repeatedly contended the existence of the requested agreements bar any relief under Plaintiff's FDCPA claims.  Further, while Defendants argue the burden of proof on this issue falls on Plaintiff and that Plaintiff's requests are an attempt to shift improperly this burden to Defendants, both of Judge

Skretny's Decisions and Orders, the September 16, 2013 and the Reconsideration D&O, indicate it is Defendants' obligation to produce any requested agreements establishing the authority to collect the fee at issue both as a defense to liability as permitted by § 1692f(1) upon Plaintiff's claims, as well as to defeat class certification under Rule 23 based on a lack of commonality and typicality.  *See* September 16, 2013 D&O at 7; Reconsideration D&O at 2-3.  Additionally, courts have also held that such burden is upon the debt collector defendant.  *See Seeger v. AFNI, Inc.*, 548 F.3d 1107, 1111 (7th Cir. 2008) ("In order to be entitled to collect a fee, AFNI [defendant] must show that the fee is either authorized by the governing contract or that it is permitted by Wisconsin law." citing § 1692f(1).) (bracketed material added).  *See also Kulig v. Midland Funding, LLC*, 2013 WL 6017444, at *5 (S.D.N.Y. Nov. 13, 2013) (defendant failed to demonstrate credit card agreement binding on plaintiff contained arbitration clause relied upon by defendant).  Additionally, the question of which party has the burden of proof on any particular issue is irrelevant in the context of discovery pursuant to Fed.R.Civ.P. 26(b)(1) ("Rule 26(b)(1)") as under Rule 26(b)(1) either party may obtain discovery "relevant to <u>any</u> party's claim or defense." (underlining added).  Nothing in the text or history of Rule 26(b)(1) supports such a notion, and Defendants point to no authority in support.  Thus, Plaintiff's request for the agreements seeks relevant information.

Defendants' undue burdensomeness objection is based primarily on the Hannan Affidavit, which indicates that it would be unreasonably expensive, $32,000, for Midland to obtain the necessary documents from the original creditors, non-parties, for 3,200 class members, even assuming that such records can be obtained, and that it would be

necessary to review as many of the 37,000 requested agreements Midland claims it would be required to examine in order to determine which are applicable to the remaining 7,000 class members for whom such requested agreements are within Midland's database, a process Midland estimates will cost $300,000 at a minimum. Hannan Affidavit ¶¶ 11-13.  Plaintiff minimizes such potential burden by arguing that Defendants would be required to produce such documents to support any litigation actually commenced against the class to collect the alleged debts, Plaintiff's Memorandum at 13, and pointing to the substantial resources, both manpower and finances, of Midland's parent, Encore Group, Inc., revealed in public financial filings. Plaintiff's Reply Memorandum at 6-7 (given Encore's substantial net income the cost of production from Midland to satisfy Plaintiff's demands would be the "equivalent of a trip to the grocery store").  C&S offers a similar objection based on excessive cost.  C&S's Memorandum at 11 ("it would require that C&S expend approximately 3,400 hours to properly compile and produce the information sought by Plaintiff").

 The use of sampling in connection with discovery in class actions as a practical and cost-effective means by which to obtain relevant discovery is well-recognized.  *See Hinterberger v. Catholic Health Sys.*, 284 F.R.D. 94, 103 (W.D.N.Y. 2012) (citing Manual for Complex Litigation, Fourth, § 21.14 (2009) (acknowledging use of sampling methodology for discovery in class action may be appropriate)).  Plaintiff's concerns about the absence of uniformity within the population of Defendants' available records containing the requested agreements for all of the class members as to the precise terms and conditions of all applicable requested agreements is reduced to an acceptable level by the fact that a fair review of the text of the exemplar provisions

addressing Defendants' authority to collect filing fees provided by Defendants for each of nine of the original creditors for the class members, including Plaintiff, Defendant Midland's Memorandum at 1-2, shows only slight and immaterial variations.  Although Plaintiff points out that these exemplars fail to cover similar provisions for at least 17 other original creditors which issued credit cards to members of the class, Miller Declaration ¶ 22, the risk that any sampling of the responsive agreements produced will not fairly reflect the terms and conditions of all requested agreements issued by these original creditors for all class members in Defendant's possession or practical control is substantially obviated by requiring a significant sample size.  Moreover, given that a provision permitting collection of fees incidental to litigation is a common provision in credit card agreements further reduces the risk that the resulting production will not be fairly representative of all requested agreements within the relevant population of responsive documents with Defendants' possession or control.

