UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,
on behalf of himself and all others similarly situated,                    **DECISION**
                                                                                                       **and**
                                                                     Plaintiff,              **ORDER**

        v.
                                                                                          **11-CV-842S(F)**

COHEN & SLAMOWITZ,
MIDLAND FUNDING LLC,

                                                                     Defendants.
_____

APPEARANCES:     BROMBERG LAW OFFICE, P.C.
                              Attorneys for Plaintiff
                              BRIAN L. BROMBERG,
                              JONATHAN R. MILLER, of Counsel
                              40 Exchange Place, Suite 2010
                              New York, New York   10005

                              LAW OFFICES OF KENNETH HILLER, PPLC
                              Attorneys for Plaintiff
                              SETH ANDREWS, of Counsel
                              6000 North Bailey Avenue, Suite 1A
                              Amherst, New York   14226

                              CONNELL FOLEY LLP
                              Attorneys for Defendant Cohen & Slamowitz, LLP
                              ANDREW C. SAYLES, of Counsel
                              85 Livingston Avenue
                              Roseland, New Jersey 09068

                              WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
                              Attorneys for Defendant Midland Funding, LLC
                              THOMAS A. LEGHORN, of Counsel
                              150 East 42nd Street
                              New York, New York   10017


        In this class action, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692, *et seq.*, ("FDCPA") seek damages for Defendants' unauthorized attempt to

collect pre-suit filing fees of $140 for which Defendant Cohen & Slamowitz ("C&S")
demanded payment by letter sent prior to the filing of any complaint.

By motion papers filed October 2, 2014 (Doc. No. 230) ("Plaintiff's motion"),
Plaintiff requested, *inter alia*, Defendants produce all credit card agreements and related
documents which Defendants assert authorize Defendants to collect such fees from the
10,250 class members permitted under FDCPA § 1692f(1).  Defendants opposed
Plaintiff's motion claiming that the requested production would impose a prohibitively
expensive compliance cost of "at least $300,000," Affidavit of Kyle Hannan (Doc. No.
239), and thus was unduly burdensome.  In this estimate, Defendant Midland
("Midland") stated that it would be required to obtain records for 3,200 class members
from the original creditors as Midland did not already possess such records but could
obtain them at a cost of $10 per credit cardholder or $32,000, plus Midland's other costs
related to such request.  *Id.* ¶ ¶ 9-11.  As to the balance, *i.e.*, 7,050,[1] of the class,
Midland stated that because of the manner in which the relevant "cardholder
agreements are stored in Midland's databases," Midland would be required to manually
review each account file to locate agreements responsive to Plaintiff's request for 4,600
(actually 4,850) of the class members.  *Id.* ¶ 12.  According to Midland, the cost of such
review and production for the responsive cardholder agreements from this group of
class account files would be approximately $300,000 excluding the related documents,
such as assignments, that were also subject to Plaintiff's motion.  *Id.* ¶ 13.

In a Decision and Order filed January 8, 2015 (Doc. No. 254) ("the Jan. 8, 2015
D&O" or "the D&O"), the court directed Defendants produce responsive documents

---

[1]   Incorrectly stated in the Jan. 8, 2015 D&O as 6,800.  Jan. 8, 2015 D&O at 10.

limited to a random 10% sample of the cardholder files for 7,050 class members,

excluding the 3,200 class member account files which Midland averred it did not

presently hold in its possession, thereby relieving Midland of $32,000 in acquisition fees

to obtain such records and reducing Midland's production costs to less than 10% of its

estimate of $300,000.  Jan. 8, 2015 D&O at 9-10.

