UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,
on behalf of himself and all others similarly situated,

                              Plaintiff,

     v.

COHEN & SLAMOWITZ, LLP,
MIDLAND FUNDING LLC,

                        Defendants.
_____

**DECISION
and
ORDER**

**11-CV-842W(F)**

APPEARANCES:    BROMBERG LAW OFFICE, P.C.
                   Attorneys for Plaintiff
                   BRIAN L. BROMBERG,
                   JONATHAN R. MILLER, of Counsel
                   40 Exchange Place, Suite 2010
                   New York, New York   10004

                   LAW OFFICES OF KENNETH R. HILLER, PPLC
                   Attorneys for Plaintiff
                   SETH ANDREWS, of Counsel
                   6000 North Bailey Avenue, Suite 1A
                   Amherst, New York   14226

                   CONNELL FOLEY LLP
                   Attorneys for Defendant Cohen & Slamowitz, LLP
                   ANDREW C. SAYLES, of Counsel
                   85 Livingston Avenue
                   Roseland, New Jersey 09068

                   WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
                   Attorneys for Defendant Midland Funding, LLC
                   THOMAS A. LEGHORN,
                   JOSEPH L. FRANCOEUR, of Counsel
                   150 East 42nd Street
                   New York, New York   10017

      In this class action, pursuant to the Fair Debt Collection Practices Act, 15 U.S.C.

§ 1692, *et seq.*, ("FDCPA"), Plaintiff moves, Dkt. 261, to sanction Defendant Cohen &

Slamowitz ("C&S") for its failure to provide discovery in accordance with this court's

Decision and Order filed October 8, 2014 (Dkt. 235) ("the October 8, 2014 D&O" or "the

D&O") which directed C&S to produce 13 items of information requested by Plaintiff to

enable Plaintiff to determine C&S's net worth ("Plaintiff's motion").  *See Hallmark v.*

*Cohen & Slamowitz, LLP*, 302 F.R.D. 295, 296 (W.D.N.Y. 2014), *aff'd*, 2015 WL

4483959, *1 (July 22, 2015 W.D.N.Y.).  Plaintiff specifically alleged, in seeking to collect

debts owed by Plaintiff and the class, that C&S attempted to, and in many cases did

collect, court filing fees before the fees were incurred or awarded by the court.  As

relevant to Plaintiff's motion, C&S claimed its net worth was less than $1,000, i*d.* at 296,

an assertion made relevant to this case as under the FDCPA, damages in a class action

are limited to the lesser of one percent of a defendant's net worth or $500,000.  15

U.S.C. § 1692k(a)(2)(B).  For example, if C&S's net worth is $1 million, Plaintiff's

maximum damage award would be $10,000; if, as C&S stated, its net worth was $1,000

or less because C&S has no retained earnings and owns no real estate, Dkt. 263-2 at

16, Plaintiff's damages would be *de minimus*.  In the October 8, 2014 D&O, because

C&S routinely prepared its financial statements such as balance sheets which were

reviewed but not audited by its outside accountant, and because C&S demonstrated it

did not have audited financials prepared by its accountants but only reviewed

statements, the court reconsidered its earlier April 2, 2014 order which, following oral

argument, had granted Plaintiff's motion to compel C&S to produce audited financial

statements for its 2011, 2012, and 2013 fiscal years, and upon reconsideration denied

Plaintiff's request for such audited financial statements on the ground that C&S could

not be required to produce documents it did not have.  *See Hallmark*, 302 F.R.D. at 299

(citing caselaw).  Based on the unavailability of audited financial statements for C&S, the court granted Plaintiff's motion for production of C&S's underlying financial data to enable Plaintiff to test the accuracy of C&S's financial statements indicating C&S has low net worth.  *Hallmark*, 302 F.R.D. at 299-300.  In Plaintiff's motion, Plaintiff asserts C&S has willfully withheld responsive documents in violation of the October 8, 2014 D&O warranting sanctions pursuant to Fed.R.Civ.P. 37(b) including that C&S's net worth be established at $50 million, precluding C&S from claiming its net worth is less than $50 million, entering a default judgment against C&S, and holding C&S in contempt and imposing a fine of $1,000 for each day C&S continues to be in violation of the D&O.

