UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL HALLMARK,
on behalf of himself and all others similarly situated,

                              Plaintiff,

      v.

COHEN & SLAMOWITZ, LLP,
MIDLAND FUNDING LLC,

                           Defendants.
_____

**DECISION
and
ORDER**

**11-CV-842W(F)**

APPEARANCES:    BROMBERG LAW OFFICE, P.C.
                   Attorneys for Plaintiff
                   BRIAN L. BROMBERG,
                   JONATHAN R. MILLER, of Counsel
                   40 Exchange Place, Suite 2010
                   New York, New York   10004

                   LAW OFFICES OF KENNETH R. HILLER, PPLC
                   Attorneys for Plaintiff
                   SETH ANDREWS, of Counsel
                   6000 North Bailey Avenue, Suite 1A
                   Amherst, New York   14226

                   CONNELL FOLEY LLP
                   Attorneys for Defendant Cohen & Slamowitz, LLP
                   ANDREW C. SAYLES, of Counsel
                   85 Livingston Avenue
                   Roseland, New Jersey 09068

                   WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
                   Attorneys for Defendant Midland Funding, LLC
                   THOMAS A. LEGHORN,
                   JOSEPH L. FRANCOEUR, of Counsel
                   150 East 42nd Street
                   New York, New York   10017

In this action alleging violations of the FDCPA, by papers filed November 6,

2015, Plaintiff moves, Dkt. 297, to hold Defendant Midland Funding, LLC ("Midland") in

contempt and for other sanctions against Midland and Co-Defendant C&S, LLP ("C&S") pursuant to Fed.R.Civ.P. 37(b)(2)(B) ("Plaintiff's motion").  Plaintiff's motion is based on Midland's alleged failure to comply with the court's prior order of January 8, 2015, in which the court ordered Midland to produce a random sample of 10% of the 6,930 consumer files as representative of the files of the class members whose accounts, owned by Midland, Co-Defendant C&S ("Defendants"),  sought to collect by including in its demand letter to class members a court filing fee which it had not then incurred. Discovery of the files was necessitated by Defendants' affirmative defense, and Plaintiff's intention to rebut such defense, that such charges were authorized by contract and therefore Defendants were protected from liability by 15 U.S.C. § 1692f(1) (prohibiting collection of any fee "incidental to the principal obligation," unless such amount is expressly authorized by the agreement creating the debt") ("§ 1692f(1)" or "the contract authorization defense").  *See Hallmark v. Cohen & Slamowitz, LLP,* 304 F.R.D. 165, 169 (W.D.N.Y. 2015) (requesting that to minimize costs of production the court limit the sample to those accounts which Midland stated were more readily accessible).  Midland moved for reconsideration and modification of the sample size, which request was denied by the court on April 28, 2015.  *See Hallmark v. Cohen & Slamowitz, LLP*, 307 F.R.D. 102, 106 (W.D.N.Y. 2015) (holding that Midland's request would result in reducing the sample size risking an impairment of the sample's representativeness), *aff'd*, 2015 WL 4483959, at *1 (W.D.N.Y. July 22, 2015) (Wolford, D.J.) ("the D&O").  Following a lengthy discussion over several months between the parties as to the method for creating the random 10% sample of the 6,930[1] relevant

---

[1]   The D&O originally stated the population of class files to be sampled was 7,050, *Hallmark*, 307 F.R.D. at 104, which Midland recalculated at 6,930, a number Plaintiff has not disputed.

card holder accounts directed by the court upon which to base Midland's production, Midland provided an initial production of 247 readily accessible (to Midland) files to Plaintiff on October 16, 2015.  At the same time, Midland requested Plaintiff pay Midland $20,980 representing the estimated cost of retrieving the remaining 447 files, not readily accessible to Midland, Dkt. 307 at 11, needed to complete the 693 files comprising the sample of the class's card holder agreements purportedly containing terms and conditions evidencing Defendants' reliance upon § 1692f(1).  Dkt. 299-2 at 3, 4.  Midland also states that 252 files may be obtained by Midland from third-parties and can be produced to Plaintiff.  Dkt. 307 at 11.  On November 20, 2015, Midland produced at its own expense an additional 100 randomly selected files from the group of inaccessible files, Dkt. 307 at 11, further reducing Midland's production costs to $16,780 for the remaining 89 files necessary to satisfy the court ordered sample, Dkt. 311 at 16, a cost which Midland asserts is necessary because of the inaccessibility of the remaining 89 files which, as stated by Midland, will require extensive physical searching of files (419.5 man hours) to retrieve.  Dkt. 306 ¶ 4 (Affidavit of Michael Burger) ("Burger Affidavit").  Midland also estimates the retrieval and production process will entail seven months to complete.  Dkt. 305 at 10.  No information explaining how such manpower is to be employed, *i.e.*, by writing special software to retrieve digitized versions of the documents from computerized storage or physical inspection of archived files is provided by Midland.  Midland's cost of production, and the amount Midland seeks from Plaintiff, has been substantially reduced by one-half to $8,390 as a result of Co-Defendant C&S's recent offer to contribute one-half of Midland's total estimated production costs with Plaintiff to pay the other one-half to avoid further litigation of the

issue, an offer Plaintiff has refused. *See* Dkt. 310 at 12 n. 3. C&S argues in opposition to Plaintiff's motion that it is improper to impose sanctions against it based on Midland's conduct. Dkt. 310 at 8-10.

By papers filed November 2015 (Dkt. 304) Midland moves for a protective order pursuant to Fed.R.Civ.P. 26(c) to shift the cost of producing the 89 files remaining to be retrieved by Midland for production ("Midland's cross-motion"). Specifically, Midland contends that as the remaining 89 files represent a small, 13%, portion of the total sample of 6,800 files containing the terms and conditions of class members' card holder agreements, including those relevant to Defendants' contract authorization defense, it will be unfair to burden Midland with the estimated production costs of $16,780. *See* Dkt. 305 at 1-2, 10 (balancing the probable probative value of the 89 files against the cost of their retrieval). Midland also contends that as it did not cause of any undue delay in complying with the D&O, there is no basis to support Plaintiff's request for sanctions, including contempt, against Midland. Dkt. 305 at 4-8 (explaining that Plaintiff's lack of cooperation is selecting the sampling method was responsible for any delay in complying with the D&O). Midland also asserts that based on a review of the files produced to date, all of which Midland claims contain authorization for the creditor to recover court costs in litigation to collect Plaintiff and class members' unpaid accounts, it is unlikely that the remaining 89 files will contain any contrary terms and conditions thus demonstrating that Plaintiff's demand for the remaining production at Midland's cost will force Midland to engage in an unnecessary exercise at an undue expense. Dkt. 305 at 10-11.

Plaintiff opposes Midland's cross-motion on several grounds including that Midland has failed to demonstrate that production of the 89 files required to satisfy the sample size as determined by the D&O will in fact constitute an undue burden, Dkt. 311 at 6, and that Midland's cross-motion seeking to exclude the remaining 89 files from its obligation to produce or shifting part of its asserted production costs to Plaintiff constitutes, in effect, a second motion for reconsideration of the D&O's definition of the required sample previously rejected by the court. *Id.* at 15. Plaintiff further contends Midland has failed to correctly apply the prevailing test for cost shifting under Rule 26(c) as established in *Zubulake v. UBS Warburg, LLC,* 217 F.R.D. 309, 322 (S.D.N.Y. 2003) ("*Zubulake*"). Dkt. 311 at 19. Plaintiff also notes that Midland's assertion that all of the sample card holder agreements produced so far contain authorizations to collect court fees such as those at issue in this case, thereby supporting Midland's contention that production of the 89 outstanding files is unnecessary, is without support. *Id.* According to Plaintiff, based on Plaintiff's counsel's personal review, in contrast to any similar representation by Midland's counsel, Dkt. 311 at 19, none of the produced agreements authorize C&S to attempt to collect any court filing fees prior to actual payment by C&S of such fees upon the filing of collection actions against the class, as the Complaint alleges. *Id.* Plaintiff also argues Midland has not met its burden of establishing that accessing and retrieval of the 89 files will in fact be unduly burdensome relying on the bare and generalized assertions of inaccessibility and estimated associated costs as stated in the Burger Affidavit. *Id.* at 19-20. Finally, Plaintiff contends that even assuming Midland has demonstrated that production of the 89 files will impose an undue burden on Midland, application of the seven *Zubulake* factors relevant to a cost-

shifting request indicates Midland's cross-motion must fail.  Dkt. 311 at 22-26.  In reply and in support of Midland's cross-motion, Midland maintains that the *Zubulake* factors support Midland's cross-motion seeking a 50% cost-shift for the $16,780 production costs at issue, *i.e.*, to fairly distribute production costs where such costs are disproportionate to the value of the discovery sought.  Dkt. 315 at 5.  Midland also contends that because Midland has not refused to comply with the D&O, Plaintiff's requests for sanctions and attorneys fees is unwarranted.  *Id.* at 5-6.

In deciding whether to impose sanctions pursuant to Rule 37(a)(2)(A) as Plaintiff requests, courts consider several non-exclusive factors including "'(1) the willfulness of the non-compliant party or the reason for the non-compliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of non-compliance; and (4) whether the non-compliant party had been warned of the consequences of non-compliance.'"  *Ceglia v. Zuckerberg*, 2012 WL 95362, at *8 (W.D.N.Y. Jan. 10, 2012) (citing and quoting *Southern New England Telephone Company v. Global NAPS, Inc.,* 624 F.3d 123, 144 (2d Cir. 2010) (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009))).  Further, as applicable to Plaintiff's request to impose the contempt sanction, a court may hold a party in contempt for violation of a court order when "the order violated by the contemnor is clear and unambiguous, the proof of non-compliance is clear and convincing, and the contemnor was not reasonably diligent in attempting to comply."  *Id.* (citing and quoting *Southern New England Telephone Co.*, 634 F.3d at 145 (quoting *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir. 1996))).

Here, based on the record, the court finds Midland's failure to provide all of the sample files in accordance with the D&O is neither willful nor the result of undue delay.

Rather, the parties' failure to more promptly agree upon an acceptable random sampling method resulted from good faith disagreements and delays attributable to Plaintiff as well as to Midland.  Moreover, Midland promptly brought the question of possible cost-shifting to Plaintiff's attention shortly after it became apparent to Midland that production of the 195 inaccessible files would be significant, *i.e.*, $20,980.  Dkt. 305 at 11.  By letter dated November 9, 2015, Midland requested the court assist in mediating the cost-sharing dispute after Plaintiff's Fourth Motion for Contempt was filed, Dkt. 301, an invitation subsequently declined by the court.  Dkt. 309.  Midland's cross-motion pursuant to Fed.R.Civ.P. 26(c) followed.

Under Fed.R.Civ.P. 26(c) Midland is entitled to seek judicial relief from unduly burdensome discovery production.  Notably, in directing the production, as Plaintiff requested, of the 6,800 relevant files (later adjusted by the parties to 6,930), Dkt. 307 at 4, containing provisions on which Defendants C&S and Midland rely for their contract authorization defense pursuant to § 1692f(1), be instead limited to a 10% random sample, *Hallmark*, 304 F.R.D. at 169-70, the court did not specify a date by which such production was to be completed, leaving to the parties to agree upon an acceptable sampling method and production schedule.  In so ruling, the court avoided expressly ruling on Midland's undue burdensomeness contention noting that the sampling approach would significantly mitigate (as it did) Midland's projected cost of $300,000 if production extended to the cardholder files of all 10,250 class members reduced by the court to 6,800 files available to Defendants. *Hallmark*, 304 F.R.D. at 168-69.  Thus, while the delay in completing this phase of the discovery required in this case was unfortunate, the court cannot find that Midland's efforts to comply with the D&O were

willfully deficient or obstructive to warrant imposing sanctions, particularly a finding of contempt, as Plaintiff requests.  Significantly, Midland has not refused to produce all of the files required by the 10% sample. Accordingly, Plaintiff's motion, Dkt. 297, is DENIED.

Turning to Midland's cross-motion, the court finds this motion is likewise without merit and must be DENIED.  First, it is established that in federal civil discovery it is presumed that a responding party will bear the expense of production.  *See Quimby v. WestLB AG*, 245 F.R.D. 94, 101-02 (S.D.N.Y. 2006) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)), and that the responding party has the burden to establish justification for any cost-shifting to the party requesting discovery.  *Id.*  Here, Midland's cross-motion fails at the outset as it is based on the Burger Affidavit which broadly states in conclusory form that "the terms and conditions [relevant to Defendants' contract authorization defense that are inaccessible and not available from third-parties will require an estimated 419.5 hours to review at an estimated cost of $16,780."  Dkt. 306 ¶ 4.  Even a casual reading of his affidavit reveals that Mr. Burger provides no information explaining how or why he knows, based on personal knowledge, such assertions to be the fact, nor is there any effort to explain exactly what the term inaccessible, as used in the affidavit, means in the context of Midland's obligation to produce all of the files within the sample as directed by the D&O.  In particular, the affidavit does not state whether the term refers to digitized records stored on media that is no longer serviced by Midland's record-keeping department and requires special software be written to accomplish access to the records or whether the documents are in hard-copy form albeit filed in a manner and location that requires extensive manual

searching and individual review to locate and retrieve.  Nor is there any basis provided

for Mr. Burger's estimate that such searching will require 419.5 man-hours of work.  *See*

*Gross v. Lunduski*, 304 F.R.D. 136, 152 (W.D.N.Y. 2014) (rejecting state officials

affidavit as insufficient to support defendant's contention that plaintiff's document

requests would impose undue burden where affidavit failed to show official had personal

knowledge of relevant record keeping systems or factual basis for affiant's estimate of

retrieval time requirements).  Further, no justification is offered for the apparent hourly

rate of $40 used to calculate the projected cost of $16,780 ($16,780 ÷ 419.4 hrs. =

$40/hr.).  In short, Midland asks the court to 'rubber-stamp' Mr. Burger's conclusory

assertions which the court declines to do.  Midland has therefore failed to demonstrate

that the 89 remaining files to be produced are in fact inaccessible or that the projected

costs as stated in the Burger Affidavit are a reasonable estimate of the costs of

production Midland will incur.  *See Quimby*, 245 F.R.D. at 102 (defendant sought cost

shifting limited to specifically defined retrieval issues such as costs incurred in restoring

and searching back-up files and archival documents).  Accordingly, Midland has failed

to meet its burden to establish any basis for its cost-shifting request.

Even if Midland had satisfied its burden, application of the *Zubulake* factors to the

facts of this case, contrary to Midland's contention, favors Plaintiff.  Under the first

*Zubulake* factor, the request at issue is tailored to discover relevant information.  Here,

the D&O selected a 10% sample of the card holder agreements as the proper

alternative to imposing a projected $300,000 production cost upon Midland to obtain all

class member card holder files relevant to test the factual basis for Defendants' contract

authorization defense.  Sampling in such circumstances is of course dependent on the

representative parameters and size of the sample defined by the D&O compared to the underlying population of class files and, as established by the D&O, demonstrates conclusively that the required production has been "specifically tailored" to yield relevant information.  *See Zubulake*, 217 F.R.D. at 332.  In particular, Midland previously moved for reconsideration seeking to limit the sample of files necessary to support Defendants' authorization defense to 2,200 files which Midland asserted were more "readily accessible," in order to avoid $25,000 in Midland's costs of retrieval.  *Hallmark*, 307 F.R.D. at 102, 104 (W.D.N.Y. 2015).  In denying Midland's motion, this court found the alleged difficulties in accessing the relevant files were attributable to Midland's choice of filing system and that to modify the profile of the sample to only Midland's more accessible files created the risk that the resulting sample would not be sufficiently representative of the population of class members' files to constitute an acceptable sample for purposes of litigating the authorization defense at trial in this action.  *Id.* at 105-106.  Therefore, the 89 files at issue on Midland's cross-motion are integral to the discovery Plaintiff seeks in Plaintiff's effort to challenge the evidence which Defendants may offer in support of Defendants' contract authorization defense.  Midland's effort to minimize the significance of these 89 files as merely 13% of the 693 files to be included in the sample without a significant probative value as a basis for cost-shifting is therefore without merit.

As to *Zubulake's* second factor, availability of the disputed files from other sources, Midland concedes the files are not available from other sources.  Dkt. 315 at 3. As to the amount in controversy, the third *Zubulake* factor, Midland notes that Plaintiff's recovery against it is capped at $500,000 under § 1692k(a(2)(B) (thereby indicating

Midland's net worth is at least $50,000,000), Dkt. 315 at 7, of which the projected production costs of $16,780 for the 89 files is 3.3%, sufficient to warrant Midland's cost-shifting request.  *Id.*  Plaintiff contends, however, that the correct minimum amount of potential damages is $654,800, representing the amount of court costs improperly collected by C&S on behalf of Midland, thus reducing to 1% of potential damages for the disputed costs of production.  Dkt. 311 at 24; Dkt. 31 ¶¶ 13-23.  Even if Midland's position is correct, under *Zubulake's* listing of relevant factors this factor is not controlling.  *Zubulake*, 217 F.R.D. at 322-23 (factors considered in cost-shifting analysis for discovery of electronic data should not be equally weighted; the factors are to be weighed in descending order with the first factor considered most important and the seventh factor least important).  The fourth *Zubulake* factor, party resources, favors Plaintiff for the reason that Midland's net worth is conceded to be at least $50 million dwarfing any comparable financial capacity which can reasonably be expected for Plaintiff and Plaintiff's class counsel.  The court does not overlook Midland's argument that Plaintiff's counsel had, as class counsel, represented it had the resources necessary to prosecute this class action; rather, the court's finding is that, on a comparative basis, Midland's resources are likely to be substantially greater, and Midland points to no evidence to support a contrary finding.  The fifth factor, the capacity and incentive to control costs, also favors Plaintiff in that Midland has sole control over the access to the relevant files.

The sixth *Zubulake* factor – the importance of the issues in the case – Midland contends favors Midland as the cost of production outweighs the probative value of the 89 files remaining to be produced.  Such contention is unfounded – the contract

authorization defense raises the question whether the standard language in the sample files authorizing recovery of court costs is sufficiently broad to permit recovery of such costs prior to actually filing suit thus permitting C&S on Midland's behalf to collect substantial amounts of such fees without more specific contractual authorizations.  As discussed, Discussion, *supra*, at 9-10, with respect to the tailoring of the discovery at issue, the first *Zubulake* factor, the sample 693 files determined by the court in the D&O to be necessary to a valid sample, without the remaining 89 files, absent a stipulation by the parties or the court's amendment of the sample based on an affidavit by a competent expert,[2] will be compromised raising the prospect that the sample would become inadmissible as evidence in summary judgment or at trial thereby defeating the very purpose for which document discovery has been sought in this phase of the case. Thus, it cannot be found that this factor supports Midland's position.  Additionally, as Defendants have the burden to establish their contract authorization defense, Hallmark, 304 F.R.D. at 167, Defendants, in any event, would be eventually required to produce an acceptable sample of the class members' 10,250 files to sustain the defense.  As to the seventh *Zubulake* factor, the benefits to be obtained by production, this question is fully addressed in the court's treatment of the first, third, and sixth *Zubulake* factors and, on balance, favors Plaintiff.  *See* Discussion, *supra*, at 9-10, 10, and 10-11. Accordingly, the court finds that, upon review, with the exception of factor three, the *Zubulake* factors favor Plaintiff and thus weigh against Midland's cost-shifting request.

---

[2]   Midland has not submitted an affidavit by a qualified expert that removal from the sample of the 89 alleged inaccessible files will not significantly affect the probative value of the sample.

**CONCLUSION**

Based on the foregoing, Plaintiff's motion, Dkt. 297, is DENIED; Midland's cross-

motion, Dkt. 304, is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  March 23, 2016
          Buffalo, New York