UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



MICHAEL HALLMARK, on behalf of himself
and others similarly situated,

Plaintiff,

v.

COHEN & SLAMOWITZ, LLP and
MIDLAND FUNDING LLC d/b/a
MIDLAND FUNDING OF DELAWARE, LLC,

Defendants.

**DECISION AND ORDER**

1:11-CV-00842 EAW

## INTRODUCTION

Plaintiff Michael Hallmark ("Plaintiff") commenced this action, on behalf of himself and others similarly situated, on October 6, 2011, alleging that Cohen & Slamowitz, LLP and Midland Funding LLC d/b/a Midland Funding of Delaware, LLC (collectively, "Defendants") sought to collect a debt from Plaintiff and others in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (Dkt. 1). On September 16, 2013, United States District Judge William M. Skretny granted Plaintiff's motion for class certification and appointed Brian Bromberg Law Office, P.C. and the Law Offices of Kenneth Hiller, PLLC as class counsel. (Dkt. 110). This action then proceeded through many years of discovery and additional motion practice.

On August 14, 2017, while discovery was still pending, this Court referred this action to a mediation session during the Court's concentrated "Settlement Week." (Dkt. 352). The mediation session was held on November 8, 2017, at which time Class Counsel

- 1 -

and Defendants' counsel negotiated a possible resolution of the matter with the assistance of an experienced federal mediator. (Dkt. 365). As a result, the parties were able to reach a settlement in principal. (Dkt. 366).

On May 4, 2018, Plaintiff filed a consent motion for preliminary approval of the class action settlement. (Dkt. 373). The Court held a preliminary fairness hearing on May 24, 2018, and preliminarily approved the class action settlement. (Dkt. 375; Dkt. 376). The Court subsequently held a final fairness hearing on November 27, 2018. (Dkt. 384). On November 30, 2018, the Court issued a Decision and Order approving the class action settlement, but reserving decision on Class Counsel's request for attorneys' fees and costs until further briefing was filed. (Dkt. 385; *see also* Dkt. 386 (Supplemental Order of Final Approval of Class Action Settlement)). On January 11, 2019, Cohen & Slamowitz, LLP filed a letter indicating that they "will not be submitting any affirmative opposition to the motion at this time and will defer to the Court's review and determination with respect to the request for attorney's fees and costs, subject to the negotiated cap of $400,000." (Dkt. 387 at 1). No opposition has in fact been filed against Class Counsel's request for attorneys' fees and costs.

The Court has reviewed Class Counsel's papers in support of their request for attorneys' fees and expenses. For the foregoing reasons, the Court grants Class Counsel's unopposed request for $400,000.00 in reasonable attorneys' fees and costs.

## DISCUSSION

### I.   Reasonableness of the Attorneys' Fees and Costs

"Pursuant to 15 U.S.C. § 1692k(a)(3), counsel for a prevailing party in an FDCPA action is entitled to 'the costs of the action, together with a reasonable attorneys' fee as determined by the court.'" *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002, 2013 WL 4851709, at *3 (E.D.N.Y. Sept. 10, 2013). "Courts may award attorneys' fees . . . under either the 'lodestar' method or the 'percentage of the fund' method. The lodestar method multiplies hours reasonably expended against a reasonable hourly rate." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (citation omitted).

"In awarding attorneys' fees, especially in the context of a class action, a court must 'ensure that the interests of the class members are not subordinated to the interests of . . . class counsel.'" *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 433 (S.D.N.Y. 2016) (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)). The Second Circuit has emphasized "the importance of the district court's duty 'to act as a fiduciary who must serve as a guardian of the rights of absent class members.'" *McDaniel v. County of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) (quoting *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1099 (2d Cir. 1977)); *see Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (stating that a court should perform a "searching assessment" of requested attorneys' fees in each case).

### A.    Reasonable Hourly Rate

"A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" *McLaughlin v. IDT Energy*, No. 14 CV 4107 (ENV)(RML), 2018 WL 3642627, at *16 (E.D.N.Y. July 30, 2018) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). "To determine reasonable hourly rates, the Court considers this Circuit's adherence to the forum rule, which states that a district court should generally use the prevailing hourly rates in the district where it sits." *Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 617-18 (E.D.N.Y. 2017) (citing *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 175-76 (2d Cir. 2009)); *see Carbin v. N. Resolution Grp., LLC*, No. 12-CV-1108JTC, 2013 WL 4779231, at *3 (W.D.N.Y. Sept. 5, 2013) ("There is a presumption in favor of the hourly rates employed in the district in which the case is litigated.").

However, courts need not strictly adhere to the forum rule in all cases.  Instead, reasonable attorney fee rates may vary "depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *Kindle v. Dejana*, 308 F. Supp. 3d 698, 704 (E.D.N.Y. 2018) (quotation marks omitted); *see Carbin*, 2013 WL 4779231, at *3 ("In determining a reasonable fee, district courts should set a reasonable hourly rate, bearing in mind case-specific variables. . . .").

Class Counsel requests a total award of attorneys' fees and costs in the amount of \$400,000.00.  (Dkt. 382 at 15).  Although Class Counsel's calculated attorneys' fees and

costs amount to $396,672.50 and $22,187.41, respectively, this total value exceeds the "agreed-upon amount of $400,000" (Dkt. 382-1 at ¶¶ 47-48), and thus, only $400,000.00 is sought on this motion (Dkt. 382 at 26 ("Plaintiffs' attorneys agreed to cap their fees and costs to facilitate settlement and guarantee a meaningful recovery for the class members.")). Class Counsel's calculations utilize certain hourly fee rates that are greater than those usually applied by courts in this District when determining the reasonableness of a fee award in an FDCPA case. For example, Mr. Brian L. Bromberg, Esq., of the Bromberg Law Office, P.C., requests that this Court apply a $375 per hour rate to his billable hours. (Dkt. 382-1 at ¶ 34). Mr. Bromberg also requests that the Court apply a $300 per hour rate to the billable hours accrued by Mr. Michael N. Litrownik, Esq., and Mr. Jonathan R. Miller, Esq., while they worked on this case as associate attorneys with his law office. (*Id.* at ¶¶ 39-40). Mr. Litrownik also submitted an attorney declaration requesting that the Court apply a $300 per hour rate to the billable hours he accumulated while employed by Mr. Bromberg's law practice. (Dkt. 382-7 at ¶ 16).

Mr. Miller has submitted a separate set of contemporaneous time records associated with his work on this matter after leaving Mr. Bromberg's law office in 2017, to start his own practice at the Law Office of Jonathan R. Miller, PLLC d/b/a Salem Community Law Office, in Winston-Salem, North Carolina. (Dkt. 382-3 at ¶¶ 11-12, 33; Dkt. 382-6; *see* Dkt. 382-1 at ¶ 40 ("Mr. Miller is also submitting a separate declaration and records for the time he worked on this case after he left my office.")). Mr. Miller requests that the Court apply a $300 per hour rate to the billable hours accumulated after his departure from Mr. Bromberg's law practice. (Dkt. 382-3 at ¶ 19).

Mr. Kenneth R. Hiller, Esq., of the Law Offices of Kenneth Hiller, submits an attorney declaration acknowledging that he "generally charge[s] $350.00 per hour in cases [he] handle[s] in consumer cases or other litigation where a Court does not determine [his] fee," and that "[c]ourts in this district have awarded [him] $215.00 per hour in attorneys fees in routine FDCPA cases in which the [d]efendant has defaulted." (Dkt. 382-9 at ¶¶ 23-24). Mr. Hiller states that "[t]his case is much more complex, involving the FDCPA, Bankruptcy Law, and Class Action law," and was "fiercely opposed by capable counsel." (*Id.* at ¶ 25). As such, Mr. Hiller requests that the Court apply a $350 per hour rate for his billable hours in this case for the same reasons this Court set forth in its recent decision in *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35 (W.D.N.Y. 2018). (*Id.* at ¶ 32).

Lastly, Mr. Seth J. Andrews, Esq., of the Law Offices of Kenneth Hiller, also submits an attorney declaration requesting that the Court apply a $300 per hour rate to the billable hours accrued by him during his work on this case. (*See* Dkt. 382-11 at ¶¶ 21-22). Mr. Andrews states that this is the amount he generally charges "in consumer cases or other litigation where a Court does not determine [his] fee" (*id.* at ¶ 13), and that a rate of $300 per hour is warranted in this case "[g]iven [his] years of legal experience, the difficulty and complexity of this case, [and] the fact that competent class action counsel for consumer cases other than the undersigned, does not exist" in Western New York (*id.* at ¶ 16). Mr. Andrews notes that this Court previously applied a $250 per hour rate in awarding him attorneys' fees in *Godson*. (*Id.* at ¶ 20). However, he contends that a $300 per hour rate is appropriate in this case because his "attorney declaration was inadvertently omitted for

submission" in *Godson*, and his experience is commensurate with Mr. Miller, who was awarded an hourly rate of $300 in *Godson*. (*Id.* at ¶¶ 20-21).

A review of recent FDCPA cases decided in this District suggests that a reasonable hourly rate for attorneys' fees ranges from about $200 to $300 per hour. *See Eades v. Kennedy, PC. Law Offices*, 343 F. Supp. 3d 104, 108 (W.D.N.Y. 2018) (awarding "a reasonable average rate" of $300 per hour for partners and $225 per hour for associates in an FDCPA case that was "not unusually complex" and "initially involved just two plaintiffs (and now involves one)"); *Warman v. Law Office of Daniel M. Slane*, No. 14-CV-700(LJV), 2017 WL 971196, at *4 (W.D.N.Y. Mar. 13, 2017) (finding the hourly rates of $275, $225, and $200 to be reasonable for the respective attorneys in an FDCPA default judgment action "in light of such considerations as the level of skill required to perform the legal services in this case, the amount involved and the results obtained, and the experience and ability of the attorneys"); *Langhorne v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-231C, 2016 WL 1177980, at *2 (W.D.N.Y. Mar. 28, 2016) ("The court finds the number of hours and the hourly rates ($300 per hour for experienced attorney and $50 per hour for paralegal) to be reasonable, given the prevailing market rates in this district for FDCPA cases in the recent past."); *Stinson v. LHR, Inc.*, No. 14-CV-999-JTC, 2015 WL 5546443, at *3 (W.D.N.Y. Sept. 18, 2015) ("Based upon its review of . . . FDCPA cases litigated in the Western District of New York, the court finds that the prevailing local hourly rate of $250 for experienced attorneys provides a reasonable basis for calculation of the award of fees in this case."); *Carbin*, 2013 WL 4779231, at *3 ("A review of FDCPA cases in the Western District of New York indicates that the hourly rate for an experienced

attorney ranges from $215 to $250. . . ."); *Hance v. Premier Recovery Grp., Inc.*, No. 12-CV-028S, 2013 WL 85068, at *2 (W.D.N.Y. Jan. 7, 2013) (noting a senior partner's "experience in consumer-related litigation" and finding that a fee rate of $225 per hour was reasonable). However, a large number of FDCPA cases involving attorneys' fee issues in this District have taken place in the context of default judgment motions. *See, e.g., Fetcho v. Takhar Grp. Collection Servs., Ltd.*, No. 13-CV-232C, 2016 WL 1177982, at *2 (W.D.N.Y. Mar. 28, 2016); *Ortez v. First Asset Recovery Grp., LLC*, No. 13-CV-671-JTC, 2014 WL 1338835, at *3 (W.D.N.Y. Apr. 2, 2014); *Carbin*, 2013 WL 4779231, at *3; *Hance*, 2013 WL 85068, at *2; *Mostiller v. Chase Asset Recovery Corp.*, No. 09-CV-218A, 2010 WL 335023, at *5 (W.D.N.Y. Jan. 22, 2010). As this Court noted in its decision in *Godson*, it appears that FDCPA class actions, let alone ones involving complex issues, are a comparatively uncommon occurrence in this District. 328 F.R.D. at 62.

Similar to the FDCPA class action involved in *Godson*, the Court agrees that the instant matter is far more complex than the FDCPA default judgment actions commonly addressed by courts in this District. *Cf. Eades*, 343 F. Supp. 3d at 108 (concluding that no more than the "reasonable average rate" within this District would be appropriate in an FDCPA case that was "not unusually complex" and involved just a couple plaintiffs). Furthermore, the Court recognizes that Mr. Bromberg and Mr. Hiller have extensive experience handling consumer protection litigation, and that Mr. Miller, Mr. Litrownik, and Mr. Andrews, while perhaps not as seasoned in this field, are certainly accomplished in their own right.

The hourly rates requested in this case are almost the same as those awarded in *Godson*, which involved the same plaintiffs' attorneys. In *Godson*, the Court granted a fee award for Mr. Litrownik's and Mr. Andrews' billable hours at a rate of $250 per hour because neither attorney had submitted attorney declarations on their own behalf. 328 F.R.D. at 62. Without such declarations, the Court was unable to accurately compare the experience of these attorneys with Mr. Bromberg, Mr. Hiller, and Mr. Miller. However, a review of Mr. Litrownik's and Mr. Andrews' declarations in this case reveals that their experience is commensurate with that of Mr. Miller. Accordingly, considering the complex nature of this case, the fact that Defendants not only appeared, but vigorously opposed Plaintiff's action, and the tremendous skill brought to bear by all attorneys involved, the Court finds that for the unique work performed in connection with this case, Mr. Bromberg should be granted a fee award at a rate of $375 per hour, Mr. Hiller should granted a fee award at a rate of $350 per hour, and Mr. Miller, Mr. Litrownik, and Mr. Andrews should each be granted a fee award at a rate of $300 per hour.

## B.  Reasonable Hours Billed

"The second step of the lodestar analysis is the determination of the 'reasonable number of hours required by the case.'" *Wat Bey v. City of New York*, No. 01 CIV. 09406 (AJN), 2013 WL 12082743, at *34 (S.D.N.Y. Sept. 4, 2013) (quoting *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)), *aff'd sub nom. Rivera v. City of New York*, 594 F. App'x 2 (2d Cir. 2014). "[A]ny attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

"To determine the reasonableness of the hours spent on the litigation, the court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *McLaughlin*, 2018 WL 3642627, at \*18 (quoting *Maldonado v. La Nueva Rampa, Inc.*, No. 10 Civ. 8195 (LLS) (JLC), 2012 WL 1669341, at \*1 (S.D.N.Y. May 14, 2012)). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Reiter v. Metro. Transp. Auth. of State of N.Y.*, No. 01CIV2762 (GWG), 2007 WL 2775144, at \*9 (S.D.N.Y. Sept. 25, 2007) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).

The time records filed along with Class Counsel's final submission to this Court "are both contemporaneous and provide sufficient detail." *McLaughlin*, 2018 WL 3642627, at \*18. The records reveal that Class Counsel have performed appropriate legal services over the course of this litigation and have not "represented work beyond the normal quantity of hours that would be required in a consumer class action stretching over multiple years." *Id.* Class Counsel identify about 1,204.8 total timekeeper hours. (*See* Dkt. 382-1 at ¶¶ 41-42; Dkt. 382-2; Dkt. 382-3 at ¶ 35; Dkt. 382-6; Dkt. 382-9 at ¶ 33; Dkt. 382-10; Dkt. 382-11 at ¶ 22; Dkt. 382-12). The number of recoverable hours identified by Class Counsel is in line with other cases in this Circuit that have found recoveries of hundreds of billable hours to be reasonable in complex cases lasting several years. *See, e.g., Liberty Mut. Ins. Co. v. Conmas, Inc.*, No. 10-CV-717 (MAD/DEP), 2012 WL 913312, at \*3 (N.D.N.Y. Mar. 16, 2012) (321.9 hours was not unreasonable for litigation taking place over nearly two years); *Jin v. Pac. Buffet House, Inc.*, No. 06-CV-579 (VVP),

2010 WL 2653334, at *4 (E.D.N.Y. June 25, 2010) (379.5 hours was reasonable in a case that lasted almost two years and culminated in a six-day trial and post-trial briefing); *Morris v. Eversley*, 343 F. Supp. 2d 234, 248 (S.D.N.Y. 2004) (712 hours was not excessive in a case that lasted two years and ended in a trial); *Elliott v. Bd. of Educ. of Rochester City Sch. Dist.*, 295 F. Supp. 2d 282, 286 (W.D.N.Y. 2003) (approximately 135 hours was not unreasonable in a case that lasted for about one year and ended in a settlement); *Clarke v. One Source, Inc.*, No. 99 Civ.2323 (RPP), 2002 WL 31458238, at *6 (S.D.N.Y. Nov. 1, 2002) (finding 333 hours reasonable for litigation taking place over three years, and including "a number of depositions" as well as "participation in and attendance at the eight day trial"); *cf. Seong Soo Ham v. Sushi Maru Express Corp.*, No. 15-CV-6138 (FB) (JO), 2017 WL 9482112, at *3 (E.D.N.Y. Aug. 18, 2017) (449 attorney hours was excessive "for a two-plaintiff case that settled within a year, with no motion practice and limited discovery that lasted only a few months"), *report and recommendation adopted*, 2017 WL 4023131 (E.D.N.Y. Sept. 13. 2017), *aff'd*, 736 F. App'x 19 (2d Cir. 2018).

While this case never reached the trial stage unlike some of the cases cited above, contentious discovery continued over several years, including motion practice and numerous conferences and correspondence. (*See* Dkt. 382 at 12, 26). Class Counsel litigated class action issues, engaged in settlement discussions, and sparred with highly qualified defense counsel over a period of about seven years. Furthermore, Defendants have not objected to any aspect of Class Counsel's fee request. Accordingly, the billable hours identified by Class Counsel are reasonable under these circumstances.

Based upon the rates discussed above and the attorney hours identified by Class

Counsel, the adjusted lodestar calculations result in the following attorneys' fee figures:

| | | |
|---|---|---|
| (A) | Brian L. Bromberg - | $149,662.50 |
| (B) | Kenneth R. Hiller - | $38,080.00 |
| (C) | Jonathan R. Miller and | |
| | Michael N. Litrownik (combined Bromberg hours) - | $185,100.00 |
| (D) | Jonathan R. Miller (post-2017) - | $11,700.00 |
| (E) | Seth J. Andrews - | $12,270.00 |
| | | |
| Total: | | $397,242.50[1] |

## C.   Reasonableness Under the *Goldberger* Factors

"The final step in this analysis is to determine whether the fee award calculated

above is reasonable under the *Goldberger* factors." *McLaughlin*, 2018 WL 3642627, at

*20. "Those factors are (1) the time and labor expended by counsel, (2) the magnitude and

complexities of the litigation, (3) the risk of the litigation, (4) the quality of the

representation, (5) the requested fee in relation to the settlement, and (6) public policy

considerations." *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 CIV. 9705 (JCF), 2017

WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50).

### 1.   Time and Labor Expended by Counsel

Class Counsel have dedicated over one thousand hours to the success of the instant

class action. (*See* Dkt. 382-1 at ¶¶ 41-42; Dkt. 382-2; Dkt. 382-3 at ¶ 35; Dkt. 382-6; Dkt.

382-9 at ¶ 33; Dkt. 382-10; Dkt. 382-11 at ¶ 22; Dkt. 382-12).   Over the course of this

matter's seven-and-a-half-year lifespan, Class Counsel engaged in several years of

---

[1]    The Court notes that this value likely differs from Class Counsel's calculated figure
based on rounding differences.   Because the Court is only awarding the attorneys' fees and
costs in the amount of $400,000, as agreed upon between the parties, the *exact* value of an
appropriate attorneys' fee award under the lodestar approach is not important in this case.

discovery and related motion practice, including various conferences and court appearances, and participated in other court proceedings, such as mediation sessions, settlement negotiations, and motion hearings. *See Semon v. Swenson*, No. 5:10-CV-00143-CR, 2013 WL 1182224, at *6 (D. Vt. Mar. 21, 2013) ("Plaintiffs' counsel expended significant time, resources, and effort in litigating the Action. The case has been pending for nearly three years, during which the parties engaged in extensive motion practice and discovery—litigating virtually every aspect of the case."). Accordingly, the first *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 2.    Magnitude and Complexities of the Litigation

"In evaluating the second *Goldberger* factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered. . . .'" *Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *15 (E.D.N.Y. Apr. 11, 2016) (quoting *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216, 2014 WL 3778173, at *10 (S.D.N.Y. July 31, 2014)). In addition, "it is also worth noting that in a class action suit, as here, the large number of plaintiffs increase the complexity of the litigation." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 392 (E.D.N.Y. 2012). The instant litigation was more complex than other more routine FDCPA actions. This action spanned over seven years of contentious litigation, involved a very substantial class of 2,734 members, and necessitated extensive discovery regarding Cohen & Slamowitz, LLP's net worth, which was a "key pressure point[]" to inducing the settlement and would have required expert testimony had the case proceeded past discovery. (*See* Dkt. 382 at 7, 11,

26). In light of these considerations, the second *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 3.   The Risk of the Litigation

"Risk should be considered 'as of when the case is filed.'" *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 351 (S.D.N.Y. 2014) (quoting *Goldberger*, 209 F.3d at 55). "Specifically with respect to contingency fee cases, like this one, '[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.'" *Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *7 (S.D.N.Y. Dec. 14, 2017) (quoting *Grinnell*, 495 F.2d at 470).

As Plaintiff points out, Defendants vehemently denied any wrongdoing in this action and raised several affirmative defenses by which they sought to avoid liability. (*See* Dkt. 382 at 12). Furthermore, even if Plaintiff had established liability against Defendants, there was no guarantee that the statutory damages award would be equivalent to the $400,000 settlement reached in this case. *See Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 86 (2d Cir. 1998) ("The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court."); *see also Ayzelman v. Statewide Credit Servs. Corp.*, 242 F.R.D. 23, 28 (E.D.N.Y. 2007) ("In determining the amount of statutory damages to impose on a debt collector found liable under the statute in a class action, courts are required to consider 'the frequency and persistence of noncompliance by the debt collector, the nature of such

noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.'" (quoting 15 U.S.C. § 1692k(b)(2))).

Cohen & Slamowitz, LLP took the position that its net worth was "*de mini[m]is.*" (Dkt. 382 at 13). Under the FDCPA, class action damages are capped at $500,000 or 1% of the debt collector's net worth. 15 U.S.C. § 1692k(a)(2)(B). If Cohen & Slamowitz, LLP had demonstrated that its net worth was relatively small, there is a significant possibility that the class recovery would have been smaller than the settlement fund approved in this case. Indeed, Plaintiff points out that the determination of net worth would have been a complicated issue involving the presentation of expert testimony. (Dkt. 382 at 11). Accordingly, the risk of a lower recovery or even no recovery at all was present in this matter.

"[T]he attorneys' willingness to endure for many years the risk that their extraordinary efforts would go uncompensated" should be rewarded now that a substantial settlement has been reached and approved. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014). Therefore, the third *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 4.    The Quality of the Representation

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *21 (S.D.N.Y. Sept. 9, 2015); *see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV.

- 15 -

8144 (CM), 2009 WL 5178546, at *19 (S.D.N.Y. Dec. 23, 2009) ("To evaluate the quality of representation, courts in the Second Circuit 'review the recovery obtained and the backgrounds of the lawyers involved in the lawsuit.'" (quoting *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 141 (S.D.N.Y. 2008))).

As discussed above, Class Counsel are eminently qualified and experienced to handle the type of litigation at issue in this case. Mr. Bromberg has accumulated many years of experience litigating consumer class actions, including matters involving the FDCPA. (Dkt. 382-1 at ¶¶ 19-20). In addition, Mr. Hiller's law firm "has handled approximately 800 cases on behalf [of] consumers in the Western District of New York" since 2005, many of which include the FDCPA. (Dkt. 382-9 at ¶ 16). Mr. Hiller has "personally handled the litigation in a large number of these matters." (*Id.*). Mr. Miller, Mr. Litrownik, and Mr. Andrews have likewise accrued significant experience in litigating consumer protection and class action issues and advising clients on the same. (*See* Dkt. 382-3 at ¶¶ 15, 17; Dkt. 382-7 at ¶¶ 11-15; Dkt. 382-11 at ¶¶ 11-12, 14).

The docket reflects that Class Counsel and defense counsel zealously advocated on behalf of their respective clients over a period of more than seven years in what was a vigorously contested action. Considering the favorable result reached on behalf of the Class, it is obvious that the members of the Class benefited from counsel proficient in consumer protection litigation. *See Sykes v. Harris*, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *17 (S.D.N.Y. May 24, 2016) ("Class Counsel effectively and efficiently litigated this Action from its inception, during more than six years of contentious litigation against more than able defense counsel."); *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400,

412 (D. Conn.) ("The court agrees . . . that the Class received high quality legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel."), *aff'd*, 355 F. App'x 523 (2d Cir. 2009); *see also In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("The high quality of defense counsel opposing [the p]laintiffs' efforts further proves the caliber of representation that was necessary to achieve the Settlement."); *see generally Goldberger*, 209 F.3d at 55 (stating that "the quality of representation is best measured by results"). Accordingly, the fourth *Goldberger* factor weighs in favor of approving the attorneys' fee award.

### 5.    The Requested Fee in Relation to the Settlement

Although the requested fee award is about twice as large as the settlement fund, the fee award does not influence the amount the Class received as a result of the settlement. In other words, the Class would not receive a greater recovery if the fee award was reduced.

Moreover, the Second Circuit has affirmed a district court's approval of a class action settlement where the attorneys' fee award almost equated the recovery set aside in a multi-million-dollar settlement fund. *See Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) ("The proportionality of the $3.42 million fee award is not to be judged, as Gristede's urges, against the dollar value of the $3.53 million settlement."). To this point, the Second Circuit rejected the argument "that an award of costs and attorney's fees that equals or exceeds the pecuniary value of a significant cash settlement contravenes the goals of fee shifting." *Id.* In fact, "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." *Millea*, 658

F.3d at 169; *see also Barbour v. City of White Plains*, 700 F.3d 631, 635 (2d Cir. 2012)

("[W]e have repeatedly rejected the notion that a fee may be reduced merely because the

fee would be disproportionate to the financial interest at stake in the litigation." (quotation

marks and citation omitted)); *Barrella v. Vill. of Freeport*, 43 F. Supp. 3d 136, 192

(E.D.N.Y.) ("[T]here is no requirement that the amount of an award of attorneys' fees be

proportional to the amount of damages."), *stay granted, order supplemented*, 56 F. Supp.

3d 169 (E.D.N.Y. 2014), *aff'd*, 814 F.3d 594 (2d Cir. 2016).

Therefore, while the fifth *Goldberger* factor does not supply much, if any, support

for the approval of the attorneys' fee award, this factor is not dispositive where the other

*Goldberger* factors weigh in favor of approving the fee award. *See Raniere v. Citigroup

Inc.*, 310 F.R.D. 211, 222 (S.D.N.Y. 2015) ("[W]hile the fifth *Goldberger* factor weighs

against approval, it is not dispositive.").

### 6.    Public Policy Considerations

"Finally, '[w]hen determining whether a fee award is reasonable, courts consider

the social and economic value of the class action, and the need to encourage experienced

and able counsel to undertake such litigation.'" *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ.

1906 (HBP), 2015 WL 4006896, at *12 (S.D.N.Y. July 1, 2015) (quoting *Siler v. Landry's

Seafood House - N.C., Inc.*, No. 13-CV-587 (RLE), 2014 WL 2945796, at *11 (S.D.N.Y.

June 30, 2014)).  The FDCPA is a remedial statute designed "to eliminate abusive debt

collection practices by debt collectors, to insure that those debt collectors who refrain from

using abusive debt collection practices are not competitively disadvantaged, and to

promote consistent State action to protect consumers against debt collection abuses."  15

U.S.C. § 1692(e); *see Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) ("The Senate report accompanying the legislation noted that debt collection abuse, including the 'misrepresentation of a consumer's legal rights,' by third-party debt collectors 'is a widespread and serious national problem.'" (quoting S. Rep. No. 95-382, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696)). The FDCPA's remedial purposes "require adequate compensation for attorneys who protect those rights." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013) (involving the Fair Labor Standards Act and the New York Labor Law); *see also Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 (LEK/CFH), 2014 WL 7272960, at *2 (N.D.N.Y. Dec. 18, 2014) ("[P]ublic policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace."). As such, the public interest in deterring abusive debt collection practices is furthered by the approval of the proposed fee award. Accordingly, the sixth *Goldberger* factor weighs in favor of approving the attorneys' fee award. Since at least five of the six *Goldberger* factors weigh in favor of approval, the fee award calculated by Class Counsel is reasonable.

**D.    Reasonable Costs**

"In addition to reasonable attorney's fees, counsel for a prevailing party in an FDCPA action is entitled to an award of the costs of the action." *Nicaisse v. Stephens & Michaels Assocs., Inc.*, No. CV 14-1570 (JS)(GRB), 2016 WL 4367222, at *9 (E.D.N.Y. June 9, 2016), *report and recommendation adopted*, No. 14-CV-1570(JS)(GRB), 2016 WL 4275687 (E.D.N.Y. Aug. 12, 2016). "[A] court will generally award 'those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'"

*Pennacchio v. Powers*, No. 05 CV 985 (RRM) (RML), 2011 WL 2945825, at *2 (E.D.N.Y.
July 21, 2011) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998)).

Class Counsel identifies a total of $22,187.41 in costs incurred while litigating this
matter. (Dkt. 382 at 24). These costs include expenditures dealing with postage, expert
fees, service of subpoenas, transcript costs, travel, lodging, court filing fees and service of
process costs, and research expenses through litigation support services, such as the Court's
Public Access to Court Electronic Records ("PACER") system. (Dkt. 382-1 at ¶ 47; Dkt.
382-2 at 23; Dkt. 382-6 at 5; Dkt. 382-9 at ¶ 34); *see Bhungalia Family, LLC v. Agarwal*,
317 F. Supp. 3d 727, 745 (S.D.N.Y. 2018) (finding "costs for shipping, court fees, service
of process, and litigation support services" to be recoverable); *Plus Enters. LLC v. Sun
Trading Int'l, LLC*, No. 16 Civ. 8987 (VB) (FED), 2017 WL 6492117, at *10 (S.D.N.Y.
Nov. 29, 2017) (finding expenditures relating to the "filing fee, printing, postage, service
fees, and duplication costs" to be recoverable), *report and recommendation adopted*, 2017
WL 6496541 (S.D.N.Y. Dec. 15, 2017); *Decastro v. City of New York*, No. 16-CV-3850
(RA), 2017 WL 4386372, at *10 (S.D.N.Y. Sept. 30, 2017) (finding PACER expenses,
filing fees, and costs of service to be "reasonable, out-of-pocket expenses ordinarily
charged to clients"); *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695(CM),
2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (finding costs incurred from
"consultant and expert fees, photocopying of documents, mediation fees, court filing fees,
deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation
of a document database, messenger service, postage and next day delivery, long distance
and facsimile expenses, transportation, [and] travel" to be recoverable); *Lewis v.*

*Triborough Bridge & Tunnel Auth.*, No. 97 CIV. 0607 (PKL), 2001 WL 1898318, at *10

(S.D.N.Y. Aug. 6, 2001) (finding "hotel and meal" costs to be recoverable).  Class Counsel

has provided sufficient documentation to support their fee request.  *See Bhungalia Family,*

*LLC*, 317 F. Supp. 3d at 745 ("Although BFL has not substantiated the amount of these

costs by providing invoices or receipts, HBB did document its costs, with specificity, in its

billing records, and Ziluck has attested to them."); *Plus Enters. LLC*, 2017 WL 6492117,

at *10 ("Plaintiff provided contemporaneous billing records of these costs."); *Hernandez*

*v. JRPAC Inc.*, No. 14cv4176 (PAE), 2017 WL 66325, at *2 (S.D.N.Y. Jan. 6, 2017)

(expenditures outlined in the attorney declaration were sufficiently documented).

Accordingly, because these expenses are those ordinarily charged to clients, Class

Counsel's request for $22,187.41 in costs is reasonable.

## II.    The Court Grants Class Counsel's Unopposed Request for an Award of $400,000 in Attorneys' Fees and Costs

Although the amount of reasonably recoverable attorneys' fees and costs is

approximately $419,429.91, Class Counsel "agreed to cap their fees and costs [at

$400,000] to facilitate settlement and guarantee a meaningful recovery for the class

members." (Dkt. 382 at 26).  Defendants have not opposed an award of reasonable fees

and costs up to the agreed-upon amount of $400,000. (*See* Dkt. 387).  Furthermore, Class

Counsel does not request an award above this $400,000 figure. (Dkt. 382 at 15).  Because

the Court finds that Class Counsel has accrued reasonable attorneys' fees and costs in the

amount of $419,429.91, the lesser agreed-upon amount of $400,000 is also reasonable in

this case.

Therefore, the Court grants Class Counsel's motion for attorneys' fees and costs and approves $400,000 as an appropriate award for attorneys' fees and costs in this matter.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for attorneys' fees and costs is granted. The Court awards to Class Counsel, attorneys' fees, costs, and expenses in the amount of $400,000.00, after reviewing Class Counsel's declarations for fees submitted to the Court. Defendants are ordered to pay this award to Class Counsel, by payment to the "Bromberg Law Office, P.C., as attorney," within 30 days of the date of this Order.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      May 6, 2019
            Rochester, New York

- 22 -