Similarly, it is also unlikely that even though there may be some variation in the language of the provisions authorizing the collection of court filing fees, that such provisions may have been deleted all together prior to sending C&S's collection letters similar to the August 17, 2011 letter, to the class thereby destroying Defendants' § 1692f(1) defense.  In any event, the ultimate issue for trial, assuming production of the requested agreements relevant to Defendants' authorization to collect court costs incidental to collection of the unpaid principal, is whether these provisions "entitle [Defendants] to seek pre-suit court costs."  Plaintiff's Memorandum at 3.  Further, while the court is permitting Defendants, particularly Midland, to avoid the expense of obtaining the requested agreements for 3,200 class members from non-party original

creditors (which Midland represents are not presently in its possession), Midland's assignors, the resultant population – 6,800 sets of records – is still approximately 66% of the total 10,250 class population. Coupled with a 10% sample size as proposed by C&S, C&S's Memorandum at 12-15, gives reasonable assurance that the resultant production will be a fair representation of the requested agreements available from the 10,250 files in the relevant base.  *See McPherson v. Canon Bus. Solutions, Inc.*, 2014 WL 654573, at *9 (D.N.J. Feb. 20, 2014) (approving use of a 10% random sample to balance plaintiff's need against burden of production to defendants for review of 30-year period of defendant's records in plaintiff's class action based on alleged violations of Fair Credit Reporting Act); *Gelfand v. Special Care Hosp. Management Corp.*, 2010 WL 2399693, at *4 (E.D.N.Y. June 10, 2010) (approving plaintiff's request to permit discovery of patient records by random sampling "to reduce the otherwise heavy burden of redaction and production which rests primarily with the defendant institutions and facilities").  Midland implies its responsive documents reside in a digitized database, Hannan Affidavit ¶ 10, an additional indicator that the sampling process will not be unreasonably burdensome.  Given that placing and establishing the authorizing provisions at issue is likely to be Defendants', not Plaintiff's,  burden an issue for the District Judge's determination, this conclusion also properly balances Plaintiff's need for the information against the burden of production as documented by Defendants.  *See* Fed.R.Civ.P. 26(b)(2)(C)(iii) (court required to balance benefit of discovery against cost of production).  Therefore, Defendants shall use a reasonably random sampling method to search 10% of the 6,800 consumer files available to Defendants, whether primarily in Midland's database or C&S's files, applicable to the class and produce records, *i.e.*, the

agreements requested by Plaintiff, resulting from use of the 10% sample size. Accordingly, Plaintiff's motion as to the requested agreements is GRANTED in part and DENIED in part.

<u>Plaintiff's Request for Deposition Transcripts</u>.

Although Defendants argue Plaintiff's requests seek irrelevant information, Midland's Memorandum at 16; C&S's Memorandum at 17-19, the court finds otherwise. In particular, to the extent available in Defendants' possession, such transcripts, may produce testimony relevant to the degree of Midland's control over C&S's collection actions directed to the class as well as C&S's net worth, which remains an open issue. Additionally, such testimony may also reveal the extent to which C&S's alleged improper collection activity in relation to the collection of filing fees represented repetitive and intentional violations of the FDCPA directed to the class relevant to a calculation of damages pursuant to 15 U.S.C. § 1692k(b)(2).  That, as C&S argues, C&S's Memorandum at 20, the request covers information outside the applicable FDCPA one-year statute of limitations is not dispositive. *See Maritime Cinema Service Corp. v. Movies En Route, Inc.*, 60 F.R.D. 587, 590-91 (S.D.N.Y. 1973) (rejecting defendant's assertion that permitting discovery pertaining to period outside relevant limitations period in antitrust proceeding would be irrelevant to damages issue).  C&S points to no authority supporting this contention.  As the request seeks relevant information and Defendants fail to demonstrate the requests impose an undue burden, Plaintiff's motion should be GRANTED as to this request.

Plaintiff's Request for C&S Training Materials.

Although Defendant C&S has withdrawn its *bona fide* error defense, available under 15 U.S.C. § 1692k(c), such material may nevertheless produce information relevant to C&S's alleged flagrant FDCPA violations in connection with the collection of pre-suit filing fees, *see Chang v. Cavalry Portfolio Services, LLC,* 2011 WL 6101952, at *1 (E.D.N.Y. Dec. 1, 2011) (granting production of defendant's training manuals in FDCPA action as relevant to award of damages for willful violations), and the issue of Midland's alleged control over such actions relevant to the issue of Midland's potential vicarious liability for C&S's FDCPA violations directed to the class. C&S asserts no undue burden upon C&S in connection with this request. Plaintiff's motion as to this request should be GRANTED.

Local Rule 7(d)(4).

Defendants maintain Plaintiff failed to comply with Local Rule 7(d)(4) which requires a documented good faith effort to resolve a discovery dispute prior to bringing a motion to compel. Midland's Memorandum at 8-10; C&S's Memorandum at 5-6. Plaintiff's response persuasively demonstrates in detail Plaintiff's efforts to resolve the instant document production dispute initially raised following Defendants' refusal to provide discovery in response to Plaintiff's Third Demand for Discovery served October 30, 2013. *See* Miller Declaration Exh. A; Plaintiff's Reply Memorandum at 11-14. Defendants' opposition to Plaintiff's motion on this ground is therefore without merit.

## CONCLUSION

Based on the foregoing, Plaintiff's motion (Doc. No. 230) is GRANTED in part and DENIED in part.[1]

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated: January 8, 2015
       Buffalo, New York

---

[1] As the court has determined that Plaintiff's motion with regard to the requested agreements is not moot, the Text Order, Doc. No. 252, is VACATED.