By papers filed January 22, 2015 (Doc. No. 255), Midland filed an "Objection" to

the Jan. 8, 2015 D&O ("Midland Objection" or "the Objection") in which Midland stated

that of the 7,050 class member accounts from which the court directed the 10% random

sample to be drawn, 2,200 accounts were "readily accessible," Midland Objection at 1,

for such production without "undue burden to Midland."  Midland's Objection accordingly

requested the court modify the D&O to limit production to 680 (10% of 6,800) as a

sample of class members' credit card agreements containing the contract authorization

clause Defendants assert support Defendants' authorization 'defense' (more correctly

10% of 7,050 or 705 accounts) applied to the 2,200 more accessible accounts to avoid

approximately $25,000 in costs, that Midland claims would be incurred upon Midland's

review of the remaining portion, 4,750, of the relevant account files representing the

balance of cardholder agreement files for the class.  Midland's Objection at 1.  Midland

further states that applying the court's 10% sampling process, which Midland

characterized as "a reasonable balance of the competing interests in [Plaintiff's] motion

to compel," Midland Objection at 1, to the 4,750 accounts "would require a massive, and

unnecessary burden."  *Id.*  Based on these representations of undue burdensomeness,

the Objection requested that the D&O be "modified" to require the "680 [705][2]

agreements," required to satisfy the 10% random sample directed by the court, and be

---

[2]   Unless indicated otherwise all bracketed material added.

drawn at no cost to Midland from the "more" readily accessible 2,200 class members'
accounts.  *Id.* at 2.  By papers filed January 22, 2015 (Doc. No. 256) Defendant C&S
"join[ed] in Midland's Objection to the January 8, 2015 Order of the Hon. Leslie G.
Foschio.  C&S's Objection at 1.

In opposition to Defendants' Objections, Plaintiff filed, on February 5, 2015, the
Declaration of Jonathan R. Miller (Doc. No. 259) ("Miller Declaration") together with
Exhibits A-C ("Miller Declaration Exh(s). ___") and Plaintiff's Memorandum of Law In
Opposition (Doc. No. 258) ("Plaintiff's Memorandum").   On April 9, 2015, Midland filed
Midland Funding LLC's Reply in Support of Its Objection to the January 8, 2015 D&O
("Midland Reply").  On April 8, 2015, Defendant C&S  advised the court by e-mail that it
did not intend to file any reply.

Upon a preliminary review of Midland's objection and finding the Objection
appeared to be addressed to the undersigned rather than the district judge ("Midland
recognized the Court's consideration of the burden imposed by Your Honor's January 8,
2015 Order  . . .[and] respectfully requests a partial modification of this Court's Order
dated January 8, 2015."), Midland Objection at 1, and given that the Objection does not
purport to assert the January 8, 2015 D&O was "clearly erroneous or contrary to law,"
26 U.S.C. § 636(b)(1)(A) (district "judge may reconsider any pretrial matter under this
paragraph (A) where  . . . the magistrate judge's order is clearly erroneous or contrary to
law."); Fed.R.Civ.P. 72(a) ("district judge must  . . . modify or set aside any part of the
[magistrate judge's] order [to which objections were timely filed] that is "clearly
erroneous or is contrary to law."), District Judge Wolford, to whom the case was recently
re-assigned, Doc. No. 257, requested the undersigned consider the Objection as a

motion for reconsideration.  In accordance with Judge Wolford's request, the court
addresses Defendants' Objection as a motion for reconsideration of the Jan. 8, 2015
D&O.  Oral argument was deemed unnecessary.

It is well established that reconsideration is limited to circumstances where the
court has overlooked factual matters or controlling precedent with respect to the issues
upon which the court previously ruled.  *See Larouche v. Webster*, 975F.Supp. 490, 492
(S.D.N.Y. 1996) (citing caselaw).  Here, Defendants do not assert the Jan. 8, 2015 D&O
overlooked any controlling precedent with respect to Defendants' objections.  *See*
Midland Objection (*passim*); Midland Reply (*passim*).  Nor does Midland point to any
factual matter the court may have misstated.  *Id.*  Specifically, although Midland
represented that an intensive review of 4,600 (4,850) class member cardholder
agreement files, involving, according to Midland, 37,000 agreements, would be required
to produce agreements and related documents responsive to Plaintiff's request, Kyle
Affidavit ¶ 12, Midland did not specifically suggest that any production the court may
direct, whether by review of all such files, or by sampling, be limited to the 2,200
cardholder files, as Midland, in the Objection, now requests.  This is reinforced by
Midland's more detailed explanation, provided in Midland's Reply, that the estimated
costs for reviewing and producing responsive cardholder agreements for the 4,600
(4,850) files is approximately $25,000.  Midland Reply at 2.  Midland also asserts that
drawing from a 10% sample of 705 files from the 2,200 digitized files, as Midland
proposes, would not prejudice Plaintiff insofar as the randomness of the sample is
concerned because, according to Midland, "the pool of 2,200 accounts is totally
random."  Midland Objection at 1.  Therefore, according to Midland, sampling this

subgroup of the files of class member cardholder accounts to produce a random sample of 705 cardholder agreements would "satisfy[y] the intent" of the Jan. 8, 2015 D&O. Midland Objection at 1.

Plaintiff opposes Midland's request contending that (1) the Objection fails to comply with Local R.Civ.P. 72(c) which requires an objection certify that no legal or factual arguments not previously raised by the objecting party before the magistrate judge are presented, Plaintiff's Memorandum at 2, (2) the Objection does not assert that Jan. 8, 2015 D&O is in any respect clearly erroneous or contrary to law as required by §636(a)(1)(A) and Rule 72(a), *id.*, and (3) permitting Midland to produce the required sample of cardholder agreements from the sub-group of 2,200, ostensibly more accessible class members' account files, will improperly "skew" the result.  Plaintiff's Memorandum at 8-13.  Although, in response, Midland asserts that is has adequately explained why the Jan. 8, 2015 D&O is clearly erroneous or contrary to law by pointing to the purported increased costs associated with sampling the 4,600 account files in which numerous documents are located, this argument assumes that it is improper, in discovery, to impose such expense on a responding party.  It is not, and neither the Objection nor the Midland Reply point to any authority to support this theory.

Although in general "requests [to produce documents] that require extensive . . . evaluation may be objectionable  . .  and a responding party is not required to prepare the adverse party's case . . .[,] [t]he reasonableness of a request is within the court's discretion."  Baicker-McKee Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK, Thomson Reuters 2015 at 911-12 (citing *Chambers v. Capital Cities/ABC*, 154 F.R.D. 63, 65 (S.D.N.Y. 1994)).  Here, several factors undermine Midland's Objection, considered as

a motion for reconsideration.  First, based on Midland's representation, the difference in

the degree of difficulty in reviewing the 4,850 class member account files for responsive

cardholder agreements, which support Defendants' authorization defense, in contrast to

the alleged greater ease of review and production for Midland associated with applying

the 10% sample procedure, as directed by the Jan. 8, 2015 D&O, to the 2,200 files

proposed by Midland, arises from the fact that "the remaining 4,600 cardholder

agreements are not stored directly with each individual [class member] account."

Midland Reply at 2 ("2,200 of these [relevant] agreements are stored directly with each

individual account file.").  However, such contrasting filing and retrieval issues do not

require reconsideration.  That Midland's document storage system creates the basis

upon which Midland relies in requesting the court limit the sampling process to the

2,200 supposedly  more accessible files is, in itself, no reason to alter the sampling

process required by the D&O.  *See Brooks v. Macy's, Inc.*, 2011 WL 1793345, at *4

(S.D.N.Y. May 6, 2011) ("the burden that results from disorganized record-keeping does

not excuse a party from producing relevant documents."); *Kozlowski v. Sears, Roebuck

& Co.*, 73 F.R.D. 73, 76 (D.Mass. 1976) ("To allow a defendant whose business

generates massive records to frustrate discovery by creating an inadequate filing

system, and then claiming undue burden, would defeat the purposes of the discovery

rules.").  Second, while a producing party such as Midland could elect to "make [the

relevant records] available for inspection, copying, testing or sampling," Baicker-McKee,

Janssen, Corr, FEDERAL CIVIL RULES HANDBOOK at 904-05 (citing cases), instead of

engaging in the actual task of production of the documents, Midland has not elected to

do so, most likely because the relevant documents in the 4,850 files are not amenable

to this manner of production.  Third, the purpose of the Plaintiff's document production request at issue is to force Defendants to produce the cardholder agreements upon which Defendants intend to rely in support of Defendants' affirmative defense, regarding which Defendants have the burden, Jan. 8, 2015 D&O at 4-5 (citing cases), that the C&S collection letter demanding payment of the $140 court filing fee before the actual filing of the complaint against Plaintiff for non-payment, was authorized by Plaintiff's cardholder agreement with Plaintiff's creditor, and the creditors of the class, as permitted by §1692f(1), in essence, an understandable demand that Defendants 'show their cards,' as presumably Defendants will eventually be required to do on potential motions to decertify, summary judgment, or at trial.  Midland's Objection to the court's sampling requirement, which substantially reduced the overall burden of production of such highly relevant documents, therefore fails to point to any legal principle overlooked by the D&O.  Last, Midland's Objection, if accepted, will reduce the population of relevant account files for sampling to 2,200 from 7,050 class member account files, or 21.4% from 68.7% of this population.  As Plaintiff pointed out, in its effort to balance the Defendants' cost of production against Plaintiff's need for production, the court had excluded from the entire (and, arguably, more statistically correct population for sampling purposes) 10,250 class population, the account files for 3,200 class members which Midland represented would require Midland expend $32,000 to acquire, Jan. 8, 2015 D&O at 9-10, an exclusion "already problematic from a statistical perspective." Plaintiff's Memorandum at 8.

In applying sampling as a discovery tool in facilitating production from a large number of documents, courts attempt to assure that the sample is "representative" in

relevant respects to the "populations" of the documents to be reviewed.  *See Assured*

*Guaranty Municipal Corp. v. Flagstar Bank*, 920 F.Supp.2d 475, 487 (S.D.N.Y. 2013)

(plaintiff's statistical expert determined random samples, 4% and 8%, respectively, of

responsive agreements constituting securitized loan pools were "representative of the

total loan population" to support finding of defendant's failure to follow underwriting

guidelines, constituted fraud, or misrepresentation in issuing such loans).  *See also*

Sampling Methods Used In Statistical Analysis,

http://www.statisticalforecasting.com/statistical-sampling-methods.php ("The sample

should be representative of the general population."); MANUAL FOR COMPLEX LITIGATION

FOURTH at 474 ("Whether the aim is discovery  . . . any sample should be representative

. . .").  Although Midland represents the 2,200 files from which it requests the 10%

sample of 705 files be drawn will be sufficiently representative, Midland Reply at 1

("providing 680 [705] terms and conditions from this random group [2,200] satisfies the

intent of Your Honor's order."), Midland provides no affidavit from someone

knowledgeable in statistical sampling, supporting that Midland's proposed reduction in

the population of class member agreements would not adversely affect the statistical

reliability of the resultant document production based on the sample.  Moreover,

Midland's assertion that the relevant characteristics of the 2,200 account file population

sub-group, *e.g.*, age of account, creditor name, debtor name, amount of debt, would not

adversely "affect randomness," Midland Objection at 1, is likewise without support in the

form of an affidavit based on personal knowledge or statistical expertise.  In sum, the

Jan. 8, 2015 D&O directions with respect to the use of the 10% sample to be applied to

the 7,050 class member account files in Midland's possession in order to comply

reasonably with Plaintiff's demand for production of the agreements and related documents, which Defendants claim support Defendants' authorization defense, requires no reconsideration.

## CONCLUSION

Based on the foregoing, considering, in accordance with Judge Wolford's request, Defendants' Objections (Doc. Nos. 255 and 256) as motions for reconsideration of the Jan. 8, 2015 D&O, such motions are DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  April 28, 2015
        Buffalo, New York