According to Plaintiff, C&S has failed to comply with the D&O with respect to numerous discovery requests served by Plaintiff in November 2012 as part of Plaintiff's First Set of Written Discovery Demands particularly Interrogatory Nos. 19-24, and Requests for Production ("Requests") Nos. 19-23, 26-49.  In general, Plaintiff asserts C&S's responses, which were served on Plaintiff as C&S's Supplemental Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents on December 23, 2014, Dkt. 263-7 (Exh. G to Declaration of Jonathan R. Miller), are evasive, implausible, deficient, and otherwise unresponsive.  To determine whether C&S has failed to comply fully with the D&O warranting the several sanctions pursuant to Fed.R.Civ.P. 37(b)(2)(A) sought by Plaintiff, it is necessary to review in summary form each disputed discovery request asserted by Plaintiff.

Plaintiff first argues C&S's response to Interrogatory Nos. 20 and 21 failed to denominate all of C&S's assets as requested and that C&S's practice of valuing at cost

its portfolio of bad debts held by three C&S subsidiaries for collection by C&S unfairly understates their respective value and thus C&S's net worth.  Plaintiff also notes C&S failed to answer Interrogatory No. 21.  Plaintiff further contends C&S failed to provide a complete answer to Interrogatory No. 22 which calls for a statement of all C&S's debts including any owed to its shareholders, officers and directors; C&S's answer, limited to debts relating to its shareholders, officers and directors, and thereby, Plaintiff contends, frustrates Plaintiff's ability to accurately reconstruct C&S's net worth.  Plaintiff further notes that C&S's answer that no such debts existed was inconsistent with C&S's financial statements for 2013 indicating C&S owed $1,263,566 to its partners who are C&S's shareholders.

Plaintiff also asserts C&S failed to respond fully to numerous document requests particularly, for example, Request No. 19 which requested "[a]ll documents concerning the calculation of the net worth of Defendants."  Plaintiff further contends C&S failed to respond to Request No. 21 which requested copies of all of C&S's "account statements from January 1, 2002 to the present."  In response to the October 8, 2014 D&O, C&S claimed, in its December 23, 2014 supplemental response that it did not know ("it is not known") the meaning of the term "account statement," Dkt. 263-7 at 6; however, in its original response dated January 4, 2013, C&S failed to object to this term on the grounds of vagueness or ambiguity.  Dkt. 263-2 at 39.  Instead, C&S produced the same unaudited financial statements which prompted Plaintiff's original motion to compel as eventually granted by the D&O.  Another example of C&S's refusal to comply with the D&O, according to Plaintiff, is C&S's failure to provide all documents relating to C&S's line of credit with Capital One Bank as requested by Request No. 22 noting that,

according to C&S's records the credit line was for $7 million, but only records relating to a $3 million line were produced.  Plaintiff also argues that C&S failed to comply fully with Request No. 23 requesting documents reflecting C&S's assets prepared in connection with an acquisition or purchase of C&S's assets, noting a recent change in the name of C&S implies such an acquisition may have occurred.  Plaintiff also points to C&S's refusal to produce all relevant corporate documents particularly its four subsidiaries, three of which hold the bad debt paper, *i.e.*, C&S's "stock-in-trade," for which C&S acts as debt collector on behalf of co-Defendant Midland Funding, LLC, Dkt. 262 at 22, ("Midland"), and other clients which Plaintiff asserts are undervalued at cost by C&S. C&S did not respond to Request No. 32 seeking client/customer charge policies or Request No. 33 requesting C&S's revenue patterns.  Plaintiff further complains that C&S's incomplete response to Request No. 34, requesting allocation of income and expenses among C&S's business requests, ignores the existence of C&S's subsidiaries and its management of these entities consolidated by C&S for tax purposes.  The same deficiency is asserted by Plaintiff in regard to C&S's response to Request Nos. 35 and 36 – referencing C&S's discretionary expenses and the value of its intangible assets – in response to which C&S directed Plaintiff to C&S's previously produced unaudited financials and tax returns.

Plaintiff also complains that C&S's response to Request No. 37, seeking C&S's work-in-process and backlog information, is inadequate, as it directed Plaintiff to C&S's unaudited financials, do not provide such information.  Plaintiff similarly challenges C&S's failure to respond to Plaintiff's Request No. 39 calling for C&S's inventory valuation to which C&S asserted it has no responsive documents instead directing

Plaintiff to C&S's tax returns and related asset depreciation reports; specifically, Plaintiff contends that the portfolios of the bad debt accounts, held by C&S's three subsidiaries for collection, are inventories within the scope of this request, and so should have been provided.

Likewise, Plaintiff asserts C&S's failure to provide documents which constitute C&S's "underlying financial data" as permitted by the October 8, 2014 D&O, *see Hallmark*, 302 F.R.D. at 300 (citing cases), in response to Request No. 40, which seeks documents reflecting "details of C&S's assets and liabilities not included on the books," is also sanctionable because C&S merely referred Plaintiff to C&S's unaudited financials and tax returns without providing any such "underlying financial data." C&S also objected that it did not understand the request but did not object on this ground when it served its initial response. *See* Dkt. 263-2 at 43. Plaintiff raised a similar dispute with C&S's response to Request No. 41, which called for production of documents relating to details of the compensation of C&S's employees and shareholders, claiming no compensation plans exist once again referring Plaintiff to C&S's tax returns and unaudited financials. Plaintiff asserts a similar objection to C&S's response to Request No. 42 relating to C&S's employee benefit plans. Plaintiff further faults C&S's response to Request No. 45 seeking all C&S's balance sheets for the past six years arguing that C&S's reference to tax returns and unaudited financials fails to include responsive information, such as monthly, quarterly or semi-annual balance sheets thereby potentially masking a correct understanding of C&S's actual equity or net worth. Plaintiff's dissatisfaction with C&S's response to Request No. 46 regarding C&S is identical with the similar issue addressed, *supra*, at 4, with respect to Request

No. 22.  In response to Plaintiff's Request No. 47 for documents relating to C&S's profit and loss statements, C&S again directed Plaintiff to its unaudited financial statements without providing any underlying financial data upon which such documents may have been based.  Plaintiff asserts the same deficiency is present in C&S's response to Request No. 48 which requests documents showing all C&S's bank statements for the past 24 months with C&S again referring Plaintiff to the same unaudited financial statements, tax returns and C&S's bank loan (credit line) application.  Plaintiff's asserted deficiency in C&S's response to Request No. 49 regarding C&S's security agreements is the same as that addressed with respect to Request Nos. 48 and 22, *supra*, at 4.

In opposition, C&S states Plaintiff's motion is based on discovery demands not identified and approved by the October 8, 2014 D&O, and fails to recognize that C&S produced more than 1,000 pages of C&S's financial information summarized and compiled in its tax returns and financial statements that have also been produced to Plaintiff in response to Plaintiff's numerous discovery requests.  Dkt. 275 at 6, 7.  C&S further contends Plaintiff's requests are tantamount to conducting a *de facto* financial audit of C&S, and that Plaintiff' has not submitted an affidavit by an accountant or other qualified person stating that the additional financial information provided by C&S in response to the D&O is insufficient for determining C&S's net worth for the purposes of § 1692k(a)(2)(B).  Dkt. 271 at 8.  C&S further contends that the alleged deficiencies in several of C&S's responses, as argued by Plaintiff, assume that the D&O required such allegedly withheld information be produced when, according to C&S, in fact it did not.  *Id.* at 10.  C&S maintains it has, in compliance with the D&O, provided Plaintiff with a

broad range of C&S financial records for itself and its affiliates for the period 2007-2013 including balance sheets, asset depreciation schedules, credit applications, promissory notes, personal financial information, life insurance policies, dividend and stock sale information, accounts receivable information, marketable securities, bank debt, retirement plan contributions, existing lease arrangements, descriptions of major C&S customers, operating expense schedules, income statements, statements of C&S's equity, and cash flow statements.  Dkt. 275 at 11.  Also, according to C&S, to the extent C&S did not have responsive information, it so stated in its supplemental response served in December 2014 in compliance with the D&O.  As C&S contends that it has produced documents which provide Plaintiff with significant insight on C&S's financial status which Plaintiff has failed to assert cannot provide an adequate foundation upon which expert opinion of C&S's net worth can be based, Plaintiff's request for contempt and sanctions is, according to C&S, baseless and amounts to a thinly disguised attempt to grossly inflate Plaintiff's attorneys fees.  Dkt. 275 at 12.  C&S also contends Plaintiff prematurely sought Rule 37 contempt and sanctions for what in reality is a discovery dispute subject to the meet and confer requirements of Rule 37(a)(1) and Local Rule Civ.P. 7(d)(4).  In sum, C&S denies it has failed to properly respond to Plaintiff's requests.

More specifically, according to C&S, in answering Plaintiff's Interrogatory No. 19, it did not falsely state it did not own real property as it only held a lease interest within New York State.  C&S points out that ownership of a vehicle is held by one of C&S's subsidiaries, which is not a party to the action.  Dkt. 275 at 19-20.  Contrary to Plaintiff's claim that C&S did not identify deposit accounts, C&S relies on its financial statements

which include "cash in bank trust funds."  Dkt. 275 at 19.  As to its three subsidiaries

holding the bad debt portfolios, C&S maintains that as C&S does not own such

portfolios it is not required to provide further details as to their proper validation.  *Id.*

However, C&S notes that its financials do "reflect values" for the portfolios. *i.e.,* as the

subsidiaries are consolidated into C&S's balance sheet.  *Id.* at 19-20.  As to

Interrogatory 21, requesting information regarding the value of the inventories held by

C&S's subsidiaries, C&S points out such disclosure was not addressed or directed by

the D&O and therefore cannot be a basis for Plaintiff's requested sanctions.  *Id.* at 20.

*See Hallmark,* 302 F.R.D. at 295.  C&S offers the same justification for its non-response

to Interrogatories 23 and 24.  *Id.*  As to Interrogatory No. 22, C&S argues that Plaintiff

does not specifically deny it has received information from C&S regarding C&S's debts

and such information provides additional detail regarding a $213,566 short-term loan by

C&S's partners for 2013.  *Id.*

   C&S, in response to Plaintiff's argument regarding Request No. 20, states that it

was, until Plaintiff filed Plaintiff's motion without prior conferral, unaware Plaintiff

intended the request to include payroll, sales, use, real property and commercial tax

returns, and that, as it does not own real property or file commercial rent tax returns,

there was, in any event, no responsive information to provide to Plaintiff.  Doc. No. 275

at 21.  Further, C&S contends any payroll tax and sales and use tax information would

be reflected in the income tax returns C&S provided to Plaintiff.  *Id.*  As to Request No.

21, C&S maintains C&S's tax returns provided to Plaintiff include responsive "account"

information and that C&S is agreeable to further resolution of this issue through a meet

and confer process with Plaintiff.  *Id.*  Similarly, as to Request No. 22 requesting C&S's

credit applications, C&S has agreed to supplement its response.  *Id.* at 22.  With regard to Request No. 23, requesting asset information which may have been provided by C&S in connection with an acquisition, sale or merger, C&S contends that Plaintiff's apparent belief that because of C&S's 2015 name change additional responsive information is available is based on speculation and in fact no such responsive information exists. Moreover, C&S contends, such information, even if it existed, would fall outside the relevant information covered by Plaintiff's demands for the 2007 to 2013 period.  Dkt. 275 at 23.

With regard to Plaintiff's Request No. 26, seeking C&S's net worth information filed in connection with litigation involving C&S, C&S maintains its response that no such documents exist is correct and that Plaintiff's dissatisfaction with C&S's response is based on Plaintiff's unsupported belief that such documents may exist whether filed or not.  Dkt. 275 at 23.  C&S therefore argues Plaintiff's desire for a response broader than required by Request No. 26 as served, cannot be the basis for sanctions.  *Id.*  As to Request No. 27, requesting disclosure of C&S's net worth to licensing bodies, C&S states that this request was not included in the October 8, 2014 D&O, Dkt. 275 at 24, and therefore no supplemental response was required by C&S.  As to Plaintiff's Request No. 28 requesting a variety of "corporate" documents such as C&S's articles of incorporation, C&S responded that as a limited liability partnership ("LLP") C&S is not, technically, a corporation, it has no responsive documents.  Plaintiff contends such response is disingenuous as an LLP is nevertheless a corporation and also points to C&S's three subsidiary corporations as requiring a response in any event.  Dkt. 262 at 19-20.  With regard to Request No. 29 requesting C&S records reflecting its equipment

values, C&S contends the request was not mentioned in the D&O and therefore C&S's failure to respond provides no basis for sanctions.  Dkt.  275 at 25.  In Request No. 30 Plaintiff seeks information regarding the age of C&S's accounts payable and receivables.  In response, C&S points to its disclosures in its Statements of Cash Flows provided to Plaintiff which indicate the value of its receivables and payables accounts for its 2008-2013 fiscal years.  Dkt. 275 at 20 (referencing, as an example, C&S Bates No. 002932 for FY 2008).  In response to Plaintiff's Request No. 31, requesting C&S's budget and planning documents, C&S responded it lacks such documents and cannot be required to produce non-existent documents.  Dkt. 275 at 21.  Plaintiff maintains that with annual revenues exceeding $20 million during the relevant period, C&S's response is not credible.  Dkt. 262 at 25.  As to Plaintiff's Requests Nos. 32 and 33, requesting pricing of C&S services and revenue patterns and characteristics, respectively, C&S observes theses requests were also not within the scope of the D&O.  Dkt. 275 at 21.

In Request No. 34, Plaintiff sought data pertaining to the allocation of income and expenses among C&S's business segments.  Plaintiff contends C&S's response that because it has no separate business segments it has no responsive documents does not excuse production given that C&S's business includes its three subsidiaries which purchase and hold at cost the debts they acquired for collection by C&S.  Dkt. 262 at 21.

As to Requests Nos. 35 and 36, requesting details regarding C&S's discretionary and intangible expenses, C&S notes it provided responsive gross figures for its 2007 to 2013 fiscal years in its respective Consolidation Statements of Income and that further details apparently demanded by Plaintiff would entail production of underlying receipts

and invoices creating an undue burden, and that the financial statements provided to Plaintiff adequately address the value of C&S's intangible assets.  Dkt. 275 at 21-22.

With regard to Plaintiff's Request No. 37 requesting documents with regard to C&S's work-in-process, uncompleted work, and backlog, C&S responded it has no responsive documents.  Dkt. 275 at 22.  Plaintiff does not contest C&S's response to Plaintiff's Request No. 38.  Dkt.  275 at 22.

As to Plaintiff's Request No. 39, requesting C&S's inventory valuations, C&S responded by pointing to C&S's inventory depreciation schedules in its tax returns and related depreciation reports in C&S's financial statements.  Dkt. 263-7 at 10.  Plaintiff rejects C&S's response because no details regarding depreciation of the assets – which Plaintiff maintains constitute C&S's "stock-in-trade" – held by the three subsidiaries are provided.  Dkt. 262 at 22.  C&S contends that as its subsidiaries are not parties they, and any of their records sought by Plaintiff, are outside the scope of the October 8, 2104 D&O and, as such, cannot constitute a ground for Plaintiff's requested sanctions. Dkt. 275 at 22.

C&S responded to Plaintiff's Request No. 40, seeking information as to any C&S assets or liabilities not included in C&S's books.  C&S objected to this request based on its vagueness and referred Plaintiff to C&S's financial statements, and further argues that the October 8, 2014 D&O did not require C&S to submit what C&S asserts to be tantamount to an audit of C&S's financials by Plaintiff.  Dkt. 275 at 22-23.  As to Request No. 41 requesting C&S's compensation plans, C&S responded it has no responsive documents as to its employees and has no officers or shareholders for which responsive documents exist.  Plaintiff argues C&S is simply "hiding" this

information to mask its actual "equity," *i.e.*, net worth, and thus deflate its net worth as represented in C&S's unaudited financial statements.  Dkt. 262 at 23.  The parties also dispute C&S's response to the related Request No. 42 seeking employee benefit plan information.  In opposition, C&S asserts it has complied with this request by producing information in its supplemental discovery response.  Dkt. 277 at 23.  As to Requests Nos. 43 and 44, requesting C&S marketing information, C&S states these requests are beyond the scope of the D&O.

In Request No. 45, Plaintiff seeks all C&S balance sheets prepared for the period 2007 to 2012; Plaintiff contends that despite C&S's production of annual year-end balance sheets, C&S failed to provide interim, such as monthly or quarterly, balance sheets and therefore C&S's production is incomplete.  However, as C&S has agreed to provide such documents, Dkt. 275 at 24, the issue is moot.  Plaintiff's Request No. 46 requests all C&S credit applications.  This issue is similar to Plaintiff's demand for full production of all C&S credit line applications which, in response to Plaintiff's Request No. 22, C&S has agreed to provide.  Dkt. 275 at 17.  The issue with respect to this request raised by Plaintiff's motion is therefore moot.  Request No. 47 requests all of C&S's Profit and Loss Statements for the past (2009 to 2012) three years.  However, according to C&S, it maintains no responsive documents.  Dkt. 275 at 24.  As to Plaintiff's Request No. 48 requesting C&S's bank statements, C&S asserts it has provided responsive documents, *see*, *e.g.*, Dkt. 263-8 at C&S Bates Nos. 0003282-3283, 3340-3346 and 3349.  Dkt. 275 at 29 n. 20.  C&S has also agreed to provide further supplemental responsive  documents.  *Id.* at 25.  As to Plaintiff's Request No. 49 seeking C&S's security agreements, C&S has agreed to supplement its production

pertaining to this request.  Dkt. 275 at 25 (referencing *id.* at 17).  This issue is therefore also moot.

In deciding whether to impose sanctions pursuant to Rule 37(a)(2)(A) as Plaintiff requests, courts consider several non-exclusive factors including "'(1) the willfulness of the non-compliant party or the reason for the non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of non-compliance; and (4) whether the non-compliant party had been warned of the consequences of non-compliance.'" *Ceglia v. Zuckerberg*, 2012 WL 95362, at *8 (W.D.N.Y. Jan. 10, 2012) (citing and quoting *Southern New England Telephone Company v. Global NAPS, Inc.,* 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009))).  Further, as applicable to Plaintiff's request to impose the contempt sanction, a court may hold a party in contempt for violation of a court order when "the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply."  *Id.* (citing and quoting *Southern New England Telephone Co.*, 634 F.3d at 145 (quoting *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996))).

At the threshold, the court finds no merit in Defendant's contention, Defendant's Memorandum (Dkt. 268) at 8-10, that Plaintiff failed to comply with Fed.R.Civ.P. 37(a) and Local R. Civ. P. 7(d)(4) which require that parties in a discovery dispute meet and confer prior to filing a motion to compel.  In this case, the October 8, 2014 D&O was a decision on reconsideration of a prior bench ruling on April 2, 2014, in which the court granted Plaintiff's earlier motion filed April 12, 2013, to compel production of interrogatory answers directed to the question of C&S's net worth.  *See Hallmark*,  302

F.R.D. at 298-99 (referencing Doc. No. 184).  Thus, it is not the case, as C&S contends, that Plaintiff's motion seeks to require C&S's compliance with Plaintiff's prior discovery requests relating to C&S's net worth; rather, Plaintiff's motion requests C&S be sanctioned for failure to comply with the October 8, 2014 D&O pursuant to Fed.R.Civ.P. 37(b) which includes no conferral prerequisite as is the case for a motion to compel pursuant to Fed.R.Civ.P. 37(a)(1).  Accordingly, although the court does not dispute the potential benefit of pre-motion conferral by the parties to any discovery dispute or where compliance with a court discovery order, as here, is sought, the lack of such conferral by Plaintiff is not a bar to consideration of Plaintiff's motion.

Turning to the merits of Plaintiff's motion, while the court acknowledges Plaintiff's well-articulated frustration caused by the arguable insufficiency of some of C&S's supplemental production in response to the October 8, 2014 D&O, on this record Plaintiff's motion must nevertheless be DENIED for several reasons.  First, as evidenced by the court's foregoing summarization of the disputed requests at issue on Plaintiff's motion, Defendant repeatedly denies it has responsive documents and it is well-settled that a responding party is not required to create responsive documents. *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("party not obliged to produce documents that it does not possess or cannot obtain"); *see also Hallmark*, 302 F.R.D. at 299 (citing authorities).  It is true, as Plaintiff contends, that the purpose of the October 8, 2014 D&O was to allow Plaintiff, in lieu of production of audited financial statements by C&S, to test the correctness of C&S's assertion that, because of a lack of retained earnings or real estate ownership, C&S had a low, *i.e.*, less than $1,000, net worth, by producing C&S's underlying financial information or data

as requested in Plaintiff's interrogatory and document requests directed to this issue. *See Hallmark*, 302 F.R.D. at 296 (referring to 15 types of Plaintiff's requests for supporting information).  And, as Plaintiff further agues, Plaintiff's Memorandum at 3 (Dkt. 262 at 7), it is not implausible to believe that C&S in fact has additionally responsive information in the form of electronically stored data produced by use of accounting software such as ledger entries maintained by C&S.  However, absent evidence of the existence of such detailed underlying financial data, which may be definitively determined through additional discovery such as a deposition of C&S's financial director or principal bookkeeper, which could serve as a basis upon which the need for additional production could be demonstrated, the court, on this record, is unable to find clear and convincing evidence that C&S has engaged in a willful refusal to provide such information.  Another difficulty with Plaintiff's motion is that it does not explain why the information provided by C&S does not enable Plaintiff to determine, with the assistance of accounting experts, C&S's actual net worth thus supporting a finding that C&S's non-responsiveness was willful.  For example, C&S's financial statements indicate amounts stated as "Equity," *see, e.g.*, Exh. H, Dkt. 263-8 at 3 (C&S Bates No. 002900) "C&S Combined Balance Sheet for Fiscal Year ending 2007," in the amount of $2,842,781.  In the context of a business entity, "equity" is, in accounting parlance, another term for the concept of a business's net worth.  *See* InvestorWords.com-On_Line Investing Glossary, http://www.investorwords.com/3267/net_woth.html (defining net worth as a company's total assets minus its total liabilities and is also referred to as owner's equity, shareholders' equity or net assets, and includes retained earnings).  To further illustrate

this point, for C&S's 2013 fiscal year, according to C&S's financial statements provided to Plaintiff, C&S's equity was, after adjustment, $150,705, a figure which would have been substantially higher if distributions to C&S shareholders of $3,494,582 for the year had not been made and instead included as C&S's retained earnings.  *See* Exh. H, Dkt. 263-8 at C&S Bates No. 003102.

Whether under § 1692k(a)(2)(B) the net worth, or equity, of C&S, an LLP, should be deemed, under generally accepted accounting principles, to include all annual distributions, in the form of cash generated by C&S's business operations, which may otherwise properly constitute retained earnings thus increasing C&S's equity or net worth, however, is not before the court on Plaintiff's motion.  Rather, the question illustrates that C&S's production while arguably not as thorough and more detailed as Plaintiff desires, nevertheless could be sufficient when evaluated by Plaintiff's accounting experts to determine C&S's net worth.  Although some of C&S's responses such as its assertion that it has no records responsive to Plaintiff's Request No. 31 requesting C&S's budgets and business plans including forecasts given that C&S, with over $20 million in annual revenues is hardly a store-front operation, is difficult to accept, yet without a stronger indication that such documents, contrary to C&S's representations, in fact exist, the court cannot find with the required degree of clear and convincing proof that C&S's failure to respond has been willful.  In sum, while incomplete in some of Plaintiff's requests as to which C&S has agreed to provide additional information, for example, with respect to Request No. 22, C&S's failure to provide more information as required by the D&O cannot be said to be a willful disregard of the October 8, 2014 D&O.  Thus, the court finds the record does not

support C&S has engaged in a willful refusal to comply with the D&O so as to be guilty of contempt and subject to sanctions pursuant to Rule 37(b) as Plaintiff requests.

Finally, the court agrees with Plaintiff that C&S's responses to Plaintiff's Requests No. 28 seeking C&S's corporate documents and No. 34 seeking C&S's business segment information should include responsive information for its three subsidiaries, Platinum Recovery Services, Inc. ("Platinum"), Empire Portfolios, Inc. ("Empire"), Metro Portfolios, Inc. ("Metro"), which hold the debts that C&S collects, and SC Trading Corporation ("SC Trading"),  which as C&S's wholly owned subsidiaries, the operations of which are consolidated into C&S's financial statements, are potential sources of information subject to the D&O.  According to the Notes to C&S's Consolidated Financial Statements for C&S's 2013 Fiscal Year, Dkt. 263-8 at Bates No. C&S 003106 ("the Notes"), SC Trading is "an entity under common control and ownership" with C&S through common shareholders including C&S's partners, and C&S for 2013 charged Platinum, Empire and Metro "management fees for certain operating expenses and court costs" in the amount of $1,418,748.  *Id.* at C&S 003114. Additionally, according to the Notes, C&S maintains a $7 million credit line which is jointly and severally secured by Platinum, Empire, Metro, and SC Trading.  *Id.* at No. 003106.  Absent a significant degree of actual, if not legal, control by C&S over these subsidiaries to direct their operations it is highly unlikely these entities could be caused to provide security for C&S's substantial bank credit line as the Notes indicate.  C&S does not argue to the contrary contending only that as non-parties, the four C&S subsidiaries are not subject to the D&O's supplemental production obligations.  *See* Dkt. 275 at 19-20.  There is no merit in this argument.  *See S.E.C. v. Credit Bancorp, Ltd.*,

194 F.R.D. 469, 475 n. 4 (S.D.N.Y. 2000) citing *Addamax Corp. v. Open Software Found., Inc.*, 148 F.R.D. 462, 468 (D.Mass. 1993) (determination of whether "control" exists [for Rule 34(a) purposes] does not turn on whether entity from which discovery is sought is [a] party or non-party)).  As such, these entities are subject to C&S's legal and practical control requiring C&S produce information regarding their operations within Plaintiff's requests.  *See* Fed.R.Civ.P. 34(a) ("Rule 34(a)") (responsive party required to produce documents where such documents are within possession, custody, or control); *Gross v. Lunduski*, 304 F.R.D. 136, 142 (W.D.N.Y. 2014) (for purposes of Rule 34(A) a party's control includes the legal entitlement to or practical ability to obtain production from a non-party).  Based on the foregoing, there is no need to address Plaintiff's contention, Dkt. 275 at 20, that responses for the C&S subsidiaries are required under Local Rule of Civil Procedure 26(d)(3)(E) which defines, as relevant, a party to include a defendant's parent, subsidiaries, and affiliates.  C&S shall therefore serve supplemental responses to Plaintiff's Requests Nos. 28 and 34 with respect to its subsidiaries within 20 days.

In addition, as noted, C&S did not respond to several of Plaintiff's discovery requests on the ground that because in the October 8, 2014 D&O, the court failed to include them in its listing of the Plaintiff's requests at issue, the court had, impliedly, held C&S was not required to respond to such responsive documents.  This is a misreading of the October 8, 2014 D&O in which the court, in order to eliminate the need for a comprehensive enumeration, referenced all of Plaintiff's requests in its footnote 2 which stated that "[e]ach" of Plaintiff's discovery requests is referenced in C&S's responses, filed as Doc. No. 73-1.  Thus, introduction of the listing of Plaintiff's

requests in the D&O with the phrase "such as," *Hallmark*, 302 F.R.D. at 295, indicates

the listing which followed in the text of the D&O was not intended as a complete

statement of all of Plaintiff's requests to which the court determined C&S was required

to respond.   However, as C&S's reading, albeit erroneous, of the D&O on this issue

cannot be said to be a willful disregard of the court's direction, C&S's failure to respond

to these requests does not warrant sanctions.   C&S shall, however, serve responses to

these unanswered requests <u>within 20 days</u>.


## CONCLUSION

Based on the foregoing, Plaintiff's motion (Dkt. 261) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  March 23, 2016
Buffalo